AB:WK/DPL
F.#2009R00195

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -　　　　　　　　　　Cr. No. 11-CR-0003 (DLI)

VINCENT DRAGONETTI,
    also known as "Vinny,"
    "Skinny," "Mike," "Mikey"
    and "Marbles,"
THOMAS FRANGIAPANE,
EMMANUEL GARAFOLO,
    also known as "Manny,"
ANTHONY LICATA,
    also known as "Cheeks,"
    "Anthony Firehawk," "Anthony
    Nighthawk," "Nighthawk" and
    "Firehawk,"
JOSEPH LOMBARDI,
ANTHONY O'DONNELL,
    also known as "Tony O,"
ANTHONY SCIBELLI and
WILLIAM SCOTTO,
    also known as "Billy" and
    "Big Billy,"

        Defendants.

- - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION FOR A PERMANENT ORDER OF DETENTION

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

Whitman Knapp
Duncan Levin
Assistant United States Attorneys
    (Of Counsel)

## Table of Contents

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . 1

Proffered Facts . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   Investigation and Indictment . . . . . . . . . . . . . . . 2

     A.   The Investigation . . . . . . . . . . . . . . . . . 2

     B.   The Indictment . . . . . . . . . . . . . . . . . . . 4

II.  Legal Standard . . . . . . . . . . . . . . . . . . . . . . 5

     A.   The Bail Reform Act . . . . . . . . . . . . . . . . 5

     B.   Organized Crime Defendants Are Likely to Commit
          Crimes if Released on Bail . . . . . . . . . . . . 6

     C.   Elaborate Bail Packages Are Insufficient to
          Protect the Community Against Violent Organized
          Crime Defendants . . . . . . . . . . . . . . . . . 7

III. The Defendants Should Be Detained . . . . . . . . . . . 10

     A.   Vincent Dragonetti . . . . . . . . . . . . . . . . 11

          1.   Nature and Circumstances of the Crimes Charged 11

          2.   History and Characteristics of the Defendant . 12

          3.   Seriousness of Danger Posed by the
               Defendant's Release . . . . . . . . . . . . . 13

          4.   Evidence of the Defendant's Guilt . . . . . . 15

          5.   Summary . . . . . . . . . . . . . . . . . . . 16

     B.   Anthony Licata . . . . . . . . . . . . . . . . . . 17

          1.   Nature and Circumstances of the Crimes Charged 17

          2.   History and Characteristics of the Defendant . 19

          3.   Seriousness of Danger Posed by the
               Defendant's Release . . . . . . . . . . . . . 20

          4.   Evidence of the Defendant's Guilt . . . . . . 20

          5.   Summary . . . . . . . . . . . . . . . . . . . 20

C.   Joseph Lombardi . . . . . . . . . . . . . . . 21

     1.   Nature and Circumstances of the Crimes Charged   21

     2.   History and Characteristics of the Defendant .   22

     3.   Seriousness of Danger Posed by the
          Defendant's Release . . . . . . . . . . . .   23

     4.   Evidence of the Defendant's Guilt . . . . . .   24

     5.   Summary . . . . . . . . . . . . . . . . . .   24

D.   Anthony O'Donnell . . . . . . . . . . . . . . . 25

     1.   Nature and Circumstances of the Crimes Charged   25

     2.   History and Characteristics of the Defendant .   27

     3.   Seriousness of Danger Posed by the
          Defendant's Release . . . . . . . . . . . .   28

     4.   Evidence of the Defendant's Guilt . . . . . .   28

     5.   Summary . . . . . . . . . . . . . . . . . .   28

E.   Anthony Scibelli . . . . . . . . . . . . . . . 30

     1.   Nature and Circumstances of the Crimes Charged   30

     2.   History and Characteristics of the Defendant .   32

     3.   Seriousness of Danger Posed by the
          Defendant's Release . . . . . . . . . . . .   33

     4.   Evidence of the Defendant's Guilt . . . . . .   35

     5.   Summary . . . . . . . . . . . . . . . . . .   35

F.   William Scotto . . . . . . . . . . . . . . . 36

     1.   Nature and Circumstances of the Crimes Charged   36

     2.   History and Characteristics of the Defendant .   36

     3.   Seriousness of Danger Posed by the
          Defendant's Release . . . . . . . . . . . .   37

4.   Evidence of the Defendant's Guilt  . . . . . .  38

5.   Summary  . . . . . . . . . . . . . . . . . . .  38

IV.   Conclusion . . . . . . . . . . . . . . . . . . . . .  40

**<u>Preliminary Statement</u>**

The government hereby moves for a permanent order of detention with respect to defendants Vincent Dragonetti, Anthony Licata, Joseph Lombardi, Anthony O'Donnell, Anthony Scibelli and William Scotto, each of them a member or associate of the Gambino crime family.  As described in detail below, each of these defendants faces serious charges; each has a history of crimes of violence; each defendant poses a serious danger if released; and each faces a large volume of strong evidence showing his guilt. Each of these defendants additionally presents a risk of flight. Accordingly, defendants Dragonetti, Licata, Lombardi, O'Donnell, Scibelli and Scotto should be detained pending trial.[1]

**<u>Proffered Facts</u>**

The government proffers the following facts concerning the charges at issue and pretrial detention.[2]  <u>See</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (the government is entitled to proceed by proffer in a detention hearing); <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995) (same); <u>United States v. Martir</u>, 782 F.2d 1141, 1145 (2d

---

[1]    The government makes this submission without prejudice to seeking the detention of any of the remaining defendants in the indictment, Thomas Frangiapane and Emmanuel Garafolo, who are also members or associates of the Gambino family.

[2]    The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.

1

Cir. 1986) (same).[3]

The proffer includes a description of the following: (1) the indictment and the government's investigation of the Gambino family and the defendants; (2) the legal standard applicable to the Court's determination as to the defendants's detention; and (3) the specific factors that merit detention for each defendant.

## I.   **Investigation and Indictment**

Brief overviews of the investigation that led to this indictment, and the charges in the indictment, are set forth below:

### A.   **The Investigation**

This case is the most recent result of multi-year investigations in which the Federal Bureau of Investigation and the United States Department of Labor have used cooperating

---

[3]   As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination.  Most proceed on proffers.  See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000).  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery."  United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence.  Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

witnesses to infiltrate the Gambino organized crime family of La Cosa Nostra ("Gambino family").  These cooperating witnesses, between 2005 and 2010, made more than one thousand hours of consensual audio and video recordings of members and associates of the Gambino family.  In addition, the investigations gathered evidence from civilian witnesses, documents, and long-term surveillance operations.

The cooperating witnesses referenced above, as well as other former members and associates of the Gambino family, will testify for the government in this and other cases.  They will testify that the Gambino family exists and that it is a violent criminal enterprise that engages in various crimes including murder, robbery and extortion.  They will also provide the specific details of each of the charges against the defendants in this case.  The witness testimony, audio and video recordings, and other evidence collected by these investigations reveal that the Gambino family is still entrenched in New York's construction and trucking industries, and that it remains a criminal enterprise, encumbering the region's economy and willing to engage in acts of violence in order to make illegal profits.

B.    **The Indictment**

On January 5, 2011, a grand jury in this district returned a sealed ten-count indictment charging eight defendants – Vincent Dragonetti, Thomas Frangiapane, Emmanuel Garafolo, Anthony Licata, Joseph Lombardi, Anthony O'Donnell, Anthony Scibelli and William Scotto – variously with racketeering conspiracy and extortion-related charges.

The chart below summarizes the criminal counts included in the indictment:

| Count | Description | Defendant(s) |
|-------|-------------|--------------|
| 1 | Racketeering Conspiracy | Licata, O'Donnell, Scibelli |
| 2 | Extortion Conspiracy (John Doe #1) | Garafolo, Licata, Scotto |
| 3 | Extortion Conspiracy (Sitt Asset Management) | Dragonetti, Frangiapane, Scibelli, O'Donnell |
| 4 | Extortion (Sitt Asset Management) | Dragonetti, Frangiapane, Scibelli, O'Donnell |
| 5 | Interstate Travel in-aid-of Racketeering | O'Donnell |
| 6 | Extortion Conspiracy (John Does #3 and #4) | Dragonetti, Scibelli |
| 7 | Extortion (John Does #3 and #4) | Dragonetti, Scibelli |
| 8 | Extortion Conspiracy (John Doe #3) | Licata, Lombardi |
| 9 | Extortion (John Doe #3) | Lombardi |
| 10 | Attempted Extortion (John Doe #1) | Garafolo, Licata, Scotto |

The chart below summarizes the racketeering acts alleged in the racketeering conspiracy count:

| R.A. | Description | Defendant(s) |
|------|-------------|--------------|
| 1 | Extortion Conspiracy/Attempted Extortion (Construction List) | O'Donnell |
| 2 | Extortion Conspiracy (Cracolici Dispute) | Licata |
| 3 | Extortion Conspiracy/Attempted Extortion (Cement Manufacturing) | Scibelli |
| 4 | Extortion Conspiracy/Attempted Extortion (John Doe #1) | Licata |
| 5 | Extortion Conspiracy/Attempted Extortion (Sitt Asset Management) | O'Donnell, Scibelli |
| 6 | Extortion Conspiracy/Extortion (John Does #3 and 4) | Scibelli |
| 7 | Extortion Conspiracy (John Doe #3) | Licata |
| 8 | Extortion Conspiracy/Extortion (Cement Powder Deliveries) | Scibelli |

## II.  Legal Standard

### A.  The Bail Reform Act

Under the Bail Reform Act, Title 18, United States Code, Sections 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  See 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the

community"). A finding of dangerousness must be supported by clear and convincing evidence. A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g).

### B. Organized Crime Defendants Are Likely to Commit Crimes if Released on Bail

Organized crime defendants pose a particular threat to the community due to the continuing nature of the charged enterprise and its violent criminal activities. At bottom, because organized crime defendants are career criminals who belong to an illegal enterprise, they pose a distinct threat to commit additional crimes if released on bail. See United States v. Salerno, 631 F. Supp. 1364, 1375 (S.D.N.Y. 1986) (finding that the illegal businesses of organized crime require constant attention and protection, and recognizing a strong incentive on the part of its leadership to continue business as usual).

Congress noted that defendants pose a danger to the community not only when they commit acts of violence, but when it is likely that they will commit even non-violent crimes that are

detrimental to the community.  <u>See</u> Senate Report at 3195

("language referring to safety of the community refers to the

danger that the defendant might engage in criminal activity to

the detriment of the community . . . .  The Committee intends

that the concern about safety be given a broader construction

than merely danger of harm involving physical violence").  In

<u>Salerno</u>, 631 F. Supp. at 1371, the court held:

> In light of Congress' direction that '[w]here
> there is a strong probability that a person
> will commit additional crimes if released,
> the need to protect the community becomes
> sufficiently compelling that detention is, on
> balance, appropriate' . . . .

<u>See also</u> <u>United States v. Colombo</u>, 777 F.2d 96, 99 (2d Cir.

1985).  Ultimately, the court in <u>Salerno</u> detained two leaders of

the Genovese organized crime family, noting:

> The activities of a criminal organization
> such as the Genovese Family do not cease with
> the arrest of its principals and their
> release on even the most stringent of bail
> conditions.  The illegal businesses, in place
> for many years, require constant attention
> and protection, or they will fail.  Under
> these circumstances, this court recognizes a
> strong incentive on the part of its
> leadership to continue business as usual.
> When business as usual involves threats,
> beatings, and murder, the present danger such
> people pose in the community is self evident.

631 F. Supp. at 1375.

> **C.   Elaborate Bail Packages Are Insufficient to**
> **Protect the Community Against Violent**
> **Organized Crime Defendants**

The Second Circuit repeatedly has rejected "elaborate"

7

bail packages for dangerous defendants, including leaders of organized crime families shown to be involved in violent criminal activities.  See United States v. Dono, Nos. 07-5333-cr(L), 07-5334-cr(CON), 2008 WL 1813237, at *2-3 (2d Cir. April 23, 2008) (rejecting conditions that included, among others, home detention and electronic monitoring, and a requirement that the defendant's father – a retired police officer – take "personal responsibility" for the defendant); Ferranti, 66 F.3d at 543-44 (rejecting $1 million bail secured by real property); United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993) (rejecting $3 million bail secured with real property, in-home detention, restricted visitation and telephone calls, and electronic monitoring); Colombo, 777 F.2d at 97, 100 (rejecting, among other conditions of release, $500,000 bail secured by real property).

The Second Circuit has viewed home detention and electronic monitoring as insufficient to protect the community against dangerous individuals.  In United States v. Millan, the Second Circuit held that:

> Home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills.  If the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions.

4 F.3d 1039, 1049 (2d Cir. 1993) (internal citations and

8

quotation marks omitted). <u>See</u> <u>also</u> <u>Orena</u>, 986 F.2d at 632 ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal citation and quotation marks omitted).

Similarly, courts in this district have denied dangerous defendants bail in recognition of the Second Circuit's dim view of the effectiveness of home detention and electronic monitoring. <u>See</u>, <u>e.g.</u>, <u>Dono</u>, 2008 WL 1813237, at *2-3 (noting that the idea that "'specified conditions of bail protect the public more than detention is flawed'") (quoting <u>Orena</u>, 986 F.2d at 632); <u>United States v. Cantarella</u>, No. 02-CR-307 (NGG), 2002 WL 31946862 at *3-4 (E.D.N.Y. 2002) (adopting "principle" of "den[ying] bail to 'dangerous' defendants despite the availability of home detention and electronic surveillance and notwithstanding the value of a defendant's proposed bail package"); <u>United States v. Agnello</u>, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (Gershon, J.) ("the protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility"); <u>United States v. Masotto</u>, 811 F. Supp. 878, 884 (E.D.N.Y. 1993) (rejecting bail because "the Second Circuit appears to be saying to us that in the case of 'dangerous defendants' the Bail Reform Act does not contemplate the type of conditions suggested by this Court [including home confinement and electronic monitoring] and that,

even if it did, the conditions would not protect the public or the community, given the ease with which many of them may be circumvented").

## III. **The Defendants Should Be Detained**

For the specific reasons detailed below, defendants Vincent Dragonetti, Anthony Licata, Joseph Lombardi, Anthony O'Donnell, Anthony Scibelli and William Scotto pose a danger to the community and a risk of flight, and accordingly should be detained pending trial.

As a preliminary matter, the government will present evidence at trial  – including witness testimony, the recorded statements of defendants and their coconspirators, and surveillance photographs – that will show, among other things, that each of these defendants is a member or associate of the Gambino family; that the Gambino family is a violent criminal enterprise that engages in various crimes including murder, robbery and extortion; and that each of the defendants committed the crimes charged in furtherance of the Gambino family's business.

Each of the sections (§§ A-F) regarding individual defendants, below, is self contained and does not require that any of the other defendants' sections be read as a prerequisite or to provide a complete picture.  Accordingly, the Court may review each section individually and in whichever order is most convenient.

## A.   __Vincent Dragonetti__

Vincent Dragonetti is a Gambino family soldier who was captured on a consensual audio recording threatening extortion victims by informing them, "I don't know anyone who gets hurt unless they have to get hurt."  On June 5, 2008, he pleaded guilty in this district to participating in a racketeering conspiracy, charged as the Gambino family of La Cosa Nostra, in violation of 18 U.S.C. § 1962(d), during the time frame of the crimes with which he is charged in this indictment.  Dragonetti has enjoyed a special standing within the family as a result of his status as the son-in-law of powerful Gambino family captain, Nicholas Corozzo.

### 1.   Nature and Circumstances of the Crimes Charged

Dragonetti has been charged in the indictment with two counts of extortion conspiracy and two counts of extortion. Extortions are crimes of violence.  See 18 U.S.C. § 3156(a)(4)(A) (defining "crime of violence" as an offense that has as one of its elements the "attempted use, or threatened use of physical force against the person or property of another").

The Sitt Asset Management extortion-related counts (three and four), with which Dragonetti, along with Frangiapane, Scibelli and O'Donnell are charged, involved a March 2008 construction lien that a mob-controlled subcontractor, ACE, filed against a mob-controlled contractor, Duramax, at a condominium

11

development project on Avenue P in Brooklyn.  The lien was based
on phony documentation indicating that ACE had preformed certain
work at the site that it had not done.  This scheme was designed
to compel the condominium project developer, Sitt Asset
Management ("Sitt"), to pay hundreds of thousands of dollars to
settle the lien so as not to jeopardize Sitt's ability to obtain
bank financing for the project.  In the end, Sitt, unaware that
the documentation connected with the lien was fraudulent, and
fearful that the lien would impede its ability to proceed with
the project, paid ACE $120,000 to release the lien.

The counts related to the extortion of John Does #3 and
#4 (counts six and seven), involve Dragonetti's and Scibelli's
actions, subsequent to the successful extortion of Sitt, to make
John Does #3 and #4, the principals of ACE, pay Dragonetti and
Scibelli more than they and had agreed to pay – $40,000 of the
$120,000 that Sitt had been induced to pay as a result of the
phony lien.  During the course of this extortion, Dragonetti
threatened John Doe #3 and John Doe #4, as discussed below.  See
infra, § A.3.  In the end, Dragonetti and Scibelli succeeded in
extorting a payment of $30,000 from John Doe #3 and John Doe #4.

2.   History and Characteristics of the Defendant

Dragonetti is a Gambino family soldier – a criminal who
has sworn an oath to a violent criminal enterprise.  He also is a
convicted felon who has pleaded guilty in the past to the same

12

conduct he has been charged with in this indictment.

In 1997, Dragonetti was arrested in the Eastern District of New York and charged with RICO and RICO conspiracy. On November 3, 1997, he pleaded guilty, before the Honorable Frederic Block, to loansharking, conducting an illegal gambling business and tax evasion, and was sentenced principally to three years' imprisonment and a $60,000 fine.

In 2008, less than ten years after his release from prison, Dragonetti was again arrested in the Eastern District of New York.  He was charged with racketeering conspiracy, extortion, attempted extortion, extortion conspiracy, extortionate extension of credit, extortionate extension of credit conspiracy, extortionate collection of credit, extortionate collection of credit conspiracy, money laundering, money laundering conspiracy and illegal gambling.  On August 8, 2008, he pleaded guilty before the Honorable Jack B. Weinstein to racketeering conspiracy, including two predicate acts of extortion, and was sentenced principally to 37 months' imprisonment and a $25,000 fine.  Dragonetti is currently incarcerated pursuant to this sentence.

       3.    Seriousness of Danger Posed by the Defendant's Release

"I don't know anyone who gets hurt unless they have to get hurt."  These were Dragonetti's own words, uttered to extortion victims John Doe #3 and John Doe #4 at the time the men

were setting up their scheme to extort money from Sitt.  These words reflect Dragonetti's dangerousness.

As indicated by Federal Bureau of Investigation surveillance going back to 1993, Dragonetti has long been involved with Gambino family.  His criminal history reveals his involvement in crimes of violence.  His involvement in crimes of violence is further reflected in the extortions charged in this indictment against Dragonetti and his co-conspirator, Anthony Scibelli.  As part of Dragonetti and Scibelli's shake down of John Does #3 and #4, Scibelli, who functioned as Dragonetti's sidekick and subordinate, threatened to force John Doe #3 into a "sit-down" with powerful Gambino family captain (and Dragonetti's father-in-law) Nicholas "Nicky" Corozzo.[4]

Later in the shake-down, Scibelli made reference to an individual who had caused problems for Dragonetti and Scibelli by not paying workers at job sites.  Scibelli again threatened violence against John Does #3 and #4 – this time by purporting to be concerned about the possibility of violence against the person who had failed to pay workers:

SCIBELLI:       . . . between me and you, [whispers] this
                kid's [UI].  What do we do?  Let everybody
                beat him up and . . .

JOHN DOE #3:    I don't want to see nothin' happen like that

---

[4]     In April 2008, after pleading guilty to racketeering conspiracy, Nicholas Corozzo was sentenced to thirteen and a-half years of incarceration.

```
                         to nobody.

     SCIBELLI:           You try to make . . .

     JOHN DOE #3:        I never hurt nobody or want to hurt nobody
                         over money in my whole life.

     SCIBELLI:           . . . what do we do?  Let him fuckin' [UI]?
                         First of all, if anybody hurts him, number
                         one.  Anybody could hurt anybody.  You know
                         that and I know.  Anybody could hurt anybody.
```

Scibelli made the following additional threat to John Doe #3,

touting the power of the Gambino family to inflict violence while

purporting to question the wisdom of someone who had dared to

cross a person associated with the Gambino family:

```
     SCIBELLI:           Did [the person who crossed us] know what the
                         fuck we are capable of?

     JOHN DOE #3:        Right.

     SCIBELLI:           Are you kidding me?  You don't see the
                         newspapers everyday?  They don't see what-,
                         are you kidding?  What do they think, that
                         this is make believe?
```

In short, the crimes charged in this indictment, in

light of Dragonetti's prior convictions, his own words, and those

of his criminal co-conspirator, make it clear that Dragonetti is

a danger to the community.

4.   <u>Evidence of the Defendant's Guilt</u>

The government's evidence of Dragonetti's guilt on the

charged crimes is strong.  It includes cooperating witness

testimony; consensual recordings capturing Dragonetti and his

coconspirators conducting criminal activities; surveillance

photographs and business records.

     5.   <u>Summary</u>

     Dragonetti is a member of the Gambino family charged with crimes of violence.  He has a significant criminal history, poses a danger to the community, and the evidence against him in this case is strong.  In addition, Dragonetti faces a maximum of 20 years imprisonment on each count with which he is charged. Accordingly, he constitutes a risk of flight.  <u>See</u> <u>United States v. Dodge</u>, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding the possibility of a "severe sentence" heightens the risk of flight).

     For all the reasons set forth above, the government respectfully submits that Dragonetti should be detained, pursuant to 18 U.S.C. § 3142(e), as a danger to the community and a risk of flight.

B.    **Anthony Licata**

Anthony Licata is a Gambino family soldier with prior felony convictions for committing crimes of violence as part of the Gambino family.

1.    Nature and Circumstances of the Crimes Charged

Licata has been charged in this indictment with one count of racketeering conspiracy, two counts of extortion conspiracy, and one count of attempted extortion, crimes of violence.  See 18 U.S.C. § 3156(a)(4)(A) (defining "crime of violence" as an offense that has as one of its elements the "attempted use, or threatened use of physical force against the person or property of another").

The extortion conspiracy and attempted extortion of John Doe #1 (counts two and ten) involved Licata's efforts, along with those of co-defendants Garafolo and Scotto, to force John Doe #1, a person employed in the construction industry, on an ongoing basis, to pay the Gambino family a portion of his earnings.  The government will present evidence at trial that, as a part of their efforts to extort John Doe #1, Licata and his co-conspirators menaced John Doe #1's family home, threatened him with violence in person and on the telephone, and ultimately assaulted and beat him.

The extortion conspiracy of John Doe #3 involved Licata's demand that a different person employed in the

17

construction industry, John Doe #3, pay him $30,000.  When John Doe #3 refused to do so, in the fall and winter of 2007 - 2008, Licata repeatedly contacted John Doe #3 to insist that he reach out to co-defendant and Gambino soldier Joseph Lombardi to discuss payment of the money; Licata further threatened that, if the issue were not resolved between Lombardi and John Doe #3, Licata would call in even higher members of the Gambino family hierarchy to get the money he demanded.  As set forth above, and as will be shown at trial through witness testimony and consensual recordings, the involvement of Lombardi and the intervention of Gambino family higher-ups meant the very real possibility of violence.  John Doe #3 managed to avoid a show-down with Licata prior to February 2008, when Licata was arrested (along with co-defendants Dragonetti, O'Donnell, Scibelli and Scotto) and incarcerated in this district on extortion charges.

Licata is also charged with racketeering conspiracy (count one).  In addition to the extortion and extortion conspiracies referenced above, the racketeering conspiracy count contains, as an underlying predicate act, an allegation of an additional similar extortion conspiracy (racketeering act two – the Cracolici Dispute).  On May 30, 2008, Licata pleaded guilty to this crime, in this district, which was charged as a substantive count in United States v. Joseph Agate, et al.,

18

08-CR-76 (S-1)(JBW).[5]  In brief, in approximately January 2006,
when Gambino family associate Gino Cracolici claimed that John
Doe #1 owed him $70,000 , he turned to Licata and co-defendant
Scotto, who conspired to force John Doe #1 to pay the money upon
threat of violence.

    2.   <u>History and Characteristics of the Defendant</u>

Licata is a Gambino family soldier – a criminal who has
sworn an oath to a violent criminal enterprise.  He also is a
convicted felon who has pled guilty in the past to the same sort
of criminal conduct with which he has been charged in this
indictment.

In 1993 and 1995, Licata pleaded guilty to gambling-
related charges in Kings County, and sentenced principally to a
conditional discharge (1993) and a fine (1995).

In 2008, Licata was arrested in the Eastern District of
New York with other members of the Gambino family, and charged
with racketeering conspiracy, extortion conspiracy, attempted
extortion, extortionate extension of credit, theft of union
benefits, mail fraud conspiracy, mail fraud and false statements.
As set forth above, on May 30, 2008, Licata pleaded guilty to
extortion conspiracy and was sentenced principally to a fifteen-
month term of incarceration and a $6,000 fine.

_____

[5]    This was a racketeering conspiracy predicate acts to
which William Scotto allocuted as a part of his guilty plea in
the same case.

      3.    Seriousness of Danger Posed by the
           Defendant's Release

Based on the evidence proffered above, in particular Licata's involvement in the entirely separate extortions schemes with regard to John Does #s 1, 2 and 3, his physical beating of John Doe #1, and his blood oath to the Gambino family, Licata's release necessarily will pose a danger to the community.

      4.   Evidence of the Defendant's Guilt

The government's evidence of Licata's guilt on the charged crimes is strong.  It includes the testimony of multiple witnesses, consensual audio recordings capturing Licata and his coconspirators conducting criminal activities, as well as surveillance photographs and business records.

      5.   Summary

Licata is a member of the Gambino family charged with crimes of violence.  He has a significant criminal history, poses a danger to the community, and the evidence against him in this case is strong.  In addition Licata faces 20 years' imprisonment on each count with which he is charged.  Accordingly, he constitutes a risk of flight.  See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding the possibility of a "severe sentence" heightens the risk of flight).

For all the reasons set forth above, the government respectfully submits that Licata should be detained, pursuant to 18 U.S.C. § 3142(e), as a danger to the community and a risk of flight.

C.   **Joseph Lombardi**

Joseph Lombardi is a Gambino family soldier who, were he to be released, would present a danger to the community and a risk of flight.

1.   Nature and Circumstances of the Crimes Charged

Lombardi is charged with conspiring to extort and extorting John Doe #3.  When John Doe #3 refused to pay co-conspirator Anthony Licata $30,000 to satisfy an alleged debt, in the fall and winter of 2007 – 2008, Licata repeatedly contacted John Doe #3 to insist that he reach out to co-defendant and Gambino soldier Joseph Lombardi to discuss payment of the money; Licata further threatened that, if the issue were not resolved between Lombardi and John Doe #3, Licata would call in even higher members of the Gambino family hierarchy to get the money he demanded.  As set forth above, and as will be shown at trial through witness testimony and consensual recordings, the involvement of Lombardi and the intervention of Gambino family higher-ups meant the very real possibility of violence.

John Doe #3 managed to avoid a show-down with co-defendant Licata prior to February 2008, when Licata was arrested (along with co-defendants Dragonetti, O'Donnell, Scibelli and Scotto) and incarcerated in this district on extortion charges. Lombardi, however, did not let the matter drop.  Lombardi was later captured on an audio recording complaining to John Doe #3 that John Doe #3 had not reached out to Lombardi:

21

LOMBARDI:        The last time I wanted to see you, I got a
                 message back from Anthony [Licata] (U/I), he
                 says [John Doe #3] is not gonna meet with
                 you.  Alright, so ok, he says that he doesn't
                 have to-, he was told he doesn't have to meet
                 with you, he doesn't have to acknowledge you.
                 Ok, I says,  well then somebody's gotta tell
                 me who the guy is so I could go see him face-
                 to-face.  So, is that the case?  Did somebody
                 tell you that?

JOHN DOE #3:     Uh . . .

LOMBARDI:        'Cuz you're gonna have to tell me who, 'cause
                 I'm gonna have to, maybe I'm-, physically go
                 see him.

Ultimately, Lombardi negotiated a $7,500 "settlement" of the $30,000 claim, payable in installments to Lombardi.  John Doe #3 made payments to Lombardi amounting to $3,500 in 2009, before John Doe #3's proactive involvement in the investigation ended.

### 2.   History and Characteristics of the Defendant

Joseph Lombardi is a Gambino family soldier who, as reflected in this memorandum, uses threats and violence to help attain the family's criminal objectives.  Lombardi's criminal history reflects that he was arrested on numerous occasions between 1962 and 1973, and charged with numerous state felony offenses including grand larceny; robbery in the first degree: forcible theft armed with a deadly weapon; possession of a dangerous weapon – 2nd offense; and reckless endangerment in the first degree.  In addition, during this period, Lombardi was charged with the misdemeanor offense of public lewdness.  The

criminal history databases do not reflect the disposition of
these charges, with the exception of a 1973 case which charged
reckless endangerment and public lewdness, in which it appears
the defendant pleaded guilty to a attempting to commit a
misdemeanor and was sentenced principally to a ten-day period of
incarceration and a $100 fine.

      3.   Seriousness of Danger Posed by the Defendant's
          Release

      In addition to the evidence proffered above, which
includes Lombardi's threat to "physically go see" the person whom
he believed had instructed John Doe #3 that John Doe #3 did not
have to meet with Lombardi, Lombardi made it clear that he is a
dangerous person.  For example, in 2009, during the period that
he was extorting John Doe #3, Lombardi threatened John Doe #3 by
purporting to give him advice about how to handle people who
don't pay what their owed:

> You gotta, you know-, it's like this kid,
> this . . . douchebag, what are you fuckin'
> doing?  I'm gonna shut you out and shut you
> down everywhere I can and I will, and if I
> find out you get any more money, I'm gonna
> come to your house for my money, you fucked
> me, ok?  You says, you're a piece of shit,
> and I will fuck you back, don't worry about
> that.

That Lombardi would take such a course of action, and inflict
harm upon John Doe #3, could be no surprise.  Prior to the above-
referenced threat to John Doe #3, in order to extort $30,000 from
him, Lombardi loitered around the house belonging to John Doe #3

23

and his wife; made an appointment with a realtor to go see John Doe #3's house, which was for sale; and then, when John Doe #3 was able to stay out of sight, provided a realtor with a false name and real telephone number, and asked that the realtor arrange to have John Doe #3 call him – all of which was conduct designed to instill fear.

### 4.   Evidence of the Defendant's Guilt

The government's evidence of Lombardi's guilt on the charged crimes is strong.  It includes witness testimony, consensual audio and video recordings capturing Lombardi and his coconspirators conducting criminal activities, surveillance photographs and other documents.

### 5.   Summary

Lombardi is a member of the Gambino family charged with crimes of violence.  He poses a danger to the community and the evidence against him in this case is strong.  In addition he faces 20 years' imprisonment on each count with which he is charged.  Accordingly, Lombardi constitutes a risk of flight. See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding the possibility of a "severe sentence" heightens the risk of flight).

For all the reasons set forth above, the government respectfully submits that Lombardi should be detained, pursuant to 18 U.S.C. § 3142(e), as a danger to the community and a risk of flight.

24

D.   **Anthony O'Donnell**

O'Donnell is a Gambino family associate.  At one time, he served as the right hand man to Edward Garafola, a Gambino soldier who was a member of the Gambino family's "construction panel," a body which oversees the Gambino family's construction rackets.  As set forth below, O'Donnell later served as a special resource for Gambino captain Ernest Grillo.

1.   Nature and Circumstances of the Crimes Charged

O'Donnell is charged with racketeering conspiracy, extortion conspiracy, extortion and interstate travel in-aid-of racketeering, all connected with the extortion of Sitt Asset Management.  In addition, one of the racketeering acts underlying the racketeering conspiracy charge alleges extortion conspiracy and attempted extortion, in connection with Gambino family efforts to extort large numbers of persons and companies in the New York City area construction industry.

The Sitt Asset Management extortion-related counts (three and four), with which O'Donnell is charged, along with Dragonetti, Frangiapane and Scibelli, involved a March 2008 construction lien that a mob-controlled subcontractor, ACE, filed against a mob-controlled contractor, Duramax, at a condominium development project on Avenue P in Brooklyn.  The lien was based on phony documentation, prepared by O'Donnell at his home in New Jersey, indicating that ACE had preformed certain work at the

25

site that it had not done.[6]  This scheme was designed to compel the condominium project developer, Sitt Asset Management ("Sitt"), to pay hundreds of thousands of dollars to settle the lien so as not to jeopardize Sitt's ability to obtain bank financing for the project.  In the end, Sitt, unaware that the documentation connected with the lien was fraudulent, and fearful that the lien would impede its ability to proceed with the project, paid ACE $120,000 to release the lien.

In addition to the charges referenced above, which form one of the racketeering acts (number five) underlying the racketeering conspiracy count (count one) against him, O'Donnell also is charged with a racketeering act (number one) alleging extortion conspiracy in connection with a construction list. O'Donnell has already pleaded guilty to this crime, which was charged as a substantive count in <u>United States v. Joseph Agate, et al.</u>, 08-CR-76 (S-1)(JBW) (E.D.N.Y.).  In short, this charge is the result of efforts that O'Donnell and the Gambino family made, between 2004 and 2008, to reconstitute a list of construction companies that had been making extortion payments to then-jailed Gambino family soldier Edward Garafola prior to his incarceration.  As referenced above, Garafola had been a member

---

[6]    O'Donnell's travel between New York and New Jersey, transporting the data and documentation necessary to make the Sitt extortion a success, forms the basis of count five of the indictment, alleging interstate travel in-aid-of racketeering, and a subpredicate of racketeeting act five, underlying count one.

of the Gambino family's "construction panel," a body which oversees the Gambino family's construction rackets.  In this capacity, with the assistance of O'Donnell, Edward Garafola had exacted extortionate payments from scores of construction companies in the New York City area.  Garafola did not share the identity of all those companies with his Gambino family superiors, however, either before or after his incarceration. Because Anthony O'Donnell had been Garafola's right hand in conducting the extortions, he became a critical resource for Gambino family captain Ernest Grillo when Grillo attempted, after Garafola's incarceration, to reconstitute the list of companies that had previously been forced to make extortion payments to the Gambino family, and then to recommence the extortions.

       2.   <u>History and Characteristics of the Defendant</u>

     O'Donnell is a an associate within the Gambino family who has pled guilty in the past to crimes involving violence and an association with the Gambino family.

     In 1993, he was arrested and charged, in the Southern District of New York, with crimes associated with the armed robbery of a United Parcel Service truck en route from New York to New Jersey.  On August 8, 1994, O'Donnell pleaded guilty to Hobbs Act Robbery charges.  He was sentenced principally to a term of imprisonment of 41 months, $10,000 restitution and 200 hours of community service.

     In 2008, O'Donnell was arrested and charged, in this

district, with extortion conspiracy and attempted extortion, in connection with his role in the Gambino family effort to reconstitute the extortion list previously maintained by Edward Garafola.[7] As referenced above, O'Donnell pleaded guilty, on November 26, 2008, to extortion conspiracy, and was sentenced principally to term of imprisonment of a year and a day.

3.   Seriousness of Danger Posed by the Defendant's Release

Based on the evidence proffered above, outlining O'Donnell's involvement in multiple, separate extortion schemes, and his history of involvement in violent crime dating back nearly two decades, his release necessarily will pose a danger to the community.

4.   Evidence of the Defendant's Guilt

The government's evidence of O'Donnell's guilt on the charged crimes is strong.  It includes the testimony of witnesses, scores of hours of audio and video recordings capturing O'Donnell and his coconspirators conducting criminal activities.  In addition, the government anticipates presenting at trial surveillance evidence, business records and other documentary evidence in support of the charges.

5.   Summary

O'Donnell is an associate within the Gambino family

---

[7]   United States v. Joseph Agate, et al., 08-CR-76 (S-1) (JBW)

charged with crimes of violence.  He has a significant criminal history, poses a danger to the community, and the evidence against him in this case is strong.  In addition O'Donnell faces a maximum term of 20 years' imprisonment on the racketeering and extortion-related charges he faces, and an additional five-year term in connection with the interstate travel in-aid-of racketeering charge.  Accordingly, he constitutes a risk of flight.  See United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding the possibility of a "severe sentence" heightens the risk of flight).

For all the reasons set forth above, the government respectfully submits that O'Donnell should be detained, pursuant to 18 U.S.C. § 3142(e), as a danger to the community and a risk of flight.

E.   **Anthony Scibelli**

Scibelli is associated with the Gambino family and served as the sidekick and subordinate of Gambino soldier Vincent Dragonetti.  He has previously been convicted of extortion in connection with the Gambino family, and has been captured on tape boasting about his connections to powerful members of the Gambino family and threatening violence.

1.   Nature and Circumstances of the Crimes Charged

Anthony Scibelli is charged in this indictment with racketeering conspiracy, two counts of extortion conspiracy, and two counts of extortion.

The Sitt Asset Management extortion-related counts (three and four), with which Scibelli, along with Dragonetti, Frangiapane, and O'Donnell are charged, involved a March 2008 construction lien that a mob-controlled subcontractor, ACE, filed against a mob-controlled contractor, Duramax, at a condominium development project on Avenue P in Brooklyn.  The lien was based on phony documentation indicating that ACE had preformed certain work at the site that it had not done.  This scheme was designed to compel the condominium project developer, Sitt Asset Management ("Sitt"), to pay hundreds of thousands of dollars to settle the lien so as not to jeopardize Sitt's ability to obtain bank financing for the project.  In the end, Sitt, unaware that the documentation connected with the lien was fraudulent, and fearful that the lien would impede its ability to proceed with

30

the project, paid ACE $120,000 to release the lien.

The counts related to the extortion of John Does #3 and #4 (counts six and seven), involve Dragonetti's and Scibelli's actions, subsequent to the successful extortion of Sitt, to make John Does #3 and #4, the principals of ACE, pay Dragonetti and Scibelli more than they and had agreed to pay – $40,000 of the $120,000 that Sitt had been induced to pay as a result of the phony lien.  In the end, Dragonetti and Scibelli succeeded in extorting a payment of $30,000 from John Doe #3 and John Doe #4.

In addition to the extortion-related crimes described above,[8] Scibelli faces additional extortion allegations charged as predicate acts underlying the racketeering conspiracy charge (count one).  These additional extortions involved cement manufacturing (racketeering act three) and cement powder deliveries (racketeering act eight)the Liberty View Harbor construction site.  In 2008, Scibelli pleaded guilty to the cement manufacturing extortion.

The Liberty View Harbor site extortions began in April 2006, when John Doe #2 started a company which erected a portable cement plant at the site.  VMS, a company owned by Scibelli, served as general contractor.

John Doe #2 obtained the work at the Liberty View

---

[8]     These crimes are charged as substantive counts three, four, six and seven in the indictment; they are correspondingly charged in racketeering acts five and six.

Harbor site after Gambino family captain Nicholas Corozzo, co-defendant Dragonetti's father-in-law, granted John Doe #2 permission in return for the payment of 60% of the portable cement plant's profits to Corozzo, Gambino family captain Leonard DiMaria and Dragonetti.  In addition, Scibelli and Dragonetti demanded that John Doe #2 make an additional extortion payment of $6 or $7 per yard of cement produced, among other things.  Over the course of the extortion, John Doe #2 made extortion payments to the Gambino family of more than $200,000.  Despite these payments, during the summer of 2007, with the backing of Corozzo, DiMaria and Dragonetti, Scibelli took possession of the portable cement plant without remuneration to John Doe #2.

In October 2007, following Scibelli's takeover of John Doe #2's portable cement plant, Gambino family captains DiMaria and Corozzo approved a plan by which John Doe #2 would supply Scibelli's plant with the powder used to make cement.  For this privilege, John Doe #2 was instructed to provide extortion payments to the Gambino family comprising 60% of his profits relating to the cement powder deliveries.  John Doe #2 provided a total of $6,000 in extortion payments.

As referenced above, on June 4, 2008, Scibelli pleaded guilty in this district to extortion, in violation of 18 U.S.C. § 1951(a), in connection with the extortion of cement plant profits from John Doe #2 between April 2006 and June 2007.

      2.   <u>History and Characteristics of the Defendant</u>

As noted, Scibelli is associated with the Gambino family and served as the sidekick and subordinate of Gambino soldier Vincent Dragonetti.  He also is a convicted felon who has pleaded guilty in the past, in this district, to the type of conduct he has been charged with in this indictment.

In 1991, the defendant was arrested in Suffolk County, and charged with resisting arrest, and was sentenced principally to a 90 day term of incarceration.

In 2008, Scibelli was arrested and charged, in this district, with extortion conspiracy and extortion, in connection with his role in the Gambino family extortion of John Doe #2 at the Liberty View Harbor construction site.  As set forth above, he pleaded guilty to extortion (racketeering act two in this indictment), for which he was sentenced principally to 5 years of probation and fined $250,000.

3.    Seriousness of Danger Posed by the
      Defendant's Release

Scibelli's involvement in acts of violence is reflected in the extortions charged in this indictment.  The risk of violence to persons who caused problems for the Gambino family construction industry operations, and specifically those overseen by Scibelli and Dragonetti, was made clear by Scibelli to John Doe #3, on June 4, 2007.  On that date, when John Doe #3 initially refused to give in to Dragonetti and Scibelli's demands, Scibelli threatened to force John Doe #3 into a "sit-

33

down" with powerful Gambino family captain (and Dragonetti's father-in-law) Nicholas "Nicky" Corozzo.[9]

Later in the shake-down, Scibelli made reference to an individual who had caused problems for Scibelli and Dragonetti by not paying workers at job sites.  Scibelli again threatened violence against John Does #3 and #4 – this time by commenting on his purported concern about the possibility of violence against the person who had failed to pay workers:

        SCIBELLI:       . . . between me and you, [whispers] this
                        kid's [UI].  What do we do?  Let everybody
                        beat him up and . . .

        JOHN DOE #3:    I don't want to see nothin' happen like that
                        to nobody.

        SCIBELLI:       You try to make . . .

        JOHN DOE #3:    I never hurt nobody or want to hurt nobody
                        over money in my whole life.

        SCIBELLI:       . . . what do we do?  Let him fuckin' [UI]?
                        First of all, if anybody hurts him, number
                        one.  Anybody could hurt anybody.  You know
                        that and I know.  Anybody could hurt anybody.

Scibelli made the following additional threat to John Doe #3, touting the power of the Gambino family to inflict violence while purporting to question the wisdom of someone who had dared to cross a person associated with the Gambino family:

        SCIBELLI:       Did [the person who crossed us] know what the
                        fuck we are capable of?

---

        [9]     In April 2008, after pleading guilty to racketeering
conspiracy, Nicholas Corozzo was sentenced to a thirteen and a-
half year sentence of incarceration.

```
JOHN DOE #3:      Right.

SCIBELLI:         Are you kidding me?  You don't see the
                  newspapers everyday?  They don't see what-,
                  are you kidding?  What do they think, that
                  this is make believe?
```

In short, the crimes charged in this indictment, the threats Scibelli has been recorded issuing, as well as his prior convictions, make it clear that Scibelli is a danger to the community.

        4.   <u>Evidence of the Defendant's Guilt</u>

Evidence of Scibelli's guilt is strong.  It includes the testimony of witnesses, consensual audio recordings capturing Scibelli and his coconspirators conducting criminal activities, surveillance photographs, and documentary evidence.

        5.   <u>Summary</u>

Scibelli is associated with the Gambino family and is charged with crimes of violence.  He has a significant criminal history, poses a danger to the community, and the evidence against him in this case is strong.  In addition, Scibelli faces a maximum of 20 years imprisonment on each count with which he is charged.  Accordingly, he constitutes a risk of flight.  <u>See</u> <u>United States v. Dodge</u>, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding the possibility of a "severe sentence" heightens the risk of flight).

For all the reasons set forth above, the government respectfully submits that Scibelli should be detained, pursuant to 18 U.S.C. § 3142(e), as a danger to the community and a risk of flight.

**F.   William Scotto**

William Scotto is a Gambino family soldier with prior felony convictions for committing crimes of violence as part of the Gambino family.

1.   Nature and Circumstances of the Crimes Charged

Scotto has been charged in this indictment with crimes of violence – one count of extortion conspiracy, and one count of attempted extortion.  See 18 U.S.C. § 3156(a)(4)(A) (defining "crime of violence" as an offense that has as one of its elements the "attempted use, or threatened use of physical force against the person or property of another").

The extortion conspiracy and attempted extortion of John Doe #1 (counts two and ten) involved Scotto's efforts, along with those of co-defendants Licata and Garafolo, to force John Doe #1, a person employed in the construction industry, to pay the Gambino family a portion of his earnings.  The government will present evidence at trial that, as a part of their efforts to extort John Doe #1, Scotto and his co-conspirators menaced John Doe #1's family home, threatened him with violence in person and on the telephone, and ultimately assaulted and beat him.

2.   History and Characteristics of the Defendant

On August 30, 2007, Scotto pleaded guilty to a superseding information in this district, charging him, as a member of the Gambino family, with racketeering, from January 1995 through December 1995, in violation of 18 U.S.C. §

36

1962(c).[10]  The predicate acts underlying the charge were
extortion and extortion conspiracy.  On December 20, 2008, Scotto
was sentenced principally to three years' imprisonment and a
$10,000 fine, and was ordered to surrender on April 7, 2008, for
the execution of his prison sentence .

Later in 2008, Scotto was again indicted in this
district.  He was charged, as a member of the Gambino family,
with Racketeering conspiracy, in violation of 18 U.S.C. §
1962(d).[11]  Scotto pleaded guilty to participating in the charged
conspiracy between February 1996 and February 2008, and allocuted
to 2005 and 2006 predicate acts of extortion and extortion
conspiracy.

> 3.   Seriousness of Danger Posed by the Defendant's
>      Release

On December 12, 2006, the day after his arrest in the
above-referenced 2006 Case, Scotto was released from detention
pursuant to a $1,000,000 bond, secured by seven suretors and
three properties.  Despite this notable bail package, while on
release Scotto nonetheless participated in the extortion of John
Doe #1, alleged in this indictment, including participating in
the beating of John Doe #1 in or about December 2007.  In his May
29, 2008 allocution in the 2008 Case, Scotto admitted that he

---

[10]   United States v, Gammarano, et al., 06 -CR-0072 (CPS)
(the "2006 Case").

[11]   United States v. Joseph Agate, et al., 08-CR-76 (S-1)
(JBW) (the "2008 Case").

engaged in a racketeering conspiracy throughout the approximately 14 months he was free on bail in the 2006 Case.  In short, even with all that was at stake for Scotto, and seven others who put their own assets and livelihoods at risk on his behalf, the severe bail conditions set in the 2006 case were insufficient to keep Scotto from engaging in violent crime.  His continued crimes while on bail demonstrate that Scotto cannot be trusted to comply with the orders of this Court.

Based on the evidence proffered above, in particular the defendant's involvement in extortion, violence, and racketeering conspiracy, despite being on pretrial release pursuant to a significant bond, Scotto's release would pose a danger to the community.

### 4. Evidence of the Defendant's Guilt

The government's evidence of Scotto's guilt on the charged crimes is strong.  It includes witness testimony, consensual audio recordings capturing Scotto and his coconspirators conducting criminal activities, as well as surveillance photographs and business records.

### 5. Summary

Scotto is a member of the Gambino family charged with crimes of violence.  He has a significant criminal history, poses a danger to the community, and the evidence against him in this case is strong.  In addition, he has demonstrated previously that even significant bail is inadequate to deter him from continuing

38

to participate in criminal activity.  In addition Scotto faces 20 years' imprisonment on each count with which he is charged. Accordingly, he constitutes a risk of flight.  <u>See</u> <u>United States v. Dodge</u>, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (finding the possibility of a "severe sentence" heightens the risk of flight).

For all the reasons set forth above, the government respectfully submits that Scotto should be detained, pursuant to 18 U.S.C. § 3142(e), as a danger to the community and a risk of flight.

**IV.   <u>Conclusion</u>**

For the reasons cited above, the government hereby moves for a permanent order of detention as to defendants Vincent Dragonetti, Anthony Licata, Anthony O'Donnell and Anthony Scibelli.

Dated:      Brooklyn, New York
            January 20, 2011

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

WHITMAN KNAPP
DUNCAN LEVIN
Assistant United States Attorneys
     (Of Counsel)