# Exhibit A

## Page 1

```
                                                                1
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2  - - - - - - - - - - - - X
 3
 4  UNITED STATES OF AMERICA,   :    08-CR-76(JBW)
 5                              :
    -against-                   :    United States Courthouse
 6                              :    Brooklyn, New York
 7                              :
                                :    August 14, 2008
 8  ANTHONY SCIBELLI,           :    12:00 p.m.
 9         Defendant.           :
10  - - - - - - - - - - - - X
11       TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
         BEFORE THE HONORABLE JACK B. WEINSTEIN
12          UNITED STATES SENIOR DISTRICT JUDGE
13              A P P E A R A N C E S :
14  For the Government: BENTON J. CAMPBELL, ESQ.
                        United States Attorney
15                      Eastern District of New York
                        271 Cadman Plaza East
16                      Brooklyn, New York 11201
                    BY: DANIEL D. BROWNELL, ESQ.
17                      JOSEPH LIPTON, ESQ.
                        ROGER A. BURLINGAME, ESQ.
18
    For the Defendant: GERALD L. SHARGEL, ESQ.
19                     570 Lexington Avenue
                       New York, New York  10022
20
    Probation:         Sindee Haasnoot
21
    Court Reporter:    Marie Foley, RPR, CRR
22                     Official Court Reporter
                       Telephone: (718) 613-2598
23                     Facsimile: (718) 613-2648
                       E-mail: Marie_Foley@nyed.uscourts.gov
24
25  Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.
```

Marie Foley, RPR, CRR
Official Court Reporter

## Page 2

```
                    Proceedings                             2
 1         (Open court.)
 2         (Defendant present.)
 3         COURTROOM DEPUTY:  Criminal cause for sentencing,
 4  USA versus Anthony Scibelli.
 5         Appearances.
 6         MR. BROWNELL:  Daniel Brownell, Roger Burlingame,
 7  and Joey Lipton for the Government.  Good afternoon, your
 8  Honor.
 9         MR. SHARGEL:  Gerald Shargel and Ross Kramer for Mr.
10  Scibelli.  Good afternoon.
11         PROBATION OFFICER:  Sindee Haasnoot for Probation.
12  Good afternoon.
13         THE COURT:  Good afternoon.
14         Swear the defendant, please.
15         COURTROOM DEPUTY:  Sir, please stand up and raise
16  your right hand.
17         (Defendant sworn.)
18         COURTROOM DEPUTY:  Please state your name and spell
19  it for the record.
20         THE DEFENDANT:  Anthony Scibelli, S-C-I-B-E-L-L-I.
21         THE COURT:  Does the defendant wish a family member
22  here?
23         MR. SHARGEL:  Yes, his wife is present, as well as
24  other family members, but his wife.
25         THE COURT:  Whoever you want.
```

Marie Foley, RPR, CRR
Official Court Reporter

## Page 3

```
                    Proceedings                             3
 1         MR. SHARGEL:  Please step forward.
 2         (Mrs. Scibelli steps forward.)
 3         MRS. SCIBELLI:  Good morning.
 4         THE COURT:  Do you require an interpreter?
 5         THE DEFENDANT:  No, sir.
 6         THE COURT:  Is that so?
 7         MR. SHARGEL:  That's correct.
 8         THE COURT:  Have you read the presentence report
 9  and had it explained by your attorney?
10         THE DEFENDANT:  Yes, your Honor.
11         THE COURT:  Are you ready to be sentenced?
12         THE DEFENDANT:  Yes, your Honor.
13         THE COURT:  Of what country are you a citizen?
14         THE DEFENDANT:  United States, your Honor.
15         THE COURT:  You may not be deported for this crime.
16  Are you satisfied with your attorney?
17         THE DEFENDANT:  Yes, your Honor.
18         THE COURT:  Does the attorney have a conflict?
19         MR. SHARGEL:  There was a potential conflict that
20  was waived at an earlier appearance.  Mr. Mazurek of my firm
21  represents Mr. Dragonetti.
22         THE COURT:  You understand that?
23         THE DEFENDANT:  Yes, your Honor.
24         THE COURT:  And you understand that being
25  represented by somebody who may have a conflict may be adverse
```

Marie Foley, RPR, CRR
Official Court Reporter

## Page 4

```
                    Proceedings                             4
 1  to you?
 2         THE DEFENDANT:  Yes, your Honor.
 3         THE COURT:  And do you still want this attorney to
 4  represent you?
 5         THE DEFENDANT:  Yes, your Honor.  It's all right.
 6         THE COURT:  Any unresolved motions or contentions?
 7         MR. BROWNELL:  No, your Honor.
 8         MR. SHARGEL:  There are exceptions that were taken
 9  to the probation report.
10         THE COURT:  All right.  I'll hear them in a moment.
11  Are you seeking a downward departure?
12         MR. SHARGEL:  Not on this record, no, sir.
13         THE COURT:  Does anybody object to a video
14  recording?
15         MR. SHARGEL:  No, sir.
16         THE COURT:  Did both sides use the guidelines manual
17  which was proper for this case?
18         MR. SHARGEL:  Yes, sir.
19         MR. BROWNELL:  Yes, judge.
20         THE COURT:  The Court observes the defendant's
21  demeanor.  He appears to be capable of understanding these
22  proceedings.
23         Does counsel agree?
24         MR. SHARGEL:  Yes, sir.
25         THE COURT:  Are you under the influence of any
```

Marie Foley, RPR, CRR
Official Court Reporter

Proceedings                                5

1   medication or drug?
2          THE DEFENDANT:  Yes, your Honor.
3          THE COURT:  What drug?
4          THE DEFENDANT:  Xanax for nerves, Depakote and
5   Lamictal, but I'm fully coherent.  I fully understand you.
6          THE COURT:  Does that affect your ability to think?
7          THE DEFENDANT:  No, sir.
8          THE COURT:  Is that correct?
9          MR. SHARGEL:  It's correct.
10         THE COURT:  Is there a victim statement?
11         MR. BROWNELL:  Judge, that, along with the other
12  matters, I believe will be resolved on September 16th.
13         MR. SHARGEL:  We're aware of the scheduling order.
14         THE COURT:  That's a restitution issue.
15         MR. BROWNELL:  I'm sorry, your Honor.  Correct,
16  there is not a victim statement, but there will be.  Right,
17  but it will be in connection with the matter on the 16th.
18         THE COURT:  You agree?
19         MR. SHARGEL:  Yes.
20         THE COURT:  We'll sentence you today, but I won't
21  decide the issue of possible restitution because I want to
22  take evidence and consider a technical series of matters.
23         Do you understand that?
24         THE DEFENDANT:  Yes, your Honor.
25         THE COURT:  Do you approve?

Proceedings                                6

1          THE DEFENDANT:  Yes, your Honor.
2          THE COURT:  Do we have the transcript?
3          Do you have the transcript?
4          MR. BROWNELL:  I don't, your Honor.
5          MR. SHARGEL:  Do you mean the guilty plea?
6          MR. BROWNELL:  I do, your Honor (handing.)
7          THE COURT:  Mark this as Court Exhibit 1.
8          (Court Exhibit 1 was marked.)
9          THE COURT:  Sir, would you look at the transcript of
10  June 4th, 2008 and tell me whether, insofar as it relates to
11  you, it's accurate.
12         THE DEFENDANT:  Yes, judge.  Yes, your Honor.  I'm
13  sorry.
14         THE COURT:  Is it accurate?
15         THE DEFENDANT:  Yes, yes.
16         THE COURT:  Did anybody make any threats or promises
17  to induce you to say what you said?
18         THE DEFENDANT:  No, your Honor.
19         THE COURT:  Was it entirely voluntary?
20         THE DEFENDANT:  Yes, your Honor.
21         THE COURT:  Was everything you said truthful?
22         THE DEFENDANT:  Yes, your Honor.
23         THE COURT:  How do you plead, guilty or not guilty?
24         THE DEFENDANT:  Not -- guilty.  I'm sorry, your
25  Honor.  I'm sorry.

Proceedings                                7

1          THE COURT:  You plead guilty.
2          THE DEFENDANT:  I plead guilty.  I'm sorry.
3          THE COURT:  Based on the information before me, I
4   accept the plea.
5          Do you wish a Fatico hearing?
6          MR. SHARGEL:  No, sir.
7          THE COURT:  Do you wish a jury trial on any issue?
8          MR. SHARGEL:  No, sir.
9          THE COURT:  You may address the Court yourself.
10  Your attorney will address the Court, and you can have
11  witnesses.
12         Do you understand?
13         THE DEFENDANT:  Yes, your Honor.
14         THE COURT:  Are you challenging anything in the
15  presentence report?
16         MR. SHARGEL:  Yes, sir.
17         THE COURT:  What?
18         MR. SHARGEL:  The challenges to the presentence
19  report are reflected in a letter to the Court dated July 30th,
20  2008, but I'll go over them at this time.
21         THE COURT:  Yes.
22         MR. SHARGEL:  First, your Honor, we move to strike
23  certain paragraphs of the presentence report, specifically,
24  paragraphs 5 through 16.
25         THE COURT:  Wait just a moment.

Proceedings                                8

1          (Pause in the proceedings.)
2          THE COURT:  Yes.
3          MR. SHARGEL:  Just to give you an overview, and I
4   think you've heard this before, I'm moving to strike
5   paragraphs that have no bearing on this defendant's conduct.
6          THE COURT:  Yes.
7          MR. SHARGEL:  And I don't think that this report
8   should be shepherded along through the system with serious
9   allegations that have nothing whatever to do with him.
10         So I'm referring to paragraphs 5 through 16, 18
11  through 67, 71 through 134, and I think that is it.
12         THE COURT:  Add before Charges and Convictions the
13  following:  The material in paragraphs 5 to 16, 18 to 61 and
14  71 to 134 have not been proven as to this defendant, but the
15  Government claims supporting evidence.
16         What else?
17         MR. SHARGEL:  Your Honor, there is an allegation in
18  paragraphs 70 and 138 of the presentence report, an allegation
19  that's reflected also in the Government's letter to you dated
20  August the 3rd, 2008, where it reported certain facts in
21  connection with this defendant and other defendants as well,
22  regarding, I'll give you the quote, that Mr. Scibelli took
23  possession of the portable cement plant without remuneration
24  to John Doe No. 4.
25         That's simply incorrect.  We attached to the letter

Proceedings                                          9

```
 1   that we sent your Honor on July 30th showing exactly the
 2   remuneration that was paid.
 3            THE COURT:  That's my impression that there was
 4   something paid.
 5            MR. BROWNELL:  Judge, what was paid, the rest of the
 6   lease was paid on the machine.  None of the equity which John
 7   Doe No. 4 put into the machine was ever paid back to him from
 8   either this defendant, Mr. Dragonetti or the other Gambino
 9   family members involved in this extortion.
10            MR. SHARGEL:  The answer to that is very simple.
11   There was no equity.  It was purchased the year before for
12   $220,000.  I'm using round numbers.  $186,000 was left on the
13   lease, and the plant was a wreck.  We have photographs that
14   are appended to our submission, and our position is that there
15   was no equity.  Mr. Scibelli spent thousands of dollars and
16   man hours of his employee to bring the portable plant up to
17   specs to allow it to operate.  So Mr. Scibelli, arguably,
18   overpaid for this plant, and the idea that he simply took it,
19   as this paragraph makes it seem like he snatched it or
20   extorted it or stole it, he didn't.  He paid off -- you have
21   all the receipts.  He paid off an amount in excess, I believe,
22   of $180,000, and it's not fair to say that he took it without
23   any kind of remuneration, using the Government's word.
24            MR. BROWNELL:  Your Honor, there was no
25   remuneration --
```

Proceedings                                          10

```
 1            THE COURT:  It will read as follows:  Dragonetti,
 2   Scibelli and Sabella --
 3            MR. SHARGEL:  Scibelli, your Honor.
 4            THE COURT:  Scibelli took possession of the portable
 5   cement plant without, as the Government claims, full
 6   remuneration.
 7            That's the way it will read.  There was some
 8   remuneration.
 9            What other paragraphs do you want changed?
10            MR. SHARGEL:  Well, in terms of objections, the
11   Government failed to accord Mr. Scibelli with the minor
12   role --
13            THE COURT:  I know.  Any other change in the --
14            MR. SHARGEL:  In the report itself?
15            THE COURT:  -- report?
16            MR. SHARGEL:  No.
17            THE COURT:  I'll get to the computations in a
18   moment.
19            MR. SHARGEL:  Very well.
20            THE COURT:  Any particularized findings of fact or
21   law, except for computations, that either side wants?
22            MR. SHARGEL:  No, sir.
23            MR. BROWNELL:  No, your Honor.
24            THE COURT:  Was there any obstruction of justice
25   here?
```

Proceedings                                          11

```
 1            MR. BROWNELL:  No, your Honor.
 2            THE COURT:  Do you have any assets?
 3            THE DEFENDANT:  Yes, your Honor.
 4            THE COURT:  What?
 5            THE DEFENDANT:  I own my own house in 222 Holland
 6   Avenue.  I own property in Singer Island, Florida.
 7            THE COURT:  Cars?
 8            THE DEFENDANT:  Yes.  I own a Mercedes, 2004
 9   Mercedes 500SL I own outright.  I have bank accounts,
10   insurance.
11            THE COURT:  What's the value of your bank accounts
12   now?
13            THE DEFENDANT:  Over a million dollars.
14            THE COURT:  Hundred dollar special assessment, and
15   the fine will depend upon the guideline.  The defendant can
16   pay a substantial fine.
17            Restitution will be decided on September 16th at the
18   hearing.
19            Hundred dollar special assessment.  It's one count?
20            MR. BROWNELL:  Yes, sir.
21            THE COURT:  Payable forthwith, no interest.
22            Supervised release is three years subject to 5D1.2,
23   5D1.3.
24            Do you want those provisions read?
25            MR. SHARGEL:  No, sir.
```

Proceedings                                          12

```
 1            THE COURT:  Have you ever been treated for a
 2   psychiatric problem?
 3            THE DEFENDANT:  I've seen a psychiatrist, yes, your
 4   Honor.
 5            THE COURT:  Are you under any treatment now?
 6            THE DEFENDANT:  Yes, I'm sorry.
 7            THE COURT:  For what?
 8            THE DEFENDANT:  Just for my nerves and --
 9            THE COURT:  Nervousness?
10            THE DEFENDANT:  Nervousness and a bipolar disorder.
11            THE COURT:  Are you taking any medication for that?
12            THE DEFENDANT:  Yes.
13            THE COURT:  What?
14            THE DEFENDANT:  I stated earlier Xanax, Depakote and
15   Lamictal, small doses.
16            MR. SHARGEL:  Your Honor, there's a report that's
17   appended to our submission from Dr. King, who is Mr.
18   Scibelli's treating psychiatrist, and this, by the way, goes
19   back to 2003 when he first saw Dr. King.
20            THE COURT:  Psychiatric treatment shall be afforded
21   while incarcerated and during supervised release.
22            Do you take drugs or alcohol?
23            THE DEFENDANT:  No, sir.
24            THE COURT:  Gambling?
25            THE DEFENDANT:  No.
```

```
                    Proceedings                    13
1          THE COURT:  You're to have no guns --
2          THE DEFENDANT:  No, sir.
3          THE COURT:  -- while on supervised release.
4          THE DEFENDANT:  No, sir.
5          THE COURT:  Take no drugs except by prescription.
6          THE DEFENDANT:  Yes.
7          THE COURT:  And have nothing to do with any
8   criminals.
9          Do you have any relatives?
10         THE DEFENDANT:  No, sir.
11         THE COURT:  And nothing to do with this gang.
12         Was any of your property taken when you were
13  arrested?
14         THE DEFENDANT:  I have my -- my house at 222 Holland
15  Avenue on bond and my mom's house on bond, which she --
16         THE COURT:  But they didn't take anything from you
17  personally?
18         THE DEFENDANT:  No, your Honor.  They just, they
19  also came to my office in the city and confiscated, you know,
20  my office material.
21         THE COURT:  But you're returning those at the end of
22  prosecution?
23         MR. BROWNELL:  Yes, your Honor.
24         THE COURT:  Is there a limit on the right to appeal?
25         MR. BROWNELL:  There is, judge.
```
Marie Foley, RPR, CRR
Official Court Reporter

```
                    Proceedings                    14
1          THE COURT:  What is the cutoff?
2          MR. BROWNELL:  I believe if the sentence is 30
3   months or above.
4          THE COURT:  Or less.
5          MR. BROWNELL:  I'm sorry, judge.  Thirty months or
6   below.
7          THE COURT:  Do you understand if it's 30 months or
8   below, you can't appeal --
9          THE DEFENDANT:  Yes, judge.
10         THE COURT:  -- from the sentence?  Although you may
11  have other causes to appeal.
12         THE DEFENDANT:  Yes, I understand.
13         THE COURT:  Any open charges?
14         MR. BROWNELL:  No, judge.
15         MR. SHARGEL:  Yes, count 60.
16         THE COURT:  Granted dismissed.
17         MR. BROWNELL:  I'm sorry.
18         THE COURT:  I'll hear you on the calculations now.
19         MR. SHARGEL:  Well, judge, just as you've had it
20  before, the principal issue in this calculation is the
21  enhancement that the Government is urging for implied threat.
22         THE COURT:  Well, let's go through it.
23         Paragraph 139, it's agreed that the base offense
24  level is 18.
25         MR. SHARGEL:  Agreed.
```
Marie Foley, RPR, CRR
Official Court Reporter

```
                    Proceedings                    15
1          THE COURT:  Now, is the Government claiming this
2   defendant is a member --
3          MR. BROWNELL:  An associate, your Honor, yes, a
4   member of the Gambino crime family.
5          MR. SHARGEL:  No, no, judge, I'm sorry.  That's not
6   the claim.  You just heard the word "associate."  He was not
7   charged in the racketeering.  He's never been alleged to be a
8   member of the crime family.  This is the first time I've ever
9   heard that.  They claim that he was an associate of the crime
10  family.
11         THE COURT:  That's what they're claiming.
12         MR. SHARGEL:  No, he just said, he used the word
13  "member."
14         THE COURT:  I know.  He misspoke.
15         MR. SHARGEL:  All right, judge.  But it made me
16  nervous anyway.
17         THE COURT:  There's no proof that he was a member.
18         MR. SHARGEL:  No, sir.
19         THE COURT:  He's an associate.  That's the claim.
20         MR. BROWNELL:  Right.
21         MR. SHARGEL:  That's the contention.
22         THE COURT:  All right.  I'll hear both sides on
23  paragraph 141.
24         MR. SHARGEL:  Judge, if I may.
25         THE COURT:  Under the plea agreement, you have the
```
Marie Foley, RPR, CRR
Official Court Reporter

```
                    Proceedings                    16
1   right to argue.
2          MR. SHARGEL:  Correct.
3          First, I would like to give you a moment of
4   background.  Some of this you've heard before, and some of
5   this you've read before, but I think the background is
6   necessary to show that there was no implied threat here and
7   what the relationship was with Victim No. 4, if you want him
8   addressed that way.  I mean, in all the papers, he's Mr.
9   Vollaro, but whatever your Honor wishes.
10         Mr. Scibelli was in business long before he ever met
11  Mr. Vollaro.  He formed this company.  I'll be speaking about
12  that at greater length later in this presentation, but he
13  formed a company that was doing very successful work in the
14  construction business.  You know that he was the principal
15  contractor, general contractor at Liberty View Harbor, the
16  project in New Jersey.  He, in negotiations with the owner,
17  Mr. Macco, and you've heard from Mr. Macco, and much of what I
18  say, virtually all of what I say, is supported by Mr. Macco's
19  report, told Mr. Scibelli or suggested to Mr. Scibelli where
20  it would be that he would get the concrete that had nothing to
21  do with anyone in Brooklyn, that it had nothing to do with any
22  organized crime figure, anyone alleged to be an organized
23  crime figure.  There was a company that had been a tenant of
24  Mr. Macco's, and it was suggested to Mr. Scibelli that he use
25  that company.
```
Marie Foley, RPR, CRR
Official Court Reporter

Proceedings 17

1    He did use that company, at the suggestion of the
2  person who had just contracted to have him do millions of
3  dollars worth of work, and there were problems with the
4  company that developed soon after that, problems that had
5  nothing to do with criminal activity, problems that had
6  nothing whatever to do with organized crime.  The problems
7  were simply this:  Because Mr. Scibelli's company was in, what
8  we call, an open shop, a nonunion open shop, and because the
9  company, Eastern Concrete, was a union shop, both the
10 employees and the owners of Eastern started to give Mr.
11 Scibelli's company problems, and the problems were that they
12 charged a very high price for the concrete.  Their deliveries
13 were erratic.  Workers threatened to stop delivery.  They
14 required something that was unheard of in the industry, that
15 payment be made in advance of each concrete pouring, and it
16 simply became unworkable.
17    Because it became unworkable, Mr. Scibelli sat with
18 Mr. Macco and told Mr. Macco the problems that he was having
19 with the suggested company, Eastern Concrete, and Mr. Macco
20 said, "Why don't you take the reigns and find another concrete
21 company?"  And Mr. Scibelli spoke to several concrete
22 companies and there came a time shortly -- and with no
23 success, by the way.  Either the prices were too high or the
24 site was too far from their plant and it didn't make any
25 practical sense in terms of the concrete.  So looking for a

Proceedings 18

1  portable, someone who would erect a portable concrete plant on
2  the premises, Mr. Dragonetti introduced, and you know that Mr.
3  Dragonetti was an employee of Mr. Scibelli's company,
4  introduced him, introduced Mr. Scibelli to Mr. Vollaro in
5  March of 2006.
6    Here's the point.  Mr. Scibelli never knew Mr.
7  Vollaro before this.  Mr. Scibelli never met either Mr.
8  Corozzo or, at that point, Mr. DiMaria.  He never met these
9  people, and when Mr. Vollaro was brought to him, he was
10 brought to him as a person who would have the ability, the
11 competence and the skill to supply the concrete for the job.
12    Now, all the relations that Mr. Scibelli had with
13 Mr. Vollaro had nothing to do, nothing whatever to do with
14 threats.  In the 42 recorded conversations that Mr. Vollaro
15 made with Mr. Scibelli, there's not a hint of a threat toward
16 Mr. Vollaro by Mr. Scibelli.  That's number one.  But more
17 importantly than that, to borrow a word that your Honor used,
18 nothing that Mr. Scibelli ever said to Mr. Vollaro was
19 freighted with any implied threat, none whatever.  He wasn't
20 policing the -- you know, the first sentence that your Honor
21 did with Mr. Filippelli, the Government, forgive me but I
22 forget which one of the assistants made the argument, but the
23 Government said, "Well, you know, this was a person who could
24 police the arrangements and would enforce just like a police
25 officer would enforce for the mob."  This was the Government's

Proceedings 19

1  argument, not mine.  "Would enforce the agreement because
2  there was always that implied sense of threat hovering in the
3  air when dealing with a member," and your Honor made
4  observations like that and distinguished between members and
5  non-members.
6    You know, judge, as I noted in my submission, there
7  were 906 calls, the phone records bear this out, between Mr.
8  Scibelli, on a cell phone, between Mr. Scibelli and Mr.
9  Vollaro over the course of the months that Mr. Vollaro was
10 supplying the concrete.  They were unrecorded.  They obviously
11 held no prosecutorial interest.  The relationship between Mr.
12 Scibelli and Mr. Vollaro was one between contractor and
13 subcontractor, in a certain manner.
14    Now, does he accept full responsibility for asking
15 for a six dollar a yard kickback or payment from Mr. Vollaro?
16 Was there a threat of economic harm?  Absolutely, and that's
17 what Mr. Scibelli pled guilty to.  That's what he allocuted to
18 in the minutes that you marked as Court Exhibit Number 1, but
19 the relationship was never a threatening relationship.  It was
20 never an ominous threat or implied threat that Mr. Scibelli
21 put forward, and more than that, as I indicated in my papers,
22 there was at least the thought in Mr. Scibelli's mind that he
23 had developed a friendship with Mr. Vollaro.  He didn't know
24 that he was a cooperator or walking around with a wire.  This
25 might have been feigned on Mr. Vollaro's part, but they talked

Proceedings 20

1  about going on vacation together.  Mr. Vollaro offered to
2  provide a room for Mrs. Scibelli and their baby, their three
3  year old daughter, now three years old, to come down to the
4  Jersey Shore and vacation together.  It might have been silly,
5  but you saw appended to my submission to our memorandum a
6  picture that Mr. Vollaro sent of his dogs dressed in Christmas
7  outfits.  He sent other pictures.  He pretended that he had
8  developed a friendship.
9    Judge, this is not a situation where Mr. Scibelli
10 was acting on behalf of the mob, associated himself with the
11 mob, exploiting the reputation of the mob to gain some
12 advantage.  This was a threat of economic harm.  About as
13 close to, if I may say, about as close to a Rule 29.  He fully
14 accepts responsibility for all of the facts, but if you look
15 at this, judge, this is a very, very close case, and I think
16 that given the relationship with Mr. Scibelli and Mr. Vollaro,
17 given his status, as the Government contends, is an associate
18 because that's a very, very loose label to put out there.  I
19 mean, he knew Mr. Dragonetti since childhood or as a very
20 young man growing up, and I think under those circumstances,
21 even without the divide of member of organized crime, not a
22 member of organized crime, there was nothing about this
23 relationship that suggested that there was some undercurrent,
24 some purposeful communication on Mr. Scibelli's part that
25 suggested that there was an implied threat.  It did not come,

## Page 21

```
                         Proceedings                      21
1    it did not come from Mr. Scibelli.
2             THE COURT:  Thank you.
3             What's the Government's view?
4             MR. BROWNELL:  Judge, it's appropriate that the two
5    points is added for the following reasons:
6             First of all, as the defense has admitted, Vincent
7    Dragonetti not only worked with Mr. Scibelli, but he was also
8    an employee of VMS, which is the very large construction
9    company that was taking on this large condominium project in
10   Jersey City.  As your Honor knows from this case, Vincent
11   Dragonetti is not only a soldier, a made soldier, in the
12   Gambino family, but he is also the son-in-law of Nicky Corozzo
13   who your Honor sentenced -- excuse me, took a plea from this
14   morning, who is one of the most powerful captains in that
15   particular family for the last 10 or 15 years or so.
16            With regard to the six dollars a yard that was
17   required of John Doe No. 4, it was this defendant, Scibelli,
18   that made that demand of Mr. Dragonetti and not Dragonetti,
19   the made member of the family.  The very first conversation,
20   the very first meeting of Mr. Scibelli with John Doe No. 4 on
21   March 13th of 2006, after going over some quick numbers,
22   which, by the way, were much lower than what Eastern Concrete
23   had paid which is why VMS wanted to get out from under them
24   and get somebody -- and I think the amount, and I could be
25   wrong, is somewhere around $25 less a yard of concrete which
```
                    Marie Foley, RPR, CRR
                    Official Court Reporter

## Page 22

```
                         Proceedings                      22
1    is, of course, a huge savings for VMS.  At the very end of
2    that conversation, which is recorded, Mr. Scibelli says that
3    he and Vinny would like six or seven dollars a yard, and after
4    that, from May 15th of 2006 to June 18th of 2007, John Doe
5    No. 4 paid Mr. Scibelli in checks made out to VMS in excess of
6    $105,000 under this particular extortion.
7             THE COURT:  This was for the six dollars?
8             MR. BROWNELL:  Correct, your Honor.
9             THE COURT:  What happened to the six dollars?
10            MR. BROWNELL:  I'm not clear when you say what
11   happened.
12            THE COURT:  He collected six dollars.
13            MR. BROWNELL:  Correct.
14            THE COURT:  Who got the money?
15            MR. BROWNELL:  Mr. Scibelli was paid the money.
16            THE COURT:  I understand, but did he keep the money?
17            MR. BROWNELL:  I don't know what happened to it
18   after he got it.  It was made out to VMS, his company.
19            THE COURT:  So there is no evidence that it was
20   shared?
21            MR. BROWNELL:  I'm sorry, judge?
22            THE COURT:  There's no evidence that it was shared
23   with anybody, the six dollars?
24            MR. BROWNELL:  There is no evidence that it was
25   shared.  It was paid to him.
```
                    Marie Foley, RPR, CRR
                    Official Court Reporter

## Page 23

```
                         Proceedings                      23
1             And the other thing that I would like to indicate,
2    this is a conspiracy.  It isn't just Mr. Scibelli extorting
3    John Doe No. 4.  This is a conspiracy involving, as I said,
4    Vincent Dragonetti, who was his partner, and partner might be
5    the wrong word.  He's an employee of VMS, but also it just
6    happened to be one of the predicate acts that Mr. Corozzo pled
7    to this morning, and as your Honor has indicated, and you
8    haven't sentenced Mr. Corozzo yet, but in the allocution, Mr.
9    Corozzo indicated that this -- that behind, you know, these
10   particular payments with regard to Liberty View Harbor is the
11   implied and direct threats of force that back up the Gambino
12   crime family extortions.
13            THE COURT:  Well, did any of the six dollars go into
14   the hierarchy?
15            MR. BROWNELL:  We have no indication that it did.
16   The money was paid to this particular defendant.
17            As I said, with regard to Mr. Corozzo this morning
18   and in the sentencing of Mr. Dragonetti, this Court did impose
19   the additional two points having to do with the implied
20   threat.
21            Again, this is a conspiracy.  So logically, it makes
22   sense that this particular defendant, as part of that
23   conspiracy, you know, should also be subject to that kind of
24   implied threat.
25            The other thing your Honor should know is not only
```
                    Marie Foley, RPR, CRR
                    Official Court Reporter

## Page 24

```
                         Proceedings                      24
1    was John Doe No. 4 paying six dollars off the front, in other
2    words before expenses, to Mr. Scibelli, on the back end, he
3    was paying 60 percent of his profits to both Lenny DiMaria,
4    Vincent Dragonetti, and through a recorded conversation with
5    Vincent Dragonetti, also Nicholas Corozzo, the captain, so.
6             THE COURT:  Did this defendant get any of that 60
7    percent?
8             MR. BROWNELL:  There is no indication that he got
9    the 60 percent off the back end, just the money off the front
10   end.
11            MR. SHARGEL:  Judge --
12            THE COURT:  What were they charging for a yard at
13   that time?
14            MR. BROWNELL:  Your Honor, I believe it was a little
15   over a hundred dollars, but.
16            THE COURT:  Delivered, a hundred dollars?
17            MR. BROWNELL:  Well, the plant was right there on
18   the site.
19            THE COURT:  Well, it had to be moved anyway.
20            MR. BROWNELL:  Yeah, and they had a pump truck
21   apparently.  These were high-rise buildings, so they had to be
22   pumped up to the various floors that were being constructed.
23            THE COURT:  But they had to move it from the plant.
24            MR. BROWNELL:  Right.
25            MR. SHARGEL:  Judge, may I respond?
```
                    Marie Foley, RPR, CRR
                    Official Court Reporter

Proceedings                                                 25

1   Judge, this is all very interesting, but there's not
2   a shred of evidence in this record that Mr. Scibelli knew
3   anything about the 60 percent.  There's no evidence in this
4   record, because the fact is, and this is unrefuted, that he
5   didn't know about this.  He's not charged in any of the other
6   extortions relating to concrete or stone or sand.  He is not
7   charged with anything having to do with Mr. Corozzo and those
8   other extortion activities that he pled guilty to.  I have no
9   knowledge of what he pled guilty to, but I'll say this:
10        I repeat what I said earlier.  Mr. Scibelli is the
11   owner of VMS.  He never met Nicholas Corozzo.  There is no
12   basis on which to think or conclude or suggest that because he
13   had this deal going with Mr. Vollaro in connection with the
14   concrete, a deal that he has confessed to and accepts full
15   responsibility for, that he had anything to do with an implied
16   threat.  He didn't use the mob behind him to enforce anything
17   that he was doing.
18        There came a time when -- first of all, on March the
19   26th, 2006, which is the first time that Mr. Scibelli meets
20   Vollaro, the very first meeting, it's recorded.  Mr. Scibelli
21   is saying, "Now, think about this," in words or substance.
22   "Think about this.  We're here to make money.  Make sure your
23   numbers are right.  We want you to make money."  And again and
24   again he implores him and says, "If this doesn't work for you,
25   if this formula doesn't work for you," he had been charged a

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                                 26

1   lot more money by Eastern Concrete, "if this doesn't work for
2   you, walk away."  And then again telling him when there comes
3   a time, and this is outlined in my papers, but I can go over
4   it again, that problems develop with Vollaro.  This is
5   important.  If I may just take a moment and explain this to
6   you.
7        After a very short time, it's obvious, in
8   retrospect, that Mr. Vollaro was more interested in being a
9   cooperator than a supplier of concrete.  He was rarely on the
10   job, and it was one problem after another.  We have the
11   support for this.  We have the documentation.  We have e-mails
12   that reflect these problems.  The concrete plant was not
13   working properly.  It hadn't been calibrated properly.  It was
14   not working to maximum capacity.  There were dangerous
15   conditions on the job caused by Mr. Scibelli's concrete plant.
16   There's a payloader that turned over twice because of faulty
17   brakes and almost injured employees.  The general foreman, Mr.
18   Macco's employee, was complaining that there had been a diesel
19   fuel leak that threatened a fire and caused a distinct fire
20   hazard, and Mr. Vollaro was causing tremendous problems.
21        In addition, Mr. Vollaro was not paying his
22   suppliers who were supplying the raw materials for the
23   concrete, and one of the suppliers called Mr. Macco directly,
24   and Mr. Macco was told by that supplier that he would place a
25   mechanic's lien on the entire project, this multimillion

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                                 27

1   dollar, 27-block project on the Jersey City waterfront.  He
2   was going to put a mechanic's lien on the entire project
3   because Mr. Vollaro had not paid the bills.  This was
4   threatening Mr. Scibelli's relationship with Mr. Macco.
5        There came a time when Mr. Vollaro, before the
6   arrests, before the, quote, takedown, that he was taken off
7   the job.  He was replaced.  That's when Mr. Scibelli took over
8   the concrete plant, and at that point where Mr. Vollaro was
9   causing unbelievable problems for Mr. Scibelli, threatening
10   the very existence of VMS, his company, threatening the
11   contract that he had with Liberty View Harbor, at that very
12   time, there was never a suggestion that physical harm, let's
13   go back to the what the guideline says, physical harm, murder,
14   kidnapping that's encompassed within that enhancement
15   provision.
16        THE COURT:  Threat of.
17        MR. SHARGEL:  Yes, threat of.
18        So there was never a suggestion, not any suggestion
19   whatever that there was a threat of physical harm for what had
20   been done so blatantly to Mr. Scibelli and so harmfully.  And
21   your Honor in earlier sentences, if I may, has said that there
22   is a distinction, the factual predicate aside, that there is a
23   distinction to be drawn between a member of organized crime,
24   particularly within the hierarchy, but a member of organized
25   crime and someone who's not claimed to be a member of

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                                 28

1   organized crime.
2        Mr. Scibelli has -- you know about his industry.
3   You know about his work ethic.  You know about what he's
4   accomplished.  I'll talk about that again in a few moments,
5   but this is not someone who looked to have the mob behind him,
6   associated with the mob so that he would have the force of the
7   mob behind him for that six dollars a yard.  That six dollars
8   a yard was negotiated, and every word of it is on tape, by the
9   way.  Every word of it is on the tape of March 26th, 2006, and
10   this is negotiated at arm's length, and they're going back and
11   forth as to what the price should be.  There was never a
12   suggestion that, "Hey, you know, I have Mr. Dragonetti or I
13   have someone behind me," or something like that.
14        You know what, judge, if anything, the mob in this
15   case was in front of Mr. Scibelli, not in back of him, because
16   Mr. Scibelli didn't go looking for Vollaro.  Mr. Scibelli
17   didn't go looking in some social club for someone to supply
18   concrete.  He wanted a supplier of concrete because he
19   couldn't work with Eastern.  If Eastern had worked out, if
20   Eastern Concrete had supplied the concrete, this man wouldn't
21   be here today.  He would not be in front of you because the
22   only reason he's in front of you is because of a difficult
23   situation in which he found himself and what seemed like a
24   perfectly suitable deal came his way, and unfortunately, that
25   suitable deal came along with a cooperator.  That's all I can

Marie Foley, RPR, CRR
Official Court Reporter

Proceedings                                    29

1  say.
2          MR. BROWNELL:  Your Honor --
3          THE COURT:  What was the six dollars for?
4          MR. SHARGEL:  The six dollars was that Mr. Scibelli
5  was providing a tremendous number of services.  He was
6  never -- Mr. Vollaro never had to pay any rent for his
7  concrete plant.  Mr. Scibelli supplied the electricity for all
8  of the -- for the operation, supplied water.  I mean, under
9  ordinary circumstances -- yes, and it was his manpower.  Under
10 ordinary circumstances, someone who made a deal like that,
11 someone who made a deal to come on the property would have
12 the -- excuse me.  Would have those obligations and incur
13 those obligations himself.
14         However, let me make this clear.  This is an
15 extortion case.  Mr. Scibelli pled guilty to extortion through
16 economic coercion.  I'm not retreating from that.  Mr.
17 Scibelli accepts responsibility for it.  It was done at arm's
18 length, but the implicit, I'll be very straightforward and I
19 say this in my papers, the implicit understanding was that if
20 he didn't pay the six dollars a yard, as finally that number
21 was arrived at, he would not work there anymore.  He was
22 required to pay the six dollars.
23         THE COURT:  Did that six dollars show up on his --
24         MR. SHARGEL:  No, sir.  There were checks, but they
25 did not show up.

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                    30

1          THE COURT:  What happened to the six dollars?
2          MR. SHARGEL:  The six dollars, those checks were
3  cashed.
4          THE COURT:  By the defendant?
5          MR. SHARGEL:  Yes, sir.
6          THE COURT:  Did he pay a tax on them?  Did he pay a
7  tax on them?
8          MR. SHARGEL:  Excuse me.
9          I don't know the answer to that question, but if I
10 may -- may I just have a moment?
11         (Discussion held off the record between the
12 defendant and his counsel.)
13         MR. SHARGEL:  I'm sorry, I misspoke.  Well, Mr.
14 Scibelli tells me he could get the answer, but I think that,
15 regardless of the answer, this really doesn't touch the area
16 of whether or not there was an implied threat, and I wanted to
17 make that clear.
18         MR. BROWNELL:  May I be heard, your Honor?
19         THE COURT:  As soon as the defendant rests.
20         MR. SHARGEL:  I think I've rested.
21         MR. BROWNELL:  Judge, I guess I've never heard of an
22 arm's length extortion.  These arguments, similar arguments
23 were made at the bail hearing regarding Mr. Dragonetti.  Of
24 course, it was still about the six dollars, and at that
25 particular time, it was claimed in front of Magistrate Azrack

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                    31

1  that the six dollars payment was somehow a payment for labor.
2          The thing that's interesting about the way this
3  payment worked is the matter -- excuse me.  John Doe No. 4
4  would be paid a check by VMS depending on the amount of
5  concrete produced and delivered at the site, and then what
6  John Doe No. 4 was required to do was to turn around and then
7  cut a check back to VMS, the very company that had just paid
8  him, for this calculation of six dollars times however many
9  yards.  So, you know, to say that that's somehow for
10 electrical or some legitimate cost on behalf of VMS, I
11 suggest, is simply ridiculous, quite frankly.
12         The other thing, again, I'd like to remind the Court
13 is it was Vincent Dragonetti was his employee, his worker at
14 VMS.  So clearly, he knew who he was and, as I guess the
15 defense had said this morning, is someone that actually grew
16 up with Mr. Scibelli for some period of time during the course
17 of his life, and it wasn't Mr. Dragonetti that told John Doe
18 No. 4 of this obligation.  It was this particular defendant
19 himself that said, as I said before, in March of '06 that he
20 and Vinny want six to seven dollars a yard, and this argument
21 that somehow he was very friendly about it and we all need to
22 make money, I know your Honor hasn't heard any of the
23 conversations because there hasn't been any trials in this
24 particular case, but --
25         THE COURT:  Well, I've seen some of them.

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                    32

1          MR. BROWNELL:  I'm sorry?
2          THE COURT:  I've seen a few.
3          MR. BROWNELL:  If I had a dollar for every time
4  Lenny DiMaria --
5          THE COURT:  Don't.
6          MR. BROWNELL:  I'm sorry?
7          THE COURT:  Don't ask for any dollar.
8          MR. BROWNELL:  Not from you, judge.
9          THE COURT:  No, I mean from anybody.
10         MR. BROWNELL:  Obviously it was an expression.
11         THE COURT:  It's dangerous.
12         MR. BROWNELL:  Point taken.
13         When Lenny -- for all the various extortions or
14 payments that Lenny wanted from John Doe No. 4, how he would
15 be nice, is this okay with you, does that work for you, that's
16 the way it always went, but of course it's a different story
17 when they don't get what they want.  So that argument, I'd
18 suggest, with the background of the Gambinos just doesn't
19 apply.
20         MR. SHARGEL:  It's not a difference --
21         THE COURT:  Excuse me.  Is there any other event or
22 indication of a relationship to the crime family except for
23 this?
24         MR. BROWNELL:  Just a second, judge.
25         MR. SHARGEL:  For the defense, the answer is no.

Marie Foley, RPR, CRR
Official Court Reporter

## Proceedings 33

1  (Government counsel confer off the record.)
2  MR. BROWNELL:  Judge, apparently, there's a lunch
3  with not only Vincent Dragonetti, who of course dealt with
4  this defendant and John Doe No. 4 frequently, but on one
5  occasion, apparently, they also met with Lenny DiMaria who is
6  the captain in that family.
7  THE COURT:  There's no indication what's the
8  purpose?
9  MR. SHARGEL:  Yes.
10  THE COURT:  I'm not asking you.
11  MR. SHARGEL:  I'm sorry, judge.
12  MR. BROWNELL:  It may have been just social, judge.
13  MR. SHARGEL:  It wasn't.
14  THE COURT:  Well, that's enough.
15  MR. BROWNELL:  I'm sorry, to talk about the project,
16  but -- to talk about the project at Jersey City.
17  THE COURT:  Okay.
18  MR. SHARGEL:  May I answer?
19  THE COURT:  Yes.
20  MR. SHARGEL:  There's conversation, this is
21  recorded, where the idea of selling concrete in different
22  areas, in other words different business ventures, was
23  discussed.  However, nothing came of it.  Mr. Scibelli and
24  others said it was impractical.  You can't take concrete from
25  New Jersey into Manhattan because you can't have those large

Marie Foley, RPR, CRR
Official Court Reporter

## Proceedings 34

1  trucks go through the tunnel, and Manhattan is a very
2  difficult place to work, and they decided that they wouldn't
3  do it, and after that lunch they walked away.
4  There was no other -- there is no other organized
5  crime activity, association.  Mr. Scibelli owns a significant
6  pizza business, as your Honor knows.  He owns a construction
7  business that he micromanages on a daily basis.  He was not
8  sitting in social clubs.  He was not associating with
9  organized crime figures.  I remind you that before that
10  meeting that we just discussed, Mr. Scibelli had never met Mr.
11  DiMaria.  He never met John D'Amico.  He never met Nicholas
12  Corozzo.  He never met Joseph Corozzo.  There is no implied
13  threat carried with anything that he's ever said or done in
14  his life.
15  MR. BROWNELL:  Judge, one last thing, if I may.
16  THE COURT:  Yes, of course.
17  MR. BROWNELL:  There is a recorded conversation
18  between John Doe No. 4 and Lenny DiMaria on, let me make sure
19  I have the right date, on July 17th of '07, and during the
20  course of that conversation, after John Doe No. 4's plant, you
21  know, is now with VMS and his own, Lenny DiMaria is -- I'm
22  sorry, judge.  Let me just check something for a second and
23  make sure I have the right conversation.
24  (Pause in the proceedings.)
25  MR. BROWNELL:  Lenny DiMaria tells John Doe No. 4

Marie Foley, RPR, CRR
Official Court Reporter

## Proceedings 35

1  that he can't really bring a beef about what has happened to
2  him economically in Jersey City and the quote from, paraphrase
3  from Lenny DiMaria is that, let me just get the right spot:
4  They, meaning the Gambinos, are not getting -- they are
5  getting a lot of money from Scibelli.  So they are not going
6  to ruin a good thing.  Meaning they are not going to let John
7  Doe No. 4 recoup anything from Jersey City because of the
8  money, at least according to Lenny DiMaria, that they are
9  getting from Scibelli, and that's on July 17th of 2007.
10  THE COURT:  That's the only evidence that he was
11  making a direct payment?
12  MR. BROWNELL:  Other than when he -- during the very
13  conversation in which he mentions the six dollars, it isn't,
14  "I want six dollars."  Vinny, he uses the word "Vinny", "Vinny
15  and I," he and Vinny want six dollars, six to seven dollars a
16  yard.  So it comes at the beginning and it comes at the end
17  after John Doe No. 4 is off the site.
18  THE COURT:  I find that given the evidence here,
19  there was sufficient evidence to go to the jury and support a
20  conviction, but not sufficient evidence under the guidelines.
21  Specific offense characteristic 2B3.2(b)(1).  So
22  there's no two levels.  That's zero under 141.
23  Now, the extortion also involved the loss of more
24  than 50,000.  That's agreed?
25  MR. SHARGEL:  Yes.

Marie Foley, RPR, CRR
Official Court Reporter

## Proceedings 36

1  MR. BROWNELL:  That's agreed, your Honor, under the
2  agreement.
3  THE COURT:  So he gets two for that.
4  Victim related adjustment is none.
5  Role in the offense, none.
6  MR. SHARGEL:  Your Honor, under the agreement, there
7  is, of course, a role adjustment.
8  THE COURT:  A role adjustment?
9  MR. SHARGEL:  Yes, a minor role under 3B1.2(b).
10  MR. BROWNELL:  That's correct, sir.
11  THE COURT:  How much?
12  MR. BROWNELL:  Minus two.
13  MR. SHARGEL:  Minus two.
14  THE COURT:  Minus two.  All right.  That's accepted
15  and the evidence supports it.
16  So the adjusted offense level subtotal is 18?
17  PROBATION OFFICER:  Yes, your Honor.
18  MR. SHARGEL:  Yes.
19  THE COURT:  Acceptance of responsibility, minus
20  three?
21  MR. SHARGEL:  Yes.
22  THE COURT:  Global, minus three?
23  MR. SHARGEL:  Yes.
24  THE COURT:  Minus six.  So it's a total offense
25  level of 12?

Marie Foley, RPR, CRR
Official Court Reporter

Proceedings                                    37

1           MR. SHARGEL:  Yes.

2           THE COURT:  Criminal History Category I.

3           MR. BROWNELL:  I believe it's Category II, judge.

4           THE COURT:  It says Category I.

5           MR. SHARGEL:  The probation report found Category I.

6           MR. BROWNELL:  Judge, in the plea agreement, the

7    agreement was Criminal History Category II.

8           MR. SHARGEL:  No.  What the plea agreement says is

9    that assuming -- it says on page 3 of the plea agreement, this

10   level carries a range of imprisonment of 24 -- well, the 24 to

11   30 months because Probation had found the higher guideline.

12   I'm sorry, because originally it had been somewhat higher

13   because of the two levels for implied threat.

14          I'll start again, "This level carries a range of

15   imprisonment of 24 to 30 months assuming that the defendant,

16   assuming that the defendant falls within Criminal History

17   Category II."

18          Now, the probation report, which is dated July 25th,

19   2008, came back and found Criminal History Category I, and

20   when the Government is reported to have made no objection

21   here in the addendum to the presentence report.  To date, the

22   Government has not submitted any objections to the presentence

23   report.  They did not answer my memorandum when I said

24   Criminal History Category I as found by the Probation

25   Department, and I respectfully except to the Government coming

Proceedings                                    38

1    in today and for the first time, when we're in the middle of

2    the sentence, saying that it should be Criminal History

3    Category II.

4           THE COURT:  Does Probation stay with that one?

5           PROBATION OFFICER:  Yes, your Honor.

6           THE COURT:  It seems to me that that's the

7    appropriate category.  Resisting arrest at age 20.  I would

8    think two would understate it.

9           MR. BROWNELL:  I think that's probably right, judge.

10          THE COURT:  So one is correct.

11          So that leaves us with a range of 10 to 16 in

12   Zone C.

13          MR. SHARGEL:  Correct.

14          THE COURT:  Correct?

15          PROBATION OFFICER:  Correct, your Honor.  The fine

16   range is three to 30,000, 3,000 to 30,000.

17          THE COURT:  Three to 30,000 and the Court assesses a

18   $30,000 fine, and we have special assessment.  The fine is

19   payable within one year without interest.

20          Now we have the problem of incarceration or not

21   incarceration, and I'll be happy to hear counsel and anybody

22   else.

23          MR. SHARGEL:  Your Honor, I strongly urge that this

24   is an appropriate case, under 3553(a), that this is an

25   appropriate case for a non-custodial sentence.  I think this

Proceedings                                    39

1    most respectfully, and I'll tell you why this case cries out

2    for a non-custodial sentence for the following reasons.

3           It was, as I said moments ago, pure happenstance

4    that Mr. Scibelli came into this problem.  I'll repeat,

5    because I think it's worthy of repetition, that if Eastern

6    Concrete had worked out, if another concrete company had been

7    found before the Vollaro opportunity, I say in quotes,

8    presented itself, Mr. Scibelli would never be here, but here

9    are the compelling reasons why there shouldn't be a prison

10   sentence, most respectfully.

11          First, I ask your Honor to look at his individual

12   situation and of his responsibilities in his family.  Your

13   Honor has the character letters.  Your Honor has ample proof,

14   without any repudiation from the Government, that he is a good

15   father, a good husband.  Not only does he support his nuclear

16   family, but he supports his extended family as well.

17          He has been industrious and hard working.  He has

18   formed a very significant piece of business at the Ronkonkoma

19   train station.  I don't know if your travel ever took you

20   through the Ronkonkoma train station, but there is a large

21   business called Scibelli's Pizza that he is involved in the

22   management on a day-to-day basis.  He employs his sister

23   there, but he's involved in the management.

24          THE COURT:  How many independent employees?

25          MR. SHARGEL:  In that operation, there are

Proceedings                                    40

1    approximately ten employees.

2           In the construction operation, and this is the nub

3    of my argument, judge, they are up to and operating right now

4    200 employees.  This is not a terribly good market in the

5    construction industry.  Mr. Scibelli has several projects

6    going, three projects in Manhattan and a huge project at

7    Liberty View Harbor.  It's interesting that Mr. Macco, a

8    former mayor of North Bergen, New Jersey, a lawyer and a real

9    estate developer, has enough confidence in Mr. Scibelli to

10   continue him on that job, and he

11   says and he concludes in his letter that he looks forward to a

12   continued relationship with Mr. Scibelli, and he cites in

13   support of that his honesty, his integrity, his devotion to

14   the job, his competence and his skill, his ability to work as

15   hard as it takes to get problems solved.  This is not someone

16   who operates a business by remote control.  This is an

17   individual who micromanages this business to the highest of

18   degrees, and without Mr. Scibelli's participation --

19          (Pause in the proceedings.)

20          THE COURT:  Go ahead.

21          MR. SHARGEL:  Without Mr. Scibelli's continued

22   operation of these businesses, incarceration even for the

23   shortest period of time would be disruptive and, I believe,

24   would lead to the demise of VMS.

25          There is no evidence in this regard, there is no

Proceedings                                    41

1   evidence because it doesn't exist because it can't happen,
2   that these businesses can be placed in the hands of someone
3   else.
4              Mrs. Scibelli, who is sitting here six months
5   pregnant, has done the best that she can to aid her husband in
6   this business, but as she reported to me as late as this
7   morning, and I've had discussions with the Scibellis about
8   this in the past, as she has told me even this morning she
9   cannot operate this business.  She's due to have a baby on
10  November 24th.  It's their second child.  These businesses
11  threaten and risk -- I'm sorry.  The extinction of these
12  businesses would threaten the jobs of some 200 people in the
13  construction field and the ten people who work at the pizza
14  place, and it's interesting also to note that the MTA has
15  continued their lease with Mr. Scibelli and has taken no steps
16  to cancel that lease.  They've had a happy relationship and a
17  successful relationship and a relationship that continues well
18  past the adverse publicity in this case.  The same is true in
19  Jersey City.
20             Your Honor, these are difficult financial times and
21  jobs in the construction business, at this point in time, new
22  jobs in the construction business, are not plentiful, and I
23  ask your Honor under all of the circumstances, given the fact
24  that we're in Zone C already, given the fact that your Honor
25  could impose a split sentence already, that it could be as low

Proceedings                                    42

1   as five months at level 12, I ask your Honor under the special
2   circumstances of this case, I cited the case that was decided
3   by Judge Sweet where a business involved, I think it was at
4   the same guidelines level, where the business involved 80
5   employees in that case.  This is, I respectfully submit, a
6   case where there should be no custody.
7              THE COURT:  Thank you.
8              Do you want to add anything, sir?
9              THE DEFENDANT:  Yes.  I'd like to -- do you want me
10  to stand, your Honor?
11             THE COURT:  No.
12             THE DEFENDANT:  I'd just like to apologize to my
13  family first.  My -- my -- I should be enjoying my time with
14  my family right now.  My wife's six months pregnant.  I have a
15  three year old.  I work hard every day, and I'm ashamed and
16  embarrassed of the situation, and I accept responsibility.
17  I'm scared to lose everything that I have.  I don't know how
18  she would be able to do it.
19             I have a lot of employees and, you know, my actions
20  are affecting, you know, their families directly, and I'm
21  sorry, and, you know, I promise never to come close to ever
22  committing a crime or nowhere near, you know -- free of any
23  type of crime.  I just want to work hard and put this -- since
24  this happened on February 7th, my life, I'm a mess, and that's
25  from my heart.  You know, I can't sleep and I'm -- you know,

Proceedings                                    43

1   I'm responsible, like I said, once again, for a lot of
2   employees, and I've -- you can interview any one of them.
3   I've never bounced a check on anybody in my life, and like I
4   said, I'm sorry, and I'm scared, you know.
5              THE COURT:  Do you have any mental or physical
6   disability?
7              THE DEFENDANT:  No.  I'm just seeing a -- like I
8   said, I'm seeing a doctor right now, but I'm -- I start my day
9   3:30, four in the morning.  You could ask my wife.  I come
10  home by seven, eight, and I'm home every single night.  I
11  spend my weekends with my three year old daughter that I
12  cherish.
13             You know, I'm -- you know, it affects my mother.  My
14  mother's got heart conditions and, you know, my father's
15  disabled and --
16             THE COURT:  Well, do you help support your mother
17  and father?
18             THE DEFENDANT:  I help them tremendously, yes.  My
19  mother works.  She's been in her job for 17 years.  It isn't
20  like she's somebody that just, you know, goes job to job she's
21  been stable at one company.  The company before that she was
22  with for eleven years.  They went out of business.
23             My sister works for me.  My sister Gina's an
24  accountant.  You know, we're a working class family.
25             THE COURT:  Your mother works for you?

Proceedings                                    44

1              THE DEFENDANT:  No.  My mother works for BBS Lumber
2   in Speonk.  They're a building supplier.  She does
3   bookkeeping.
4              THE COURT:  Well, do you help with that family, with
5   your mother and father?
6              THE DEFENDANT:  I'm sorry, judge?
7              THE COURT:  Do you give anything to them
8   financially?
9              THE DEFENDANT:  Yes.  Yes, I do.  Financially, yes.
10  My father's been disabled since 1987.  I was in high school,
11  eleventh grade.  I tried to get him here.  We couldn't get him
12  here.
13             And, you know, it's just, my sister Michelle behind
14  me that's here, she manages my pizzeria.  I can't leave her
15  there to run the store without me, but, you know, I've done
16  this my whole life since I'm a kid.  Since I'm 14 years old, I
17  started in the pizzeria business.
18             I graduated with a regents diploma.  I went to
19  Suffolk Community College for a year.  Had to pull out to go
20  back to work.  My wife has a degree.  I went back.  Before I
21  got into the construction business, I went down the block to
22  Brooklyn Tech for a year.  I maintained a 4.0 average there to
23  get better educated, and when I landed the job in Jersey City,
24  it was a dream to get that job.  It took me about eight
25  months.

Proceedings                                    45

1    What happened was I was working for a company called
2    Quantum beforehand, and the owner of that job through one of
3    my former peers that I work with, through their project
4    manager came and seen what I did on Maple Avenue and Sanford
5    in Flushing.  I put up a high rise there, and they were so
6    pleased.  We went back and forth.  I finally landed this job.
7    I was on the job for two years, and then this happens.  I
8    never knew Joe V.  I don't come from Staten Island.  I never
9    met him before.  I -- you know, and the short time I knew him,
10   I thought he was my friend.  I -- I -- you know, I'm sorry,
11   like I said, and that's the God's honest truth.
12               THE COURT:  Thank you.
13               MR. BROWNELL:  You know, your Honor, the defense has
14   characterized this whole circumstance of the defendant being
15   here as happenstance, and I suggest the happenstance here is
16   that rather than extorting somebody that didn't happen to be
17   wearing a recording device, this defendant had the bad luck to
18   make that demand of six to seven dollars a yard with the owner
19   of a company that, in fact, was wearing a recording device
20   that, of course, was then turned over to law enforcement.
21   That's the happenstance here.  That was the bad luck of this
22   defendant.
23               This particular defendant, unlike just about every
24   other defendant you've had before you, not only has a good
25   supportive family, most of whom is here in court, he's got

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                    46

1    businesses that he owns, in addition to the million dollars
2    that he has in the bank and other real estate that he has.  So
3    he has all this support, and despite that fact, it is he, not
4    Vinny Dragonetti, the made member, the soldier of the Gambino
5    crime family, it's this defendant that makes the demand of six
6    or seven dollars from the informant.
7               And I'll remind your Honor, and I've sat through
8    some of the sentencings of the gamblers in this case, which
9    are really the bottom of the barrel, even they are getting by
10   your Honor, except I think in one or two circumstances, at
11   least a month in jail.  I suggest to give this defendant who
12   had every opportunity to run his businesses in an honest
13   manner, to give him a break below what we bargained for in
14   this hard fought, you know, pleas over the last couple of
15   months, below what the guidelines range is is simply
16   repugnant, and I think there's no other word for it.  There is
17   no reason for it whatsoever.
18               MR. SHARGEL:  Judge --
19               THE COURT:  So you want to give him what as
20   incarceration?
21               MR. BROWNELL:  Exactly, within the guidelines as we
22   agreed to as part of our bargain; no more, no less.
23               MR. SHARGEL:  Judge, may I say one thing?
24               THE COURT:  Yes.
25               MR. SHARGEL:  Judge, the reason why I argue so

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                    47

1    vigorously even for one month is because this is still the
2    height of the construction season.  He has his men, as we
3    speak here now, pouring concrete at Liberty View Harbor and
4    three other construction sites.
5               THE COURT:  When does pouring stop in the New York
6    area, in the winter?
7               THE DEFENDANT:  Can I answer, your Honor?
8               THE COURT:  Yes.
9               THE DEFENDANT:  You could pour all year round.  In
10   the winter, you just have to use different additives and
11   aggregates to make the concrete thinner.
12               THE COURT:  Yeah, because I've seen them pouring
13   right through.
14               THE DEFENDANT:  Yeah, but it's very hard.
15               Your Honor, if I could speak again.  I'm in the
16   middle of contracts on those jobs.  I've got workers' comp,
17   general liabilities.  I have child support issues with my
18   employees, and just being out of work two days I was a mess.
19               I'm just telling you the truth.  I respect whatever
20   your decision is.  I mean, I work every day.  I have all my
21   taxes paid.  My pay stubs are submitted every week, every
22   month to pre-trial.  I haven't caused any trouble.
23               MR. BROWNELL:  Judge, I would remind the Court that
24   VMS is not a small mom and pop construction company.  It's a
25   very large construction company.

Marie Foley, RPR, CRR
Official Court Reporter

---

Proceedings                                    48

1               MR. SHARGEL:  But it's under the management of Mr.
2    Scibelli.
3               THE COURT:  Excuse me, one at a time.
4               MR. BROWNELL:  Judge, and again, it was this
5    defendant that invoked the name of Vinny Dragonetti, the made
6    member of the family, in demanding the money.
7               THE COURT:  Well, you have my finding on the
8    appropriate guideline, correct?
9               MR. SHARGEL:  Yes.
10              THE COURT:  The Court considers Booker and 3553(a).
11              This is a serious offense.
12              The defendant's characteristics are good; hard
13   worker except for this on his background; good family; mother
14   and father who depend on him; three year old child and wife
15   six months pregnant requiring his being at home for maximum
16   mental and physical health.
17              The sentence must reflect and will reflect the
18   seriousness of the offense, promote respect for the law,
19   provide just punishment.
20              Deterrence of this defendant is not required, but
21   general deterrence is.
22              Educational or vocational training, medical care or
23   correctional treatment within a place of incarceration is not
24   needed.  The defendant is highly intelligent and has a regents
25   diploma, which is highly prized in New York, and post-graduate

Marie Foley, RPR, CRR
Official Court Reporter

Proceedings                                49

1    education.

2         The Court has considered the kinds of sentences

3    available, the applicable categories, the pertinent policy

4    statements and all seven elements under 3553(a).  It's given

5    substantial weight to the guidelines and the fact the

6    Government has been forthcoming in these cases and has not

7    demanded excessive punishment.

8         Given all of those circumstances, the fine is

9    $250,000 and probation for five years.  The fine is payable

10   within one year.

11        MR. SHARGEL:  Thank you, your Honor.

12        THE DEFENDANT:  Thank you, your Honor.

13        PROBATION OFFICER:  Your Honor, is the fine still

14   payable within one year?

15        THE COURT: Yes.

16        One major reason for the sentence is that there are

17   210 employees at stake here, and given the present recession

18   and the difficulty of people in this industry, particularly

19   those who do physical labor, of getting another job and

20   supporting their families has to be taken into account, and

21   that is, actually, the primary reason for the Court's

22   decision.

23        MR. SHARGEL:  Thank you, your Honor.

24        THE DEFENDANT:  Thank you, your Honor.

25        MR. BURLINGAME:  Judge, we would just like to note

Proceedings                                50

1    for the record all the companies who need to compete with the

2    defendant who aren't willing to violate the law to make their

3    million dollars.

4         THE COURT:  Yes, I note that.

5         (Time noted:   1:11 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit B
# REDACTED

# Exhibit C

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Irizarry,

 Your Honor, I first want to thank you for taking the time out of what I would imagine is a hectic
schedule by reading this letter. I am writing to you regarding Anthony Scibelli who is not just a longtime
friend but who is considered by my daughter and I as family. This is not just a plea for mercy but to give
a chance to explain without prejudice who Anthony is regardless of the case at hand. I myself don't
think I could be in your shoes with such responsibilities daily with decisions that have to be made that
will not just effect one life but many others that include the families and the children let alone true and
real friends. I respect you for what you do and know I personally would not be able to handle such a
position.

My relationship with Anthony started in my early teens working in a pizzeria. If there is one thing I do
remember as a kid we always worked. I say this all the time to my daughter and other kids today as
times have changed or maybe I am just getting old. As kids ourselves back then, we made mistakes but
always took responsibility for them. Not coming from money or a silver spoon, we had no choice but to
work if we wanted that new pair of sneakers or to have the ability to drive or even have a car. At times
the few of us that are still in touch will be sitting and watching our children play and talk and laugh how
life was back then and joke around with each other as we look at ourselves now much older. Life has
changed and our responsibilities only got harder but with an actual purpose. We are Dads now,
Husbands to our Wife, Uncles to our family's kids, and to our very close friends that we grew up with.
My daughter Jenna knows Anthony and his wife as Uncle and Aunt, and their 3 kids she considers them
her cousins. We have always been together for our weddings, the births of our blessings and through
hardships such as in December of 2008. My wife who had suffered with Breast Cancer for 3 years had
passed away leaving this world with a 6 yr. old Daughter and myself a guy who got a wakeup call to
reality in those years. My wife who I have met in 95 and married May of 99 was a good woman and a
great Mom but also very close to not only Anthony but his wife Charise. We aren't rich people and had
our daily struggles so we thought were tough until she got sick. Its times like that when you realize who
really is close to you. I am a simple guy who tries not to judge people for their actions but very deeply
try to pay attention to ones character. I know myself and I know I am one to give my plate to someone
who is hungry. With what I had to go through at that time alongside my wife, I knew I recall times crying
with Anthony just out of stress and worry and he was there for me. I can't explain the emotions in any
sort of letter but it is with that part of his character that I know I was able to talk to him. At times I did
feel ashamed as a man because with the bills, the health insurance and doctor's co-pays, I couldn't
handle it. Anthony knew this and it was in his character to bypass my pride and help me out by not just
giving me money because he knew I would never take a hand out but by giving me a job that provided
health insurance. The construction business is not for me. It is hard work and the people you deal with

are loud and obnoxious and with all the stress I already had, I add this time of my life to the crazy list. When my wife passed away, I had to get things back to normal for my Daughters sake. I think about how much chaos life was the past few years. I wouldn't wish it on anyone. I know that life has changed for me with the realizations behind that were missed and those ahead of me. I think about who was there for My wife Angela, my daughter Jenna and me during and after which being a single dad raising a daughter in today's society is hard enough by yourself. Anthony was there for me and a healthy figure.

I am not going to sit here and tell you Anthony doesn't have his ways. If you are on the outside looking in, and had to make a judgment of his character, you wouldn't be able to see who and what Anthony is. I have that luxury. Gigabytes of pictures and videos of us working, playing with the kids, and being Santa and the Easter bunny or the horse the kids got to ride around the living room and the knowledge of him helping others regardless of him knowing they would not do the right thing for themselves. I would be lying if I told you I always like Anthony. I know him many years and at first I thought he was loud and obnoxious. To be honest he still is but that's just him. I understand and I know him and his ways. I knew how he grew up. I know how Anthony takes care of his Mom and sisters and how he deals with the stress of a sick father who can't walk or take care of himself. I know how he worries about his Mom who has been dealing with his father's condition and her own health issues, and how he hates that the situation he is in is not only more stress for her but how it embarrasses his family. At the end, I know his heart and I know the differences between the front he has to put up some time and I know how humble he can be or is. I know through many late night discussions over the phone the anxiety and depressions Anthony suffers from. Sometimes it was heart breaking to see a human deal with such things. I am happy he has been getting help and that his medication is helping his depression and anxiety disorder. Considering the load on his shoulders with his situation, family, his company that employs many people, and his ongoing battle with depression and anxiety, I do worry dearly about how long his body will last from it all.

I write to you not to persuade you in any way but to give you some insight of Anthony's character. I beg for some sort of mercy and understanding on behalf of not just Anthony but his beautiful wife and daughter and 2 wonderful sons. I beg for those that depend on employment especially in these times. I beg for the sake of his Mom who suffers with Heart disease, with a handicapped father who is living in a nursing home unable to walk. I beg for myself because I know he is a good man and has a good heart. I can give you my word how sincere I am but you probably hear it all the time. To prove my heart in this letter, please note, I am a person who put his house up for Anthony's bail. I am a single dad with MS struggling daily raising a daughter. I would not take such a chance with everything I have put on the line if I did not know Anthony or know his true character. I have faith. Since his case in 2008 which it seems to be similar or the same, I am not sure. I know that woke him up and I am happy he sees his mistakes and poor decisions with the people he was surrounded by. I noticed his changes in a positive way the past few years and I hope you in some way can see it somehow for leniency and mercy.

Thank You Deeply,

Daniel McCarthy

# Exhibit D



**Castle Realty**
☐ 635 Portion Road
   Lake Ronkonkoma, NY 11779
   Office (631) 588-4663
   Fax (631) 588-4750

March 26, 2012

To the Honorable Dora L.Irizarry,

I have known Anthony Scibelli since he was 14 years old.  He worked in my restaurant, and started as a dishwasher and worked himself up to a managerial position.  I have known him for 20 years during that time I have known him to be loyal, hardworking and trustworthy.

He also worked for me in my Real Estate office.  He went to school and received a salespersons license and worked diligently for the firm.

I also attended his wedding and the birth of his three children.  I know him as a loving husband and devout father.  I am sure any separation from his children will be devastating for the family.

Any consideration that can be made on his behalf would be greatly appreciated.

Thank you

Charles Castelli

# Exhibit E

April 12, 2012

Phyllis Scibelli
23 Scotchpine Drive
Medford, NY 11763

Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
222 Cadman Plaza East
Brooklyn, New York 11201

Your Honorable Judge Irizarry,

I am writing this letter on behalf of my son, Anthony Scibelli. I am the proud mother of three
children in whom Anthony is the oldest and my only son. I was born in Brooklyn and raised by my
father along with my two older sisters. Times were always hard but my father always made sure
our family was kept together. I got married when I was sixteen and found out I was pregnant with
Anthony, while my husband was away in the military. My husband came home from the service one
week before Anthony was born. My husband and I worked extremely hard to raise our family and
instill the values and traditions that were taught to us by our parents. In 1987, when Anthony was
a young teenager my husband suffered an injury while working for Local 66 Union in construction.
The accident made it increasingly difficult for him to walk and now has left him permanently
disabled and in a wheel chair. Our lives were always financially stressed, but now with his injury it
left me working a couple of different jobs to make ends meet. I worked for Best Building Supply for
fourteen years until the company closed three years ago, due to the down turn in the economy. I
was their full time bookkeeper as well as their notary. I collected unemployment for two years and
recently got a part time job at Lowes as their head cashier. I spend any available time I might have,
caring for my husband due to his declining health.

I am very proud of Anthony and all his accomplishments. He is an amazing father of three and a
successful business man. My son has always understood and honored the importance of family, as
well as helping others. While raising Anthony and even before his father's accident, work was
always erratic in the construction field, sometimes there was work for him and sometimes there
wasn't. Anthony always understood how hard it was for me and would always try to help. At a very
young age, he would go out on his bicycle to try to find work. He would mow lawns, babysit, work
for an upholsterer, had a paper route, work at the pizza place and worked anywhere else he could
to help with my financial burdens.

Like me, at a young age Anthony was forced to become an adult and take on the responsibility that
comes with raising a family. I always felt guilty robbing Anthony of his childhood years. He was a
'natural' athlete and his two favorite sports were hockey and baseball. As much as he would have
preferred playing sports with his friends, he always did the right thing for his family out of
necessity and to ensure that his sisters would have a father figure and someone to depend on.
Anthony sacrificed his own youth and his passion for sports to provide for his sisters, myself and
his dad. The personal sacrifices that my son made growing up has made him into the man he is
today. He continues to live his life always putting others needs before his own.

Our son is a very generous person, and we love him dearly. There is not a day that goes by that we
don't talk. Since I was diagnosed with heart disease, his stress levels have increased even more. He

worries about how I will take care of his disabled father and take care of myself if anything happens to him. He is there for me not only financially, but as well as being my pillar of strength when I am emotionally drained, whether it is day or night.

Anthony worked full time while attending college classes. He started at the bottom in his field and worked his way up to become a successful businessman. His desire to be successful has not been self serving. He uses his success to help others on a daily basis. He has taken the time as well as a personal interest in many of his employee's lives and has always been there for them. Anthony employs a lot of people and they depend on him greatly to make ends meet in their own homes. Loosing Anthony as a boss and a friend would be devastating to both his employees and their families. The thought of Anthony going away, would be a significant loss to all who depend on him.

Aside from his obvious concerns about being away from his wife and three young children, he is ashamed that he has failed those who depend on him most. He prays that his actions do not affect them and their families. Anthony's immediate family is his highest priority. He devotes all of his free time to being with his children; Valentina-age 7, Anthony Jr.-age 3, Emilio-age 1. He cooks breakfast for his children every morning then takes his daughter, Valentina to the bus stop every day. After work, he participates in as many after school activities as he can, since it is difficult for his wife to run three children to everything that they are involved in. Some of these activities include religion, karate and gymnastics. Watching Anthony dote over his children fills me with pride. I can honestly say he is a wonderful father to his children and they are his life. I know that every mother thinks that their son is wonderful and I am no exception, however I only hope that as you read this letter you can see our son is truly a good hearted person with many characteristics that make him into the caring person that he is. He truly lives his life to help others.

While all the emotional turmoil in his life is going on around him, he still finds time to spend time and care for his father who permanently resides at a nursing home within a mile of Anthony's home. He brings dinner up to him regularly, cares for him, takes his children to see him or sometimes just sits and talks with him. This helps out greatly and sometimes takes the pressure off of me. I really depend on him when it comes to all aspects of my life. He helps with the care of his dad, sisters and financially helps me. He is the only person I have, and the thought of potentially losing him is devastating.

Anthony is extremely remorseful for his actions and certainly regrets using poor judgment in the past, as well as in his previous case in 2008. Your honor, Anthony has made the necessary changes in his life. He realizes that he was given a second chance by Judge Weinstein and promised me he would never put his family in that position ever again. Since then he has followed through with his promises to me. He has completely isolated himself from anything or anyone that might bring trouble to his life. He has become a better person, father, son, brother and employer. As Anthony's mother, I fully understand and respect the position of the court. I would like to ask you and the court to please show mercy in his sentencing as so many people need and rely on him on a daily basis, most of all his young children. I thank you for the opportunity to share more about my son as you make a decision regarding this very serious matter.

Sincerely,

Phyllis Scibelli

# Exhibit F

4-23-12

Dear Judge Irizarry,

I am writing in regards about my nephew Anthony Scibelli. As long as he's been in our family things did not come easy for him. He had a hard childhood. Anthony started working at a young age to help his parents make ends meet. His father was unable to work at that time and now resides in a nursing home today.

Anthony took on the responsibility to support his family and still is helping out again. Now Anthony is married and has his own family to support. He has three children that he loves dearly. He is an excellent father and husband. His morning routine at home before he leaves for work is getting his kids dressed and fed. I love my nephew very much and as a family we always stick together and help each other

out. That is how we were raised
to be there for each other.
      Anthony is that kind of
man a family man.

                    Sincerely yours,
                    Ms. Josetta Ferra

# Exhibit G

July 14, 2012


Honorable Dora L. Irizarry
United States District Judge
Easter District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


Dear Judge Irizarry,

My name is Michelle Scibelli, Anthony Scibelli's sister. I am 39 years old and currently work as a front end manager for Dunkin Donuts. I have been employed there for approximately three years, and previously worked for my brother full-time as a Manager at "Scibelli's Pizza & Pasta" for eight years located in the LIRR Ronkonkoma Train Station. Currently I work for my sister Gina part-time for the past two years when Anthony sold her the family business. I was living in Greenville, N.Y. beforehand, and worked at St. Peters Hospital for a little under five years as an Administrative Coordinator. I graduated from Patchogue-Medford High School, and immediately was employed at Brookhaven Town Animal Shelter. If I would have just listened to my brother, like my sister Gina had, and went straight to college to obtain my Degree's, I most likely would have been in a better position financially as well as educationally today. Even though I never went to college, it never took away from me the strong work ethic Anthony instilled into my life since an early age.

Since I can remember, my brother was always an extremely hard worker. He used to manage a Pizzeria, working fourteen hours a day, six to seven days a week. He did this for a very long time until he saved up enough money to open his own store. While working all these hours, he still found time to help his family. My father is permanently disabled, so Anthony since eleventh grade in High School has always helped my mother, I, and sister with anything we might need. He is also a big help presently to my mother who suffers from Heart disease. Since my father cannot do too much because of him being permanently disabled in which he's been residing in a Nursing home for the past three years, is where my brother comes in to be very important to my family. Without him, I don't know what any of us would do without his support.

Anthony is one of the most important, helpful, and loving person in my life. My brother and I are only a little over two years apart in age, and are extremely close. He is there for me no matter what. Any time in my life if I needed help, he was the first one there. I can still remember the days when we were in school, my brother would mow lawns during summer recess to help my parents buy school clothes for my sister and I for the upcoming school year. He was more concerned about our appearance in school than his own. I truly believe our upbringing is what made my brother the successful man he is today, despite at an early age

taking on so many responsibilities that a healthy father would have. My mother as well gave Anthony his drive for the fact being that she has always worked full-time and managed to keep our family together no matter how financially hard it was to get by.

Anthony was always supportive, when I was personally having hard times in life. One instance about six years ago, when I was hospitalized for stomach surgery, I couldn't work for a period of time. My brother kept up for me all my financial needs, so I wouldn't lose the things I had, like my apartment, my vehicle, and my credit cards. He was in the construction business along with the Pizzeria, and left the city part-time to fill in for my position as best he could, because finding someone to replace me for just a few months would be hard. He literally would be making Pizza's, with a cell phone in his hand, handling his other businesses work. How he kept an eye on both businesses, and didn't miss a trick, and would notice items, which I to this day don't know how he figured out without being at the store full-time.

My brother is happily married to Charise and have been together since 1996, with the blessing of having three beautiful children. Valentina age seven, Anthony Jr. age three, & Emilio age one. It was only Valentina for the first four years and my niece was, and still is inseparable with him. When Valentina first started school, once in a while Anthony would play hooky from work for the day, which was quite unusual, and stop to check on Valentina at Montessori School. He would surprise her and her classmates with either Pizza or Carvel Ice-cream during their lunch break, of course with permission beforehand from the school. Valentina is so proud of her Dad. Anthony raises her with the same family values that he was brought up with. It wasn't that long ago when he would bring her to the Pizzeria on Saturday mornings, and when I came in she would be cleaning the tables, filling the napkin dispensers, and making pizza boxes. For a four year old child at the time, that was impressive and my brother always made her understand that nothing comes for free in life. He also stressed to Valentina how necessary it is to work hard and that you can accomplish any goals in life you set for yourself. He has always & presently been involved in all of her activities, whether it is Gymnastics, Karate, Dance, or Religion class.

Anthony Jr. as well as baby Emilio are no different. Your honor, my brother was terrified with the fact that he might not have been able to see Anthony Jr. born. In 2008, Anthony was sentenced on August 14th, and Anthony Jr., was born November 20th. Had Judge Weinstein not have given my brother Probation, despite his poor decisions and serious mistakes he had made in the past, this would have not been possible. This incident will never leave my brother's life, and will always haunt him. He realizes now more than ever that nothing is taken for granted in life. He takes full advantage of the limited time he has with Anthony Jr., due to his work schedule, by bringing him to NY Yankee games, teaching him to swim in the pool, recently had him join with Valentina Karate, riding his bike with training wheels, & many other activities. Anthony Jr. as well is being taught family values and respect to others at such an early age.

Although Emilio is one, on his way to two shortly, my brother is equal across the board with time with his children. Again being thankful to having the chance to be present for Emilio's birth, Anthony appreciates in words that can't explain. Emilio is put to bed nightly by

Anthony, bathed regularly, and diapers changed when needed on a regular basis. To witness my brother singing "He's a Daddy's Boy, a Daddy's boy" is some sight. He for sure isn't a recording artist, but he gives his all to help Charise with one less child to prepare for bed. This isn't something common with most men that work so hard to give his family a better life full-time, and when coming home from work, he takes the responsibility as a father and partner to Charise.

Your Honor, I hope I gave you some life experiences I have had and witnessed with my brother over the years that show his true character, despite these serious charges he has pleaded to. I can't tell you how remorseful and sorry he is, and how his bad judgment, with poor decisions he has made, hurts him on a daily basis. He is honestly sorry, and when given the chance in 2008, he worked extremely hard to change his ways and surroundings to be a positive and productive person. Unfortunately, because of the fear my brother had witnessing my father being addicted to prescription drugs, he was hesitant to get help with the imbalance's he has suffered his whole life. Anthony since High School always received treatment off and on, but never has taken medication on a regular basis and had been treated for his proper illnesses. His behavior at times was totally unacceptable and reckless regardless, but the medicine he has been taking for over the past four years helps him with his mood swings, anxiety, and stress involved with being a successful business man with a tremendous amount of responsibility has helped him. He continues with his weekly therapy appointments, because he knows it helps, and the lone fear of being away from his loved family and not being there to provide for his employees and their family's' pains him daily. You're Honor, please when sentencing my brother Anthony; you can see he has changed since the chance that was given to him in 2008, and wants nothing more to continue going forward for the rest of his life as a law abiding citizen. I pray that when you're making your final decision you can find leniency and give him a chance to continue on the right path he has displayed since his prior arrest. Thank you for the opportunity to speak on behalf of my brother I so dearly love.

Sincerely,

Michelle Scibelli

Michelle Scibelli

# Exhibit H

**CHARLES D. CARAMES**
**DVL, INC.**
**70 EAST 55TH STREET – 7TH FLOOR**
**NEW YORK, NY  10022**
**TELEPHONE:  212 350-9900**
**FAX:  212 350-9911**

May 3, 2012

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

RE: Anthony Scibelli

Dear Honorable Irizarry:

I have never written a letter to a sitting Judge on behalf of someone I know so I hope that my words  don't fail me as I try to write about Anthony.

I am an Asset Manager for DVL Inc and a VP of Starrett-RDC which is a subsidiary of Starrett Corp. Starrett-RDC owns a Leasehold in Ronkonkoma NY that is a small strip of retail stores next to the LIRR station. It was in my role as VP for Starrett –RDC that I first met Anthony.

In 2003 we executed a Lease for a small unit that Anthony renovated into a pizzeria. He did excellent work and kept his promise of using quality materials to make the store look attractive. Not soon thereafter the adjoining space became available and he expanded into that location as well.  Again he kept his promise to use quality materials and again he made the store look very attractive.

As his Landlord I can say that he has never been in default, paid his rent timely and kept all his promises. I have known him for a few years now and can also say that he is very passionate in whatever he gets involved with. I have often told him that I talk more to him than to Wal-Mart who is my tenant in 20 buildings that we own. I chalk it up to his competitive nature so I don't let it get to me.

I closing I wish to express that Anthony is a very hard working person that has kept his promises in dealings that involved me.  In this day and age that is an honorable person.

Very truly yours,

Charles D. Carames,
Vice President –Real Estate

CDC:bnt

# Exhibit I

April 20, 2012


Gina Scibelli
23 Scotchpine Drive
Medford, New York 11763

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


Dear Judge Irizarry,

I am writing on behalf of my brother. My name is Gina Scibelli, Anthony
Scibelli's youngest sister. I am 31 years old and have three beautiful young
children. I manage and work at a pizzeria that I own, Scibelli's Pizza &
Pasta, located in the Ronkonkoma Train Station. I received an Associate in
Business from Suffolk Community College and a Bachelor's in Accounting
from St. Joseph's College. I am also a notary.

My brother plays a significant role in my life. Growing up, Anthony was
more of a father figure than a brother. He instilled some of my greatest
qualities, teaching me to be family oriented, respectful, hard working, and
conscientious of others needs and feeling. Being that he is 10 years older
than I, Anthony would help me with everything, from changing my diaper to
school projects. Anthony always worked, starting at a young age to help my
family. I can recall Anthony working so hard to surprise me with my first
bicycle. He has gone far and beyond for me.

Throughout my life, he has been a constant pillar for me and my family to
lean on. As a young adult, I found myself faced with the daunting reality of
suddenly becoming a single parent. This was an extremely emotional and
turbulent chapter in my life. I was preparing for final exams in school while
trying to hold down a full time job and be a full time mom. I could never
have graduated school nor kept my job and raised Nico, my first son,
without Anthony's support. Anthony picked me up when I was down and
carried me when he saw I needed it. I truly can say I don't think I would be
as a successful parent as I am today if it wasn't for his guidance and help.

I can't begin to say how Nico looks up to his uncle. He absolutely adores him. Nico always talks about being just like his uncle Anthony. Since Nico was little he was a constant in his life, taking him to lunch, going crabbing, to the park or just spending quality time with him. Anthony showed Nico how to make pizza along with his daughter, Valentina. They are two years apart. He has always included Nico, as well as my younger son, Gaetano, in all his family outings. Gaetano and my nephews, Anthony Jr. and Emilo, are all close in age so my brother would take them all out for a boy's day full of fun. The boys look forward to these outings and I find my brother to be an amazing father and uncle. Anthony's greatest joy in life is his family.

Just recently, I was blessed with the birth of a beautiful little girl, Lucia. Upon finding out that I was pregnant I knew instantly who her godfather would be, my brother. Knowing what the true duties of a godfather are and knowing that there would and could be no better choice of a man to take care of my children. I know from my experiences as a child growing up and looking back and realizing how many selfless sacrifices he has made to help my mom raise me. He could only be categorized as a great brother, father, and friend.

Anthony was there every step of the way when I had to undergo major surgery to my face. I had my jaw wired shut among a few other surgeries to my face and he was extremely supportive. I had won a dental malpractice lawsuit and he didn't want me to waste the money and have nothing to show for it. One exemplary example of what type of man he is was when he sold me his pizzeria. As a single parent, I was working full time and was living at my mother's when my brother came to me and said Gina "I want to help you secure your future and make a future for you and your family". He always looked out for my best interests. My brother sold me his pizzeria, which he worked most of his adult life to build. He trusted in me, knowing the values he taught me as a child and with his help, I would become successful. Anthony wanted my children and I to become secure and have a better future. I don't think he will ever really know what he has truly done for me and how thankful I am to have him in our lives. In the past, I have always been leery and unsure of my future, but with my brothers' guidance and help, my life is now complete, my family is complete, and things are the way I envisioned them as a little girl growing up.

As much as my brother has been a role model to me, his children idolize him. Anthony is a very devoted father to his three children. I can honestly say, from past experience, it is rare to see a man so much involved. He makes them breakfast, takes them to school, religion class, karate, gymnastics, etc. Every weekend he plans to do something active with them. They mean the world to him as I have expressed before, Anthony is all about family.

I appreciate you taking the time to read this letter. I just want to say though you may only have a small amount of insight into my brother's life and the circumstances that bring him before you are unfortunate, I hope that some of the examples that I have provided will offer you a broader snapshot into what type of man, father, and brother he is. I have had many talks with my brother and he has expressed extreme remorsefulness. Please recognize the toll this has taken on our family and the ramifications of him being away from us will be devastating. As his sister, I truly feel he has realized his misjudgments and has grown from this experience and will continue to do so. I pray there is a way for leniency so Anthony can move forward on the path he is on.

Sincerely,

Gina Scibelli

# Exhibit J

*GREGORY E. SULGER*
*16 SOUNDVIEW DRIVE NORTH*
*LLOYD NECK, NY 11743*

March 23, 2012

Honorable Dora L. Irizarry
United States District Court
Easter District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Your Honor:

My name is Gregory E. Sulger and I am a close friend of Mr. Anthony Scibelli, having met through mutual friends over 10 years ago. As we spent time together, our friendship grew - spending our days, nights and weekends together with our families for birthday parties, weddings and holidays.

Together, we opened our first pizzeria restaurant and ran a successful business for three years.

I then offered Anthony an opportunity to work with me in the city (I was a partner in a general contracting corporation). Together, Anthony and I would commute daily into the city. Anthony learned the basics. He started taking classes at a local college. To start, Anthony would go to the various jobs with the project manager – he learned a great deal. He showed much enthusiasm and his knowledge and abilities quickly grew. He was always willing to go above and beyond – putting in long hours whenever we needed him to. Eventually, my partner and I closed the business. Anthony decided to start his own business – I have heard (and seen) that he has a reputation of getting the job done, a knowledgeable staff and that he works well with others.

He is a very caring and giving person. He will be there whenever and wherever he is needed – no questions asked no matter what the task.

Over the years of knowing Anthony I have seen and experienced the open and giving heart he has for his family and friends. I know he has great regret and remorse for his past actions and for those he has hurt in the process. He has learned from his mistakes and has taken full responsibility for his actions.

Respectfully,

Gregory E Sulger

# Exhibit K

November 21, 2012

Honorable Dora I. Irizarry
United States District Judge
Eastern District of New York
Cadman Plaza East
Brooklyn, NY 11201

ref:    Anthony Scibelli Sentencing

Dear Judge Irizarry;

This is probably the most difficult letter I have ever written in my life, especially since Anthony Scibelli is my employer, anything I say might be construed as tainted, as though biased.

I assure you, Judge Irizarry, that this is not the case.

I joined Anthony's team six years ago, and I run the office side operations of his construction related companies.  I am a consummate professional in these industries, with over thirty five years of experience, running the gamut from interior renovation, to new hospital construction. I led the sky box installation, interior renovation, and seat replacement project for Madison Square Garden, and opened the arena on time, and at their budgeted costs.

I can write my own ticket, and I can work wherever I choose, and I choose to work here with Anthony.

Although erratic and pig-headed at times, Anthony has proven time and time again, to be the most honorable man I have ever met.

A down side of this industry, is the power rush a man in Anthony's position gets as their business' becomes successful.   They begin taking advantage of their employee's, contractors, vendors, suppliers, and mechanics.  I've seen it happen time and again, in the twenty plus years I've spent working at Herbert Construction with Ted Kohl and at various other organizations along the way.

This is not the case here.  Anthony is consistently fair and equitable in all of his dealings.  He treats his associates and employees with the same respect and even handedness he expects in return.  His bills are paid in a timely manner, our checks never bounce, and our contracts are closed to the satisfaction of the clients and contractors we work for.

At times, the stress of running the various business', being a relatively new father, can be overwhelming.  Add the stress of these proceedings, and it's a wonder he manages to get out of bed and come to work every day. Yet somehow he does it, and it's business as usual.

He does it, because he has people who depend on him. His employees look to him for direction and support, clients expect him to answer the telephone whenever they decide to call, business associates to meet and plan our future with, and negotiations to conclude.  He does it because it's the right thing to do.

November 21, 2012

Honorable Dora I. Irizarry
United States District Judge
Eastern District of New York

ref:     Anthony Scibelli Sentencing

I truly admire Anthony for his dedication and resolve. I admire him because of his philosophy of
never quitting and his refusal to take the easy road simply because it's convenient.  For example,
one of our employees left and accused Anthony of short paying her.  She claimed she worked
more hours than she actually did, and complained to the state of New Jersey, where we are
incorporated as Hunter-Atlantic Inc..

Upon that accusation, an investigation was launched, and after almost four months of
intermittent contact, a multitude of letters, and repeated documentation transfers, they came up
with nothing to substantiate the young ladies claim.  They offered Anthony a hundred dollar fine,
if he paid young lady the thirty dollars she claimed he owed her to make it go away.  He refused
to pay because it would have been an admission of guilt where there was none.

The State of New Jersey dropped the charges.  It had nothing to do with the thirty dollars, or the
hundred dollar fine.  It simply wasn't the right thing to do.

I am not a rich man, and more often than not we live paycheck to paycheck.  I don't live an
extravagant lifestyle.  Yet, surrounded by my church, my friends, and my family, I am wealthy
beyond words.

Recently, dear friends of mine, hard working parents of two beautiful children, people from a
sister parish congregation, were facing some very tough times financially.  They were in fear of
losing their home and came to me for advice.  I suggested a fund raiser at the church and spoke
to Father Tom, our parish Priest, about it.

Anthony saw that something was weighing heavily on my mind the following week, and asked
me what was wrong.  I explained their situation and told him how much they needed.  Without
hesitation, he had the money for them that very Friday and I gave it to them after mass on
Sunday, explaining how I came to have it.  Afterward, Father Tom came over my house to sit
with us and talk about the logistics of the fund raiser, and otherwise enjoy the day in our yard.

We told him that since we last spoke, an angel intervened , and the fund raiser was no longer
needed.  A mass was later said in Anthony's honor.

I am a member of our parish congregation, we did what we could to help others in our sister
communities who were less fortunate during the aftermath of Hurricane Sandy, but normally, we
raise food for the community, bring meals to the elderly, help folks get to their doctor
appointments, become handymen to fix things up around their homes, provide counseling, and
every so often I am requested to be the chef extrordinare at our pancake breakfasts.  I even have
a fancy french hat I wear for those ridiculous occasions.

November 21, 2012

Honorable Dora I. Irizarry
United States District Judge
Eastern District of New York

ref:     Anthony Scibelli Sentencing

Anthony is a man of integrity and I am proud to say that he is my friend, and a person I respect and admire.

The business we conduct here is legitimate.  We are a real company, with real obligations, real commitments, real goals, and real aspirations for prosperous futures.

I ask that this information be considered in your judgement of Anthony.  I beg that he be treated with the same consideration, dignity, and respect he has shown so often to others in my presence.

Thank you for taking time from your busy schedule to read this, and please, forgive my long windedness.

Sincerely,


Christopher James DuBrino
2668 Birch Avenue
East Meadow, NY 11554
516-679-0327 Home
516-523-9293 Cell

# Exhibit L

**ZISHOLTZ & ZISHOLTZ, LLP**

*Attorneys at Law*

170 OLD COUNTRY ROAD
MINEOLA, NEW YORK 11501
(516) 741-2200
FAX (516) 746-1024

ONE PENN PLAZA
NEW YORK, NEW YORK 10119
———
PLEASE ADDRESS ALL CORRESPONDENCE
TO MINEOLA, NEW YORK

August 7, 2012

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Anthony Scibelli

Dear Judge Irizarry:

My relationship with Anthony Scibelli dates back to about the year 2000 when I was asked to prepare a stockholders' agreement for him and various potential shareholders in the construction corporation being formed.

In the course of preparing the shareholders' agreement, I have become familiar with his character, demeanor, ethics and manner in which he conducts his business. I found him to be exemplary beyond reproach to the highest moral and ethical standards.

At the present time, I am representing one of his companies in a major piece of construction litigation and, once again, I find his character qualities exemplary.

Mr. Scibelli is extremely loyal to his subcontractors and associates. He goes out of his way to make sure that the people who work for him get a day's pay for a day's work. He does not shirk his responsibilities and if he finds something is wrong he assumes responsibility and deals with the facts as they exist. He does not make excuses to avoid his obligations or to blame others.

In my dealings with Mr. Scibelli, he discussed his present situation that is pending before Your Honor numerous times. He is remorseful and extremely sorry for his poor lack of judgment and the serious mistakes that he has made. I firmly believe that Mr. Scibelli will not let the situation happen again.

I sincerely urge this Court to extend every courtesy or consideration possible and grant him leniency.

Very truly yours,

ZISHOLTZ & ZISHOLTZ, LLP

By:

Gerald Zisholtz

GZ:md

# Exhibit M

# Decorama *Building & Plumbing Supply, Inc.*

1233 Metropolitan Ave. Brooklyn, NY 11237   Phone: (718) 651-1800   Fax: (718) 651-0007

Apr. 2, 2012

Honorable Dora L. Irizarry,
United States District Judge,
Eastern District of New York,
225 Cadman Plaza East,
Brooklyn, NY 11201

Your Honor,

I met Anthony Scibelli in the year 2000 by a business indirectly through the concrete subcontractor George Tritaris of Aron Industries. We supplied building materials to George for the construction of Liberty Harbor View Condominium in Jersey City. Aron ran into financial problem and technical complication, and was unable to finish the job, and thus left with a big debt of unpaid bills over 100,000.00 owed to us. Anthony stepped in to take over the job, with all the responsibility of restoring the construction work, unknown risks, and he promised to pay all the debts in just one hour of negotiations. Starting from the following months, with the efficient work force and leadership, the problems were gradually corrected, and the debts were promptly paid to us as promised. The total amount supply was over 500,000.00, and all were paid at the end. Had Anthony not stepped in, and not promised to pay us the balance owed from previous subcontractor, we would have ended up with a financial disaster.

Currently we are supplying and servicing two projects. Overall we have done over one million dollars in business together. Anthony is a reliable person, a respectful friend, and most importantly, a man of his words.

Yours faithfully,

RIZAL CHAN

Vice President

# Exhibit N

# Metal Partners Rebar

# Coatesville, PA

### Office (610) 643-4501
### Fax (610) 400-8579

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your Honor,

I am writing to you on behalf of Anthony Scibelli. I have known Anthony for over 7 years now. I first came to know Anthony while working for Desco Steel Corp, a rebar distribution company. I cold called him and he became one of my customers. I sold him multiple truckloads to many of the jobs he was handling in the city. He has not only become a good customer but also a friend. Three years ago I left Desco to start my own, Obey Steel LLC. Anthony was very helpful in the transition. Unlike many of my other customers Anthony always made sure I was paid in a timely manner. Unfortunately with this bad economy I was unable to keep Obey Steel open. I was able to take a job with another company, Metal Partners Rebar. Anthony was once again very helpful in the transition. He continues to give me business such as; 3170 Webster Ave, Bronx, NY which is a school building, Nan Shan in Flushing, NY a retirement center, and many others. Most of my other customers have not been as helpful as Anthony. Without Anthony's help I would have not progressed up through the company ranks as quickly.

For as long as I've know Anthony he has always been a stand up guy. He's been a pleasure to work with from a business prospective. He has always made sure I was paid in a timely matter. We have not had one issue. He has always honored his commitments. If he bought material not only would he take it but pay for it when it was due. In my industry I can't say that about too many people. He has helped me out in a time when I really needed it. I thank him for that. I know he's sorry for what he's done. He's told me he's made some mistakes in the past and is very remorseful.  I hope that you can see Anthony for the individual that I have. Thank you for your time.

Sincerely,

Matt O'Brien

# Exhibit O

Date: April 10, 2012

Honorable Dora L. Irizarry
United States District Judge
Eastern Distric of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Your Honor,

I am writing this letter on behalf of Anthony Scibelli. I came to know Anthony many years ago. I owe him much gratitude for all the help and support he has given me through the years. It is unfortunate that he finds himself in these circumstances and I hope this letter helps you to better understand Anthony as the hard- working, loyal and generous person that he truly is.

During the 2008 recession, I walked into work one morning and I was told I no longer had a job. No warning, no severance and a wife and two children who depended on me. I was devastated. That same afternoon I called Anthony Scibelli, who I had met back in 2001 while working on a landmark project together, and kept in touched with him throughout the years. He agreed to meet with me that same day, and within hours I was employed again. Anthony understood that I had a family to support and empathized with my situation. That was four years ago. In working with Anthony for the past four years, he has always conducted himself professionally and ethically. In the time that I have worked for him, there has never been any project or business dealing that was not carried out to the letter of the law. Having been in the construction business for over twenty-five years I can attest to the difficulties of maintaining employment, the inconsistencies in work and the many employers who feel that workers are disposable commodities depending on the company's profit margin. Anthony Scibelli is not one of those guys.

He is a loyal, kind and generous employer and person. From the day I started working for Anthony, I was never treated like just an employee. He welcomed me and my family into his life.    Being invited into Anthony's life means that you have a friend you can count on for unquestioned support and friendship. Perhaps, his blind trust of others and his eagerness to always help friends and family are his greatest faults. He is in the office day after day, and I have witness countless friends who turn to Anthony not just for monetary support but for advice. He almost never refuses their request. If a friend is out of work he will find odd jobs for him to do, so that he can help them put food on the table. When his sister found herself in an abusive marriage situation, it was Anthony who took care of her and her two children. When I was faced with an unexpected expense, Anthony was there to help without question. He always wants to help. One night our families were having dinner together, when my youngest daughter mentioned that she was thirteen years old and her bedroom still had teddy bear wallpaper. Anthony heard how upset she was and soon after he had someone at our house working on her room. Anthony is the first to ask how the kids are and what they are up to or do you need anything. He is the first to call after one of their sports events to see how they did. He is generous in both thought and action. Never in all my years of work have I met anyone like Anthony; a person who genuinely cares about the people that work for him.

Under his tough exterior, which most in construction possess, lays a gentle, loving and kind person. This is most evident when he is around his wife and children. When he looks at them you can't but notice the love and pride displayed on his face.   It is plain to all who witness him with them how much he loves and adores them. For their birthdays, we are always invited, as well as to dinner or a barbeque were Anthony is always busy

cooking and cleaning up for his guests.  He welcomes friends like they are family.  Perhaps what no one else knows is that before Valentina's, Anthony Jr.'s and Emilio's birthday, Anthony is busy hiring a face painter or a clown, business as usual is put on hold, so he can plan a birthday ( and he usually elicits my help).  Picture two grown men, in construction, looking for face painters or people who can make balloon animals; but that is who Anthony is.  As much as they are the most important part of his world, he is also the most important part of their world.  He is their father and he is an excellent father.  These children live in a supportive, loving, and nurturing home, in which Anthony is a major part of creating.  His children are kind, respectful and eager to share with others, rare qualities for children today.  This can most certainly be contributed to the loving home they come from and the models set by Anthony and his wife.   His children need his continued support, love and example, so that they can continue to live their childhoods free of the resentment, embarrassment and heartache that often comes when one parent is absent.

Besides his family, I would say that I spend the most amount of time with Anthony.  We work long hours Monday to Friday; often twelve hour days and often speak throughout the weekend about work.  There have been many heart-felt conversations about the events that have me writing this letter.  To say Anthony regrets the choices he has made in the past would be an understatement.  He is greatly saddened, in fact devastated, that he has caused his family and friends such hurt and sadness. He knows that they will suffer an overwhelming lose if he is taken away from them, both monetarily and emotionally.  Anthony is not only responsible for his family, but many others depend upon him so they can support their families, including myself. If Anthony

was no longer able to work many people would be affected, and this also burdens him greatly. Anthony's utmost concern is not for himself, but for those who depend upon him.

In life, on one occasion or another, we all have a something we wish we could do over. Unfortunately, life does not allow for "do over's". But it is those moments, those mistakes that help us better ourselves, often with hard lessons attached. I assure you that if Anthony had an opportunity to redo, he would most certainly make a very different decision, not because of the consequences but because he is a smarter, wiser person today. In this process he has become more cautious of those he trusts and those he lets enter his life. The road to punishment is often more painful than the punishment itself. This is the case for Anthony. He has spent day after day contemplating what his wife and children's lives will be like if he is not around, all the moments he will miss and how he has let them down. As a father, I can't imagine that pain. So, as you look to what is an appropriate consequence, I ask that you take into consideration the fact that Anthony, in spite of his wrong doing, is a kind, generous and loving men. He is a loyal friend and a supportive and nurturing husband and father; but most of all that he is man that so very much regrets his past choices and is forever changed by these events. For the sake of his family, his friends and his employees, I ask that you are lenient, so that so many others do not have to suffer.

Thank you for taking the time to read this letter on behalf of Anthony Scibelli.

Respectfully Yours;

John LoIacono

# Exhibit P
















Case 1:11-cr-00083-WJ   Document 266   Filed 12/14/12   Page 62 of 181 PageID #: 2956











# Exhibit Q





RIVER STREET ELEVATION
SCALE 3/32"=1'-0"



MINNO &WASKO
ARCHITECTS AND PLANNERS

50 Regent Street
Liberty Harbor North, Jersey City, New Jersey

50 Regent Street Associates, LLC

A16

# Exhibit R

Case 1:11-cr-00003-DLI   Document 255   Filed 02/13/12   Page 72 of 181 PageID #: 2966



















11/03/2012  12:24 PM

11/05/2012  08:06  AM

11/05/2012  08:06  AM

# Exhibit S

# Liberty Harbor North, Inc.

345 Tenth Street
Jersey City, NJ 07302
Phone: 201-516-8550
Fax: 201-653-7230

June 20, 2012

Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Irizarry:

I am the developer of a major waterfront development in Jersey City, New Jersey. The project has a 20 year projected construction schedule. Construction started in 2004 and has continued unabated to the present day. I am writing to you regarding my personal experiences with Anthony Scibelli, the President of VMS contracting company. Over the last 8 years, Anthony has proven to be a hard working, honest and dedicated contractor, who in the face of adversity on the job has exhibited courage, resourcefulness and integrity at every turn and at every level.

After graduating from Fordham Law School in 1967, I clerked with Judge Victor S. Kilkenny of the N.J. Appellate Division and was admitted to the New Jersey Bar in 1967. Almost immediately thereafter in 1971, I was elected Mayor of North Bergen, N.J. After serving two four year terms and two terms as a County Freeholder, I retired from public office, and began practicing law. Almost simultaneously, I became involved with real estate development, construction and management. Today together with my wife Lorraine we own and operate Health Care Facilities, Real Estate development and construction projects and overall real estate management activities.

After an extensive bidding procedure in 2004, I selected VMS and Anthony Scibelli to provide the concrete contracting work for the 134 unit, 9 story Sutton Building at the Liberty Harbor project in Jersey City, N.J. The overall project includes over 65 acres on the Jersey City waterfront including 10,000 residential units to be built over a 15 year period. As with many projects, it started uneventfully, however after about three months into the project, because of union problems, we had difficulty getting regular deliveries of concrete. During this period, Antony Scibelli was being as resourceful as possible, but could not get the volume of concrete needed for the project. I suggested to my Project

Manager and Anthony Scibelli, because of the size and breath of the overall project, the rather innovative idea of Liberty Harbor putting up a portable package cement plant on site. The project manager and Anthony Scibelli independently ran down the concept and both indicated that it was not only feasible, but was the answer to our predicament. I asked both independently, to continue the analysis and see what was immediately available, at what cost, etc., etc.

Anthony was able to locate an available used portable concrete plant that could be delivered and set up immediately. I gave him the go ahead. The portable plant came in on wheels, was set up and running within short order. I do not want to convey to you that it was an easy exercise to complete. There were multiple issues that had to be addressed and resolved. Among them: zoning issues, building department issues, electrical and water supply issues, site location issues, expediting the delivery and access issues. There were many, many issues and Anthony Scibelli was there with our staff personally resolving each issue in a creative, resourceful and honorable way.

As a result of Anthony's pro-active solutions, continued commitment to the job, resourcefulness, integrity and honestly, VMS has also done concrete work on the Zenith, an 8 story loft building and the Regent a 9 story 173 units residential building at Liberty Harbor. Liberty Harbor has approvals for an additional 9 story and 16 story building. We are presently working with architects to prepare final working drawings for the 200 unit, 9 story building. We anticipate starting construction in the spring of 2013. Because of Mr. Scibelli's past positive construction activity at Liberty Harbor and the fact that Mr. Scibelli has substantial concrete construction equipment stored on vacant portions of our site, I anticipate requesting Anthony Scibelli to bid on the project. And based on past performance I believe Anthony will be the contractor to construct the concrete portion of the building.

In the construction field every day brings a new set of issues, problems, dilemmas, and catastrophes. Our site is no different. The one constant over the years of construction years is that Anthony Scibelli has proven himself to be an honest, hard working, creative and innovative member of the construction team. In all my dealings with Anthony and his company, he has never once suggested anything, or implied anything that was inappropriate. I believe that Anthony Scibelli and his company are an asset to the New York Metropolitan area and sincerely hope you will give him the opportunity to continue providing services to the construction industry and Liberty Harbor in the future.

Sincerely,

Peter Mocco

# Exhibit T





Case 1:11-cr-00093-DLI Document 2n5 Filed 12/17/12 Page 90 of 181 PageID #: 2984









Case 1:11-cr-00003-DLI   Document 252   Filed 12/01/12   Page 95 of 181 PageID #: 2992



# Exhibit U

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

March 5, 2012

Dear Judge Irizarry:

My name is Diane Aufrecht and I am related to Anthony Scibelli Jr. He is
my nephew; the first son of my older brother Anthony Sr. I have been involved
very closely in Anthony's life since his birth.

Anthony, his wife Charise and their three children are a wonderful part of
our family. He was the first of nine grandchildren for my parents and was a great
kid. He has always been very motivated to succeed in life and worked hard to do
so. But above his desire for success and passion for his work, Anthony has a
greater love in life; his family. He is extremely close with all of his cousins,
ranging in age from forty to sixteen. We love the time we get to spend together
and he never misses a family gathering. High school graduations, birthday
parties, weddings; he is there for everything.

Anthony has grown to be an amazing father and husband. He is so
involved in his children's everyday life; I have never known such a nurturing and
encouraging father. I cannot imagine what a void his children will feel, if Anthony
is suddenly not a part of the ins and outs of their days. He cooks for them, plays
with them, does homework with their oldest child Valentina; he even knows how
to braid her hair. He is very attentive to them and you know when you meet
Anthony that his children are the light of his life.

Anthony knows the value of education and has attended college. He is a
very dedicated employer and works hard every day to provide an enjoyable work
environment for his employees.

My brother Anthony Sr. is handicapped and for the past few years has
been living in a nursing home in Saint James, NY, which is just minutes from
Anthony and Charises home. He's had 4 knee replacement surgeries; none of
which have been successful in giving him the use of his leg. He is now unable to
walk permanently and will be in a wheel chair for the rest of his life. Due to his
increasing health problems, there is little hope that he will ever live at home
again. All of this at the young age of 61.

His father's condition has been very taxing on Anthony and their family,
but he has stepped up to the plate and provides care to his father in more ways
than one can count. He plays an integral role in my brothers' mental outlook. He
keeps him laughing and his spirits stay high when Anthony is visiting with him. If
he is having a bad night or is frightened, he will call his son and Anthony is there

in minutes to comfort him. My brother will unfortunately spend the rest of his life in this facility and it is a blessing that Anthony lives so close.

When Anthony's fathers' health deteriorated last summer, our whole family traveled to New York to be there with my brother, on what we thought were his last days. During our visit, we had many emotional moments; I remember one morning specifically that my sisters and younger brother sat in Anthony's kitchen as he confided in us about his behavior in the past. How regretful he was about the choices he had made and how he would do anything to go back in time and change what he did. He realizes that his judgment was clouded and has done everything in his power to make a very real and positive change in his life. He wants his father to be proud of the man he has become.

I am asking for leniency in your sentencing of Anthony Scibelli. He is a wonderful and caring person who loves his family with all that he has. My parents, his parents and his children need him in their lives.

Thank you for your time.

Sincerely,

Diane Aufrecht

# Exhibit V

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

March 5, 2012

Dear Judge Irizarry:

My name is Rose Nardello and I am Anthony Scibelli's Aunt. Anthony and I have had a special bond since the day of his birth. Today the family knows him as "Little Anthony". He is the oldest of our family's nieces and nephews.

After the tragedy of 9/11, in which I lost my brother in law; a firefighter, as well as my husband's first cousin, Anthony was extremely generous with a supply of pizza and food for the families of the fallen firefighters. Each day, he would cook and send over whatever was needed. He never once questioned how many people we were feeding as we waited to hear if our loved ones had been found; neither were. Anthony did not know either of my husband's family members; however he made it a point to attend both of their funeral services. His care and concern for family is very great.

Anthony now has 3 beautiful children; Valentina (7), Anthony (3), and Emilio (1). He is one of the most attentive and involved fathers that I have ever seen. He is very hands-on with them. He takes them out alone on weekends to plays, dinners, parties, children's Broadway shows, and Knicks basketball games. Anthony does most of the cooking in the home. He makes breakfast everyday for the kids before he leaves for work.

I was in NY on vacation last summer and had the pleasure of staying at Anthony's home. Every morning, he was up before everyone else, cleaning the house and half way through cooking breakfast. After dinner, he bathes the kids and gets them ready for bed, and the next day he starts over again. Anthony has a beautiful wife, Charise. They have been very happily married for 8 years. Charise is proud of the wonderful father Anthony is.

Anthony is a very important part of his father's life. Unfortunately, my brother Anthony Sr., is in a nursing home at the young age of 61. He has recently been informed by his doctors that he will never walk again. Anthony's father has many other serious health issues and is confined to a wheel chair at Saint James Nursing and Rehabilitation Center in Saint James, NY. The nursing home is less than a mile away from Anthony's home. He brings his Dad dinner almost every night and ensures that he has all the proper care necessary to keep him as comfortable as possible. There are nights that Anthony will take a ride up to the nursing home, sometimes as late as ten in the evening, just to see if his Dad is doing alright. Since hearing the doctors' prognosis of his inability to walk, my brother has been very depressed. His son Anthony brings him love, laughter and above all, companionship. I know that their special relationship is one of the few things that keeps my brother going from one day to the next.

Without Anthony's help and dedication, I am not sure what will happen to my brother. On weekends, he looks forward to Anthony's visits the most. They'll go out for the day; a trip to the mall, or just to his home to visit with the grandchildren. My brothers' greatest joy is having grandkids, and because it is difficult to bring the children to the nursing home, he values those weekends more than words can express.

Anthony is a great help to his Mom, Phyllis, as well. She lives in Medford, NY and is about 30 minutes away from the nursing home. Phyllis tries to visit my brother everyday, but with the escalating cost of fuel these days, it has become a hardship for her. Phyllis worked for 11 years at a lumber company as a bookkeeper. Due to the downturn of the economy, the company closed 2 years ago and she has been on unemployment since that time. Recently, the unemployment terms have ended and she is trying to find work. She is concerned about continuing to have the ability to visit my brother every day once she finds work and is worried about what will happen to him if her visits lessen. It is truly a blessing that Anthony lives so close to him. Phyllis has recently been diagnosed with heart disease and is under doctor's close care. This is a terrible strain on her. Anthony is a great financial help to his parents as well. Phyllis still lives in the home that they bought right before Anthony was born. As you can imagine, it is difficult for her to run the household without a steady income. Anthony is very generous and has always made it a priority to take care of his family.

Anthony has also always made it a main concern if his to visit his paternal grandparents in Florida. Over the past year, he has been unable to travel due to his situation. My parents are devastated; being the first-born Grandson they are very close with him. My Mom prays every night for him and gets very emotional when she talks about his current circumstance. My Mom will turn 81 this year and my Dad will be 85. He makes a point to call them every weekend. Anthony also knows how important it is that they have a close relationship with his children. Thanks to technology and web-cams, my parents can interact with the kids whenever they want. It is important to Anthony that his children know who their Great-Grandparents are. He values how lucky we are to still have my parents with us.

This past August, his fathers' condition took a turn for the worst and the doctors advised my family to come and to be prepared to say goodbye. Anthony immediately bought airline tickets to fly his grandparents up to New York so that they could be with their son during this very emotional time. My mother is on oxygen 24/7 and it is extremely difficult for her to travel. She has emphysema, COPD and a list of other health issues. He made certain that she would have what she needed when she arrived. My other brother and two sisters drove with me up to New York to be with our family. Anthony supplied all the food and was an extremely gracious and generous host for the entire length of our trip. As you can see, Anthony is the core of his family right now for moral support as well as financial support.

Anthony is a good person. He has a very big heart and would help anyone that was in need. He is a wonderful father to Valentina, Anthony and Emilio; and a wonderful husband to Charise. He is dedicated and loyal to his family.

Anthony has shown great regret and remorse for his actions. He has confided in me that he is terrified for his children to be without their Dad at such young ages; they need him. More than this, he is scared to be without his children, because he needs them too. We have had many long conversations about his lack of judgment and how his bad decisions in the past are now affecting his family and his ability and responsibility to provide for the future. Anthony is very worried about his Mom and how she will get along without him there to help with his Dad. He is also concerned for his business and his employees.

I ask that you please be lenient in your sentencing of Anthony Scibelli. We implore your compassion for a young man who is so important to the community and his family.

Sincerely,

Rose M. Nardello

# Exhibit W

March 15, 2012


Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


RE: Anthony Scibelli


Dear Judge Irizarry,

Thank you for taking the time to allow me to address you on behalf of Anthony Scibelli.

My name is Shawn Eichorn.  I am 43 years old married with two son's.  I've been a Union Carpenter for over 23 years and have had the chance of serving my union as a Delegate to the New York District Council of Carpenters as well as Executive board member for Local Union 45 Queens.

I have known Anthony since 1984 when we were both in high school trying to figure out which way our lives were going and how we would get there to make it better for ourselves and our future.  Some of the decisions we make at that age, when we are young and without the guidance we needed  from our father's or other family members because for what ever reason they are not around could make or brake a person and some of the influences that might show up could take us into a direction we never realized could impact us the rest of our lives.

Whatever might have taken place in his life then as well as to this day Anthony would accept full responsibility for his actions and the reason's behind it.

Knowing Anthony then as a young boy, as my friend, I knew he would always be there for me if I needed him.  He was genuine, had integrity and principles that he lived by gathered by his life experiences.  He took the responsibility of caring for his mother and 2 sister's at a very young age after his father could or wouldn't do it himself.  Anthony put aside his dreams of a future to give his family what ever it took to keep them in there home, in school and give them everything they needed.  Sometimes people can come into your life and play on that type of personality when they see it especially when you are young.

Responsibility like that at such a young age can cause a person to make wrong decisions and be influenced in what appears to be opportunity's only to find out you're a scapegoat and it becomes to late to do anything about it.  Your Honor I'm sure you see this all the time and the impact it has on families.

My relationship with Anthony in those years was one of just seeing each other here or there. Our lives took us in different directions but we were always friends. It wasn't until I meet his cousin and we got married that the friendship we had, now became family. Anthony also became the godfather of my 2nd son. I got to know Anthony as the man we once talked about when we were young. He still takes care of his mom, 2 sister's and father who is now sick. A selfless son to his mother, helping to take the burden off her with his father's illness keeping him in a care center. He makes sure his wife and 3 young children have the opportunity he didn't. His little girl Valentina who is extremely close to him "Daddy's Little Girl" has a phone to call him when ever she wants to talk to him throughout the day knowing he is never to busy with his business not to listen to her and his boy's Emilio and Anthony Jr. although very young are being taught the importance of respect and family values and they all know he will always be there. The sense of security that I see when I see them with there father and the love that he show's all three of them, even when he has to be a little stern makes me proud of him because I remember and visualize the young boy he was.

For this family to be separated for a long period of time would only cause these children confusion and insecurity. Anthony's wife Charise is a strong woman and a great mother. It will be hard for her as well. Anthony is a business man and has many employees in which they depend on him to feed there families as well as his family depends on him for there family living. Our families will be there for them as much as we could help out , but you can't replace that father figure Anthony has for them. This family needs to be together. I hope you will consider this in your decision. Knowing Anthony as I do , I know this is the hardest thing he ever had to face knowing the effect it will have on his family especially his kids.

Thank You,

Shawn Eichorn
212 Westwood Dr.
Brentwood, Ny 11717

# Exhibit X

To Who It may Concern.

My Name is Alonzo Ocasio Campbell
I am a disabled Viet Nam Veteran
with A Honorable Discharge with
A Bronze Star Medal + Good Conduct
+ Various Medals I am taking time
to Write this Letter on Behalf of my
Son - In Law Anthony Scibelli As
husband + Father of My 3 beautiful
grandchildren h p provides them take
them to school helps My Daughter
In their House. He has even taken me
to the V.A Hospital Because I suffer
P.T SD, High Blood pressure, I have coma
Bad Liver, He I spend 2 Wks + out
of the In there House. Because My
Daughter Worries about Me not taking
My Medicine, + I am on a fix Income
I will not be fixically able to help
My Daughter + Grandchildren. I appreciate
you for taking time to read this Letter
please give him a chance to be with his
family. he Is the Son I never had +
hope you Will find It In your heart

to give him chance. I sacarfice
My Life for this Country and
all I am asking to Give My
Son-Law Anthony Scribelli a
Chance to redeen himself.
he is a good person but made a
Mistake. I give you My Word
as soldier + father that he will
be good person in Life.

Sincerly Your

Mr Alongo Ocasio Campbell

P.S. I am sending you a Copy of My
Discharge + My Medals.

# Exhibit Y

Charise Scibelli
17 Wexford Court
St. James, New York 11780

Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

March 15, 2012

Dear Judge Irizarry,

My name is Charise Scibelli, wife of Anthony J. Scibelli, who has and will stand
before you a broken and humbled man. Anthony and I began dating late in 1996
and have been happily together ever since. I'd like to acknowledge that it pains
me to write this letter on my husband's behalf. You see your honor; the last time
I took on this task back in 2008 I was very confidant I would never again have to
write such a letter. Apparently God had another plan for my family and me.

Anthony and I met when we were in our early twenties. At the time I was working
for a foreign bank in Manhattan and he had just sold his pizzeria business and
was in the process of purchasing another store. Anthony has always been a
hard working person. He is a very self-motivated individual and likes to meet the
goals he sets for himself. I have always admired him for this.

Though Anthony has a strong personality when it comes to business he always
remains compassionate. Since we first met this has always remained apparent to
me. Anthony worries about his employees and their families. Currently he is
working diligently to keep his small business running efficiently and effectively in
these harsh economic times. Most every day he shares his concern with me for
his employees and feels very sad when he needs to lay men off if there's not
enough work.

Anthony's true friends will tell you that he is a very loyal person. His commitment
to his family is immense. When Anthony was younger his father was hurt at work
and became permanently disabled. So from a young age he needed to go to
work to help support his family. This was very hard for him because he missed
out on just being a "kid". There was always the fear of his family not being able to

make the bills and that can be very stressful for a young person.  That stress could certainly lead to feelings of resentment towards your parents, but that was never the case with Anthony. Currently Anthony's father resides in a nursing home. Though only in his early 60's he is handicapped and suffers from dementia, liver disease, hepatitis c, has had four knee replacement surgeries. This is in addition to his other health ailments and disabilities. I can honestly say that he has not always been the most supportive or caring parent, but my husband does not let that affect his relationship with him as his father and my children's grandfather. He makes it a point to visit him with the kids, cook meals for him, take him on outings and makes it a point to spend quality time with him.

Over the past 16 years Anthony and I have attended college, purchased a home, gotten married and started a family. As of today we have three beautiful children, Valentina 7 years old, Anthony 3 years old, and Emilio who is 1.  Anthony is a caring father who enjoys spending time with his children.  Whether it be sharing his passion for sports or teaching our daughter how to ride a bicycle without training wheels, he's always pushing them to try new things and to be the best they can be.

Anthony's relationship with his kids is important to him. He is a hands-on father who takes a lot of pride in his children. He is usually the first one up in the morning and loves making the kids breakfast.  Anthony is an excellent cook so he gets very creative at times. It's become so that the kids actually prefer for his breakfast over what I might make. I know he feels good about this. It's a great feeling when your kids recognize and appreciate what you do for them even if it's just for making breakfast. There is not a day that goes by he doesn't tell the kids "I love you".  As I mentioned, before he truly enjoys and adores his children.

Since his arrest in 2008 Anthony has made incredible efforts to put the situation behind him and move forward in a positive, productive manner.  I believe the probation report you will/have received can attest to this.  His mistakes are his to own and he is incredibly remorseful.  I can only pray that you take this into consideration when determining Anthony's punishment.  I am fully aware the charges brought against him are very serious and I will not argue this fact. Nevertheless, please realize during the past four years Anthony has taken numerous steps to make amends for his behavior. He seeks counseling on a regular basis for his bi-polar disorder; he spends more time with his family, and now exercises on a regular basis to help offset his anxiety disorder.  He also has taken a big step by consistently taking the medication prescribed by his physicians to assist him with managing his disorders.  This was a major dilemma for Anthony. Mainly because of seeing his father ingest prescription drugs for so many years and witnessing the negative effects of addiction that came along with it.

Your honor, I understand you know Anthony only in relation to this case. However, please have faith in me when I say he has made every effort to move forward as a positive and law abiding citizen and wishes for nothing more than to continue this way.  I pray that you can give him the chance Judge Weinstein gave him in 2008. At that time he was sentenced to five years' Probation. After completing eighteen months on probation, Anthony respectively earned the privilege of being reduced to "Phase 2 Red" monitoring, which he is still presently on and not far from completing without a single violation or infraction.

In the end Your Honor, I thank you for giving me the opportunity to express my concerns in regards to my husband, who I truly love, and provide you with some insight on how he continues to work on changing his life around for the better. Please feel free to contact me with any questions, comments, or concerns you have regarding Anthony.

Sincerely,

Charise Scibelli
631-686-5608
516-658-2659

# Exhibit Z

April 25, 2012
Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your Honor,

This letter is being written to you in reference to my cousin Anthony Scibelli. I want to thank you in advance for taking the time to read what I have to say about my cousin, who means more to me than I would ever be able to put on paper. Writing about my relationship with Anthony is hard to condense into a few pages, and it would take far too much time to recount for the almost twenty-four years he has shared with me. I don't want this letter to try and mold your opinion about a man you do not know, instead, I want it to give you an idea of the way Anthony is, through my eyes.

As far back as I can remember Anthony has always made an effort to keep my family tied together. When my mother, father and I lived away from the rest of our family in Florida, Anthony made it seem like we were just around the corner. No matter how far away I may have been, just speaking to Anthony made me feel as if I were home. Despite our significant age difference, my earliest memories all have Anthony in them. Although for a part of my life we were thousands of miles apart; from pillow fights, drawing on his face with permanent marker while he was sleeping, and crashing into his Rent-A-Car with my golf cart to lighting his candle at my Sweet Sixteen, watching me get my high school diploma and being in the front row for every one of my dance recitals and performances for the past two decades. I lost my father to lung cancer at the age of 5 forcing my mother and I to move to New York shortly after to be with family. Knowing my mother's financial situation, being a single mother working two jobs, Anthony did

1

everything in his power to make the burden seem a little lighter beginning with offering us to live in his downstairs apartment. Without having a dominant male figure in my life at this age, Anthony filled the shoes of a father figure. He made sure I always made the right decisions, and pushed me the way a father would do for his daughter. My mother always overcompensated, but with Anthony's help, she also had time to care about herself and not solely me. She was able to be not just my mother, but my best friend as well. Without all of Anthony's help, she never would have been able to have that relationship with me. Ironically enough, Anthony now has a daughter of his own who is very much like me and two sons. I have an extremely close relationship with her, and I think that has a lot to do with having Anthony as such a dominant force in my life. I feel as if we are all linked together by a common force. I think all of the practice he had helping raise me prepared him for the birth of his own children. His children are so lucky to have such an amazing person as a father that is so devoted to them.

It would not have been possible for me to complete my freshman year in college without Anthony. My whole life, I dreamt of attending college in Manhattan, and with Anthony's support, I was able to attend a Community college in a big city I did not call home. Being away and unfamiliar, I was able to feel safe and had somewhere to escape to day after day. Anthony made a spare room in his office for me, set up for a student, so I could come between classes to study and take my education seriously. Without this sanctuary, I would never have been able to stay as focused as I did. With Anthony's help, I was grounded and putting my all into my classes. Anthony was adamant about encouraging me to be the best I could be and pursue my dreams even if I wasn't entirely sure exactly what they were at 18 years old and had Anthony not pushed me, I may not have had the courage to survive in that big city, coming from a quiet, suburban town.

2

Anthony made me believe that I could go anywhere in this world and always feel as if I belong there. Anthony has not only pushed me to further my education, he has also always wanted me to follow my heart and do what I love. After many years of attending my dance recitals, Anthony knew that my true passion in life is dancing. He is the one who forced me to take the leap and go on my first professional audition for the New York Jets dance team. He drilled into my head to believe that I stood a chance, and I would seem like the only one on the dance floor. After my nerves got to me, and I felt that I should give up, it was his final push that inspired me to take a chance. I made that leap, and I made the team. Now, I've gone to and landed several auditions since then and I have to credit Anthony for that bravery, because without his love and support (and constant nagging), I never would have felt that I was good enough to stand out in a crowd.

This letter may seem like I am trying to make Anthony seem like a gift from God, but Your Honor, if you were in my position and shared the relationship I do with him, you would see that to me he is. I only pray that on my wedding day Anthony will be there to take my father's place and walk me down the aisle, like I have planned for so many years. Little girls picture their weddings and dream of the flowers, the gifts and the beautiful white dress, but what matters to me the most is Anthony and my mother, standing on either side of me, giving me away. Please take these feelings that I have sprawled out on this paper into consideration so that on my wedding day, and every other day, I can have Anthony standing beside me.

Sincerely,

*Heaginia Rivera*

3

# Exhibit AA

April 18, 2012

Maryann Rivera
55 A LaBonneVie Drive
East Patchogue NY 11772

Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
222 Cadman Plaza East
Brooklyn, New York 11201

Your Honorable Judge Irizarry,

I am writing on behalf of my nephew and Godson, Anthony Scibelli. I am currently employed at Wild by
Nature for the last six years as a full time meat wrapper.  I also work part time at Pathmark for the last
ten years.  I have been close to Anthony his entire life. He has a heart of gold, and would give the clothes
off of his back to any person in need. He has done so much for my daughter and I. Without ever having
to ask for help, Anthony would offer it. Anthony is a genuinely kind and loving person, who is also very
compassionate.

All of his life, Anthony has had very strong family values. He had an exceptionally close relationship
with his Grandfather. He cherished the time spent with him. When Anthony would come to Florida
to visit his Grandfather, he would always make it a point to come see my husband, my daughter, and
myself. Unfortunately, my husband passed away eighteen years ago, in which I was left to raise my
daughter alone. Anthony has been there for my daughter and I every step of the way. He was present
at her baptism and attended her dance recitals. He was there with a smile on his face and a warm hug,
for every one of my daughters birthdays.  He would babysit my daughter when I needed an extra pair
of hands.

When I moved back to Long Island from Florida, Anthony offered my daughter and I a roof over our
heads. He welcomed us into his home, and made sure my daughter and I were very comfortable and
content.  He treated me as he treated his own mother, and for that I am forever grateful. This was a
period in my life in which I was overcome with great loss and heart break. Anthony's love and support
filled me with a sense of comfort and security. He acted as a father figure to my daughter while I was
grieving. Anthony was never asked to do any of these things. But being the kind, caring, and
compassionate person he is, he did all these things without thinking twice. With Anthony's help and
time, our hearts were able to heal and feel whole again. I was able to get back up on feet again.

I have watched Anthony grow from a small humble child, to a mature adult and wonderful father. He
is a truly selfless man who has done everything in his power to better the lives of his family members.
I am so very grateful that he has opened his heart to me and my daughter. I feel that I am a better
person knowing Anthony. He is truly a blessing to my daughter and I. I feel my daughter has a stable
male figure in her life because of Anthony. His presence has helped her grow and mature into the
responsible woman she is today. She has learned a great deal from her cousin, as I have.

Your Honor, I hope you can see through the writing in this letter, to have mercy on Anthony, and
provide him with leniency, so he can move forward with his future. He has three children that

adore him, and is such a wonderful father.  I hope that the precious moments that a father and his children experience will not be taken away. This is a period of their life that they will always cherish, as my daughter and I do.


Sincerely,

Maryann Rivera

# Exhibit BB

Honorable  Dora L. Irizarry United States
District judge Eastern  District Of New York
225 Cadman Plaza East
Brooklyn, NY 11201

May 16, 2012

Dear judge Irizarry,

My name is joseph Scibelli and I am 85 years old and Anthony's Scibelli's Grandfather. He calls me PopPop and calls Eleanor, my wife who is 81, Nanny. I live in Brooksville, Florida, where Anthony visits me and my wife, of 61 years.

When Anthony visits us, it seems that he can never do enough to help us. Between shopping for food, cooking and taking us out for a nice dinner, he certainly spoils us. We always look forward to spending quality time with Anthony and his wife Charise and their beautiful children. We are so blessed to have his children Valentina, Anthony and Emilio in our lives. Anthony is just a wonderful father. Their visit to Florida in the past always includes a trip to Disney World, which they all enjoy very much. You can see how much those kids love their father.

Anthony calls my wife and I every week. He and I talk about sports, we both love baseball, even though he likes the Yankees and I root for the Mets. Last summer my family and I had to go up to New York suddenly when my son, Anthony's father, got sick. Once he was doing better, Anthony thought it would be great for him and I to catch a Met game. I had a great time and it was just what I needed. Anthony and his father have a very good relationship too. In 2008, when my son was in better heath but handicapped, he and Anthony went to Arizona for the Super bowl. They are both big Giant Fans and they spent the week together attending all Super Bowl Festivities, and had a wonderful time. My son talks about that trip as his best vacation ever. Unfortunately, for the past few years, my son resides in a nursing home. He will never walk again, and he is not healthy enough to sustain any operations or procedures. After numerous health care facilities, Anthony was finally able to have his father close to his home in Saint james, NY. It is less than five minutes away from his house. I can't tell you how helpful he is with his father, despite his busy work schedule. Anthony visits his father regularly, sits with him to keep him company, brings him home cooked meals at night, and brings the kids for bingo game night. My daughter in-law just recently went back to work, and Anthony has stepped up to cover her time spent with my son, due her employment.

Anthony is very generous to our family. If someone needs help, he is the first one to lend a hand. When my wife and I flew to New York last August, he took care of our expenses and helped my wife with all of her travel needs. She has an oxygen machine and it can make traveling difficult, and because of Anthony's help, our trip went smoothly. We are on fixed income and we never would be able to afford the trip without Anthony's help. I remember Anthony being a fun loving kid. When he was growing up, he was always happy and used to dress up in funny outfits to make everyone laugh. I can still see him dressed in big dark sunglasses, oversized red shirt and a cane. He is our first grandchild, and what a joy he was and still is to us.

He is a very affectionate young man and he knows the value of family. He has always been a hard working person and I know he can do anything he puts his mind to. I know my grandson is a good person with a good heart. He has worked very hard to turn his life around, and has said to me how sorry he is for the bad decisions he has made. He knows that his actions speak louder than words. Because Anthony cannot travel at this time, it has been a while since he has been able to visit us. We are both very sad about that and miss him very much. My wife and I love him very much and we always look forward to spending time with him. We hope his next visit will be soon.

I recently had a heart attach on May 05, 2012. I was in critical condition and coded twice on the table. They rushed me in and did an angioplasty. They told my family that it was touch and go with me. I am now home recovering, but I am very weak. I was told to avoid as much stress as possible. I will not be able to visit Anthony in NY for a very long time due to my condition. I am very upset about that, as I was going to New York in June to visit him. Anthony was extremly upset because he was not able to see me. I pray that he will be able to visit me in the near future.


Your Honor, thank you for allowing me the opportunity to express my feelings regarding my grandson. I'd like to ask for clemency when sentencing Anthony. He has learned his lesson from his previous poor decisions, and proved in the past four years he can change and be a productive, honest and law abiding citizen.

Thank you,


Joseph Scibelli and Eleanor Scibelli.

# Exhibit CC

July 30, 2012

Jessica N. Pelletier
97 Fox Hill Drive
Rocky Hill, CT
06067

Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
222 Cadman Plaza East
Brooklyn, New York 11201

Most Honorable Judge Dora Irizarry,

      I am writing to you on behalf of my first cousin, Anthony John Scibelli, who as you are aware, may be facing a considerable amount of time in federal prison.. My name is Jessica Pelletier, I was born in Hartford, Connecticut, and I am currently a senior at the University of Hartford, graduating in 2013 with a double major in Politics & Government, and International Economics. I wanted to first start off with a quote that the Mayor of Hartford, Pedro Segarra said during a lecture at my school concerning law, politics, and business; "Who we are is a collection of many different experiences and circumstances, and how we chose to navigate these circumstances is definitive of who we become."

I come from a large, Italian family who immigrated to Brooklyn, New York in the early 1900's.  My grandfather, John Carl Varricchio worked, and struggled hard from an early age to open his own Butcher Shop in Queens, New York to support our entire family. My grandfather became the root of my family, and to my cousin Anthony and I, he was our role model—he accomplished the American dream and consistently emulated the values of family, civil service, and working hard to support those around him.  My grandfather died in 2001, a tragedy for my close-knit family, yet around this time it was Anthony who stepped up to the plate and kept us all together. I bring up my grandfather's name, only for the reason that Anthony had become what my family had lost when my grandfather died.  Anthony became our rock while binding together our family that had experienced great loss emotionally, physically and financially.

Unfortunately, I've seen far too many times in both my professional, and personal life, the disaster and loss that the struggle for a better, healthier, and provisional life creates.  As Anthony had his own struggles in New York, my immediate family and I also encountered our own, as I struggled with numerous life-threatening injuries, which required extensive, prolonged, surgery and recovery.  At this time in my life, there were many times that I felt as if things wouldn't look up, yet Anthony was always there for me, either on the phone, or in person—regardless of how busy he was, reminding me of what I was struggling for—a better, independent life. Even

after a particularly rough week in my academic studies, or medical issues, I often found myself at my cousin's house seeking guidance on anything from boyfriend issues, to problems with my friends, or teachers. Anthony is like a big brother to me, he has always been there as my cheerleader, steering me in the right direction, and guiding me to make the right decisions in both my academic and professional life.

Every time I meet one of his friends or clients, he always introduces me as his "little cousin going to University," going on the brag about my wish to pursue law school and my excellent grades in my Economics and Law classes. Although embarrassing, because he always lovingly added that I was a "nerd." Every friend, business associate, or family friend knew of all my successes in both the educational and professional world, and this alone drove me to excel in a time when I needed motivation the most. My cousin has always been there for guidance, protection, and support to both my entire family, and myself, consistently giving all of us everything he could. Anthony operates many tax-paying businesses that gainfully employ many of my family members, at one point myself, and many others that Anthony has taken under his wing. Anthony not only is one of the sole reasons I am where I am today in the educational word, but also has given me a considerable amount of guidance in numerous personal situations, always reminding me not to make the same mistakes as he has, and offering a different opinion on any situation.

In my family, Anthony wears many hats: father, brother, son, cousin, Boss, mentor, chef; but to me, he is my mentor, and the reason I have gotten where I am today. Currently, I hold an internship at the Law Offices of Derron and Donald Freeman, and work side-by-side with prosecutors and district attorneys on a daily basis at the Hartford Federal and Superior Courts. In the fall, I'm taking the LSAT to begin my process to enter Law School.  I am also beginning an internship with J.P Morgan Financial Advisors, and have an expected induction into Phi Sigma Alpha, the National Honors Society of Political Science. I mention all of this because it is Anthony that I owe most of these achievements to—he has always pointed me in the right direction, helping me make the right decisions, despite his own busy schedule, and personal issues.

Judge Iriziarry, I know my cousin may have not made the best decisions in his previous businesses choices, and the people he chose to surround himself with, but if he is in fact taken away, I don't know what I will do. Aside from his children, and my other family members that rely on him for financial, physical and emotional support, Anthony has been *my* motivation to excel and continue on my educational path. In May of 2013, I will be the third woman in my family to graduate college, (Anthony's Aunt, Lucille Pelletier being the first, and his sister, Gina Scibelli being the second.) I am 100% certain that I wouldn't be where I am today without my cousin's consistent guidance and encouragement, especially during the times where I just felt as if it wasn't worth it, or I couldn't do it anymore.  To not have him here, and potentially not have him around to watch me walk across that stage and receive my diploma, hurts me in a way that many can't understand—he is the reason I made it, and the reason that I will continue to work hard and excel in my studies. I hope

that this letter sheds a different light on Anthony than of those made out in the press--Anthony is a family man, and when I graduate next year I would like nothing more than to see him in the crowd, cheering me on as always. Thank you for your time.

Sincerely.

Jessica N. Pelletier

# Exhibit DD

*Ms. Dana Varricchio*
*11 Arch Lane, 2A*
*Islip, NY 11751*

July 23, 2012

Honorable Dora L. Irizarry
United States District Judge
225 Cadman Plaza East
Brooklyn, NY 11201

                    RE:   <u>Anthony Scibelli</u>

Your Honor:

      Thank you in advance for the opportunity to provide additional insight about Anthony Scibelli. My name is Dana Varricchio and Anthony is my cousin. I am currently employed for a corporate law firm in NYC for the past 19 years and I am also a Licensed Realtor in Long Island. I received my Bachelors in Business Management in 2004 from Dowling College. Anthony is not just a cousin, but a friend who is always there when I need him.

      After speaking to Anthony, I felt the need to write you and express the remorse he is feeling regarding his present situation. He deeply regrets his poor decisions and actions in the past. This is a very difficult and stressful time for him because he realizes that a lot of people depend on him; especially his wife Charise, his three young, beautiful kids who he absolutely adores, his family and employees of his business. Anthony was always a very family-oriented person and has a huge heart! He is always the one to make sure the family gets together for some family fun time.

      At a young age, when Anthony was in high school, his father became disabled. Anthony took on the roll of helping his mother and two sisters financially. I remember him working after school, as well as long h ours on the weekend in a pizzeria. Eventually he would go on to open his own pizzeria. After some time, he interned with a construction firm for a few years and then opened his first construction company. This was all accomplished while owning/managing his first love; the pizzeria. Anthony was and still is a very motivated and driven man.

      Anthony has been on probation now for over four years and I am so proud at how well he has done. He has proven that when given the opportunity to change, that it can be accomplished with making the right decisions. This does not excuse him of his past, but does give some credibility to the changes he has made in his life since.

Honorable Dora L. Irizarry
July 23, 2012
Page 2

    Thank you, Judge Irizarry, for your time and I pray that you will take this letter
into consideration to grant Anthony leniency when making your decision.  He has so much to
offer society in a positive way and so many people depend on him.

        Best regards,

        Dana Varricchio

# Exhibit EE

*Ms. Johanna Varricchio*
*160 Wurz Street*
*Brentwood NY 11717*

August 10, 2012

Honorable Dora L. Irizarry
United States District Judge
225 Cadman Plaza East
Brooklyn, NY 11201

                    RE:    Anthony Scibelli

Your Honor:

      This is not a formal letter, this is to tell you who Anthony Scibelli is.  I am a
professional hairdresser, mother, wife, grandmother and Anthony's cousin.  I am speaking to you
person to person.  Anthony has admitted to making some foolish decisions but that isn't who he
is and I am grateful for the opportunity to let you know what a great man that Anthony is.

      Anthony Scibelli; who is he?  Anthony is the "son " every mother would love to
have (I know I would).  He is responsible, fun loving and family orientated.  When his dad
became ill, Anthony was in high school and he took over his Dad's roll around the house and
took care of his Mother and his two sisters; he became the "man" of the house.  He has always
been a very hard-working, determined young man.  Currently he is married to Charise and they
have three young children who greatly depend on him.  I can attest, first-hand that Anthony is a
wonderful Dad!  He is interested in their education, well being, social skills, prayers, to mind
their manners; to respect older people and the importance of being a family.  So many are very
dependent on Anthony at this time.  He even helps in the kitchen and cooks for his family.  We
love to go to Anthony's when we know he is cooking!

      Your Honor, Anthony made some mistakes which he deeply regrets.  It would be
a tremendous void if he weren't in his family's life.  I hope you take this into consideration..
Unfortunately, I know too well, the impact of the family dynamic when a family member is

Honorable Dora L. Irizarry
August 10, 2012
Page 2

incarcerated.  Many years ago, my son was incarcerated for 3.5 years.  It takes a tremendous toll on the family, emotionally, mentally, monetarily and physically.

       I thank you for allowing me to express what a wonderful man that Anthony is. Although he admittedly made some bad decisions, his time on probation I'm sure has proved that he is embracing change and moving forward in a positive direction.

Sincerely yours,

*Johanna Varricchio*

Johanna Varricchio

# Exhibit FF

April 29, 2012

Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
222 Cadman Plaza East
Brooklyn, New York 11201

Your Honorable Judge Irizarry,

I am writing on behalf of my nephew, Anthony Scibelli. I would like to first quickly establish myself as an upstanding member of society through the attached list of my civic involvement. Secondly, I wish to establish myself as a credible advocate for my nephew Anthony.

From the time that Anthony began working, his strong work ethic was commended by those for whom he worked. Not only did he do right by his employers, he always gave back to his family. Even when he made very little money, he showed his commitment to his family by contributing both financially as well as to the demands of the upkeep of the household. The demands on Anthony extend to his mother, father and sisters. His father, is now permanently in a wheelchair and resides in a nursing home and a mom that has heart disease. He helps them both by caring for them and by providing for them financially. He also spends several nights a week with his father at the nursing home to ease the burden on his mother. Anthony is the most giving, hardworking and compassionate individual. His family values, his hard work and determination have provided lifestyles for not only his family, but for those of his employees.

As we all reflect on our past, there are times and situations that fill our hearts with regrets... this is one of those poignant times in Anthony's life. Incarceration for Anthony, would sadly impact his precious daughter, Valentina-age 7, Anthony Jr.-age 3, and Emilio-age 1. Anthony wakes up with them every morning and makes his children a homemade breakfast and then drives his daughter to the school bus. After school he takes them to catechism, karate and gymnastics. His family is everything to him and the thought of his children not having him to share in their daily routines is heartbreaking.

As a loving aunt and a mother of two impressionable young adults, I implore you to be lenient on Anthony. Aside from his poor judgments in the past, he has otherwise shown strong leadership and character in the way he has lead his life. I have guided him over the past 4 years and watched him make very positive changes in his life. I am proud to see the path he is on as an amazing father to his three children, a great brother to his sisters, a wonderful cousin, nephew and an adoring son. He has surrounded the children and wife with only good, strong family values. His employees also depend on him tremendously. So many people would sadly be impacted if Anthony should spend time away.

Judge Irizarry, please take into consideration the clean path that Anthony has led since 2008 while making your decision. I implore you to find it in your heart to consider Anthony for some type of location monitoring instead of taking him away from everyone that needs him. Anthony's children adore him and sadly will be the ones that will be most negatively impacted if Anthony is sent away. Judge Irizarry, thank you for your time and allowing me to give you insight on the Anthony Scibelli I know.

Sincerely,

*Lucille J. Pelletier*

Lucille J. Pelletier

# Exhibit GG



# NU-COMMUNICATIONS
## A DIVISION OF ISLAND ENTERPRISES INC.

1111 Cromwell Ave. (Route 3) Suite 302
Rocky Hill, Connecticut
Tel. 860.721.1294 / fax. 860.721.1918 /www.nu-communications.com

June 12, 2012

**Honorable Dora L. Irizarry**
United States District Court
Eastern District of New York
222 Cadman Plaza East
Brooklyn, New York 11201

To the Honorable Judge Irizary,

Please accept this memo on behalf of my nephew, Anthony Scibelli.  I am related to Anthony by marriage.  I have lived in Hartford, Connecticut most of my life and have developed and operated two companies that are multimillion dollar business entities. I own a development company that does commercial and medical office development, Compass Property Management LLC. (www.cpmct.com) and the other company is Nu-Communications Inc. (www.nu-communications.com), which develops and builds high security Data Center facilities and office communication infrastructure for accounting firms such as Price Waterhouse Coopers & KPMG and for the banking industry such as RBS/ Citizens Bank.

My expertise and experience has brought me all over North America including Canada, Mexico and Europe.

I have mentored Anthony since his troubles with the law concerning the perception of his associates and business practices in 2008.  I lectured him, as I think he respects me both as a role model and as a successful businessman as I am proof that hard work and credibility is the recipe for success including the honorable reward from your efforts after taxes.

I feel for Anthony in his situation due to the fact that he is working in a division of construction that are rough and tumble opposed to highly technical trained IT engineers or electrical and mechanical contractors. These trades are in the upper construction divisions and somewhat less ambiguous in the method and approach consistent with let's say professional services.

Anthony has done an incredible job learning the trade and has done a good job developing his business and a positive revenue stream. I was impressed by his eagerness to make every trade show and provide cutting edge methodology. His growth was impressive and showed promising results. I think he lacked guidance that one would get from a partnership or parent in the business or perhaps the cover of a union. This is a

luxury we all don't have. I relate to him as being alone in business can sometimes be **lonely** when evaluating business terms and deals.

I truly believe Anthony was caught up in some business dealings that he ended up paying for in several ways. The embarrassment to tell me, his uncle was tough on him let alone all the publicity on the internet, papers etc... I spoke with him and lectured him on several fronts and encouraged him to make better character decisions and restitution to anyone that truly was wronged.  From what I recollect, a lot of this was done by the courts regardless.

I have tracked Anthony's behavior and remorse independently of my wife's family and know firsthand that he made the right choice the first time some years ago when he came to me. I have witnessed him walking a straight line ever since while all of the events weighing heavily on his mind and the consequences of not being straight up in all matters. Anthony has not let me down and has demonstrated, in his conduct the most respect for transparency and honesty in his personal and professional life.  He has made very positive changes with his business by moving it out of the city and cutting off any professional business ties with the wrong people.

Anthony is a good man, a great father, son and brother.  He is generous with his success within his family and has little to no vices.   I personally will vouch for Anthony and if allowed by you or the court will bond any concerns the Government would have including changing Anthony's environment if allowed.  I plan to stand by Anthony and be at any hearing that Anthony is summoned to in support of a man that I believe truly has made very positive changes in his life.  If it would please the court I would volunteer to relocate Anthony and his family for a complete change of life.


Respectfully ,

Gary J. Pelletier
President, Nu-communications a div of IEI

# Exhibit HH



# Suffolk County Conference

**CHAIRMAN**

Martin Ryan, Jr., PGK, FDD
74 Stuyvesant Avenue
Mastic, NY 11950
(631) 807-4568

| VICE CHAIRMAN | SECRETARY | TREASURER | WARDEN |
|---|---|---|---|
| Vincenzo Lettieri, PGK, FDD, FN | Nicholas Marchesi, PGK, FDD, | William Larke, PGK, FDD | Norman Wagner, PGK, FDD |
| 7 Celia Street | 11 Hurfin Boulevard | 130 Pineview Lane | 490 Irving Street |
| Patchogue, NY 11772 | Smithtown, NY 11787 | Coram, NY 11727 | Central Islip, NY 11722 |
| (631) 758-7960 | (631) 382-7481 | (631) 736-6210 | (631) 234-1922 |

**Date: March 09, 2012**

**Honorable Dora L. Irizzarry**
**United States Districts Judge**
**Eastern District Of New York**
**225 Cadman Plaza East**
**Brooklyn, New York 11201**

Your Honor,

My Name is Nicholas Marchesi, I am a past Grand Knight and former district deputy of Holy Mother Mary Knights Of Columbus. I am now serving as Suffolk County Conference Secretary. Anthony Scibelli has been a member of Holy Mother Mary council for 10 years. During this time he has done anything that was asked of him for different charities, whether it was for donating money and or food when he had his restaurant.

I met Anthony twelve years ago when he had his restaurant in Commack. Since then, we have become very close friends, and he actually calls me Uncle Nick. I remember when he first met his wife and how happy he was, and how important the meaning of family was to him. I attended his wedding, and was asked to give a spiritual reading during the service on behalf of Anthony and his new bride. This change in his life suited Anthony to the extent that he further developed the attributes and qualities within his character to start a family. At the birth of his daughter Valentina, it was apparent that he will always be devoted to the wellbeing of his wife and family. Anthony went on to have two more children, Anthony three years old, and Emilio one year old. Having children and family suits him well. He is a very devoted husband and loving father. I know this by spending time with him and his family at many Sunday dinners, which Anthony cooks for his family. I believe it would impact his family greatly if Anthony wasn't there for them. Anthony has always been a dependable friend and has consistently given more of himself than asked of him.

From numerous conversations with Anthony since his arrest on 2008, he has expressed to me that he is very sorry for his actions. In my opinion he has made a complete turnaround in his life.   Anthony is a responsible member of his community and I value his friendship dearly.

In spite of the poor decisions he has made in the past, I deeply believe that he has changed his life for the better. I can only hope that with your experience and wisdom, that you will find it in your heart to be lenient.

Sincerely,

*Nicholas Marchesi*

Nicholas Marchesi
**Suffolk County Conference Secretary.**

# Exhibit II

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Irizarry,

Thank you for giving me the opportunity to write a character letter on behalf of Anthony Scibelli. First a little bit about myself, my name is Anthony Trinca, I'm 32 years old, married and have one child. I currently work at NYU Medical Center where I practice as a Respiratory Therapist. I have known Anthony Scibelli for about 17 years. Growing up, I was always very close with his sister Gina. Our relationship grew from that over the years of me always being around his family. Not only was I close with his immediate family, I got to know his extended family over the years as well. I was at several family occasions including his wedding.

Throughout the years that I have known Anthony, he was always someone I looked up to, someone I would call for advice. He was a big influence on me for going to college. Anthony was always a successful businessman, starting out in the restaurant business. Then he proceeded to go to school for real estate. Anthony was successful at everything and anything he got into. I have always known him to be such a dedicated and hard worker no matter what he did. Following real estate he decided to get back into the food business, this is when he opened up a pizzeria. During this time Anthony started working in the construction business while going to school to learn about heavy construction. He then decided to open a construction company, which was also a success. He is a very active owner, likes to be hands on knowing his business is operating correctly. So you can see Anthony is not the type of guy to sit around, he is very motivated. Unfortunately everyone has ups and downs in their lives, people make good choices and some make poor choices, and just like Anthony, this is someone that has made a poor choice. He accepts full responsibility for what has happened. He is very remorseful and regretful for his actions. I was always able to know when something was bothering Anthony, and this is eating him up knowing that there is a chance for him to leave his wife and three children behind for some time. Over the last few years Anthony has grown up to be true family man, even though he works many hours he always finds quality time to spend with his wife, Charise and three children.

Anthony has been a part of my life for many years now and will continue to be for years to come. I remember when my mom was preparing to have a graduation party for me. Anthony had to be involved somehow. He got together with my mom and told her not to worry about the food. He provided all the food for the entire party of about one hundred people. This is the type of guy he is, good hearted. He recently helped out my brother, Jason. His family was involved in a severe car accident resulting in his wife and seven year old son being killed and leaving his other two children critically injured. Anthony was there every step of the way to help my family out. This accident has kept my brother out of work, so Anthony being the great guy he is decided to help my brother out by giving a generous donation. Again, this is to show the type of guy that he truly is. He is hard working, strong minded, generous, trusting, and a loyal friend to me, my family and many others. He is a great husband, friend, father, brother, uncle, and son.

Even though he accepts full responsibility for his actions, he has learned from this. Anthony is sincere in following the right path in life since his 2008 arrest and going forward. He has proved himself in the last few years. He has not been in any trouble since his start of probation. He would do everything and anything to take back what he has done. He will truly avoid putting himself and his entire family in a position like this. Anthony looks forward to raising his children and hoping to watch them grow and mature from his values and upbringing. It has been a pleasure to write on behalf of Anthony Scibelli, I would like to say thank you for your time and consideration.

Sincerely,

Anthony Trinca RRT-NPS

# Exhibit JJ

*VILLAGE TAXI*
*90 Railroad Avenue*
*Ronkonkoma, NY 11779*

April 16th, 2012

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Irizarry,

I have known Anthony Scibelli since the year 2007. I am the owner of Village Taxi located at the Ronkonkoma train station, next to Anthony's former pizzeria that is still family owned, as well as his newest construction company "Degraw Contruction Group Inc.", which is also located next to my business. We both lease from the MTA and have a great relationship with them. Anthony has been leasing with the MTA over the past 12 years. We help each other constantly as friends as well as tenants. The have been numerous times that Anthony has shoveled and cleaned my storefront during snow storms, and supplies me with temporary lights when outages occurred. Together we are trying to make our community a better place and he is striving to make a better life for himself and his family.

Anthony has three young children that I feel depend upon their father. He has a positive bond with them, as well as his wife. Our children often play together and are together for most family gatherings. Without Anthony in their lives I feel they will lose a very important part of their upbringing. I believe Anthony has a very strong support system amongst his family and friends, as well as people within our business community. Therefore, please consider leniency for my friend and fellow business owner, Anthony Scibelli.

Respectfully,

Thomas E. Cordingley IV

# Exhibit KK



July 29, 2012

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Irizarry,

   Thank you for giving me the opportunity to talk to you about Anthony Scibelli. My name is Thomas Alston. I am a certified personal trainer for the past 15 years. For the past 12 years I have been working out of World Gym Fitness Center located in Ronkonkoma, NY. I am directly across from the Ronkonkoma train station in where I first met Anthony. At that time he owned Scibellis Pizza and Pasta in which his sister Gina now owns.

   When I first met Anthony we hit it off right away. He was excited about opening his new establishment and offered me a tasting of some of his specialties. He is some cook. He then sent over pizzas to the gym as a grand opening gesture. To this day he still has generosity. He's made many contributions to charities and fundraisers in the community. With Anthony's construction background he has also helped me with numerous renovation jobs on my home including concrete, pavers, siding, and windows at a reduced price. This has helped me tremendously being a single father where money can get a little tight.

   I trained Anthony off and on over the years, but because of his busy work schedule in the construction business his time was limited. For the past almost 2 years he has trained with me 4 days a week religiously as well as extra cardio sessions. As a result of his hard work Anthony has lost over 15 pounds and reduced his body fat by 7 percent. This has helped Anthony reduce anxiety and stress levels.

   Anthony speaks often of his past mistakes and wrong doings. It is on his mind everyday, how he let people close to him down, including his family, friends, and employees. I don't know to the full extent the present charges he pleaded to, but I do realize they are very serious. I believe that they are from 2007. I ask that you trust me to believe that he has learned from his mistakes and wrong doings.



**WORLD GYM**
FITNESS CENTERS

Anthony is a great husband and father.  He has a beautiful wife Charise , and three young children.  He adores them all.  He spends a lot of time with his children taking them to sporting events, and activities such as gymnastics and karate.

Thank you for taking the time to consider what I have to say about Anthony.  I respect whatever your decision might be.  I would like to ask for leniency on his behalf not only for his family, employees, and friends, but because he is an asset to the community and has so much to offer.

Thank You,

Thomas Alston
516-903-2347

# Exhibit LL

Dear Judge Urizary; Your Honor

I am reaching out to you on behalf of Anthony Scibeli, of VMS Consulting Inc.. I have known Anthony, his children, and his wife for several years. Anthony has always been dependable, warm, and trustworthy. For as long as I have known him, he has always thought of others before himself. In Anthony's eyes friends and family always come first. Anthony has always been there for myself and others when it came to working out problems. In problematic times people tend to shy away from seeking advice, however I believe why Anthony is held in such high regard is because he himself genuinely seeks out advice from friends and family when in a problematic situations. Anthony's friendship is very much a two way existence. Please consider this when rendering any decision as it relates to Anthony Scibelli, friend, confidant, trust worthy individual.

Regards,
Marie T. Salmieri

1

# Exhibit MM

Case 1:11-cr-00003-DLI Document 255 Filed 12/11/12 Page 151 of 181 PageID #: 3045

*Alma L. Arzuaga*
*323 Degraw St.*
*Brooklyn, NY 11231*

November 13, 2012

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

RE: Anthony Scibelli Sentencing

Your Honor,

I have known Anthony Scibelli for about 20 years when my daughter first brought him home for me to meet. My first impression of him was that he was a hard working young man with very strong family values. With time they married, had three wonderful children and built a beautiful home together.

With deep family values he takes pride in his home cooking hosting holiday parties in his home to which he will always invite my family. On a daily basis he is a "hands on" Dad assisting with the children, preparing their meals and seeing them off to school. He spends quality time with his kids, taking them out to parks and recreational activities on the weekends. His absence would be extremely detrimental to them as the kids are very close to him.

When I lost my job in 2009 he helped me financially allowing me to pay some overdue bills. He is always concerned for the well being of others and takes the time to call and reach out to family and friends making sure all is well and offering his help whenever possible.

He is a good son to his ailing father currently in a nursing home. He visits him often bringing home cooked meals which he also shares with the staff.

I know he is extremely regretful for the actions which bring him to this point and know that he had no malicious intent in his heart.

I pray that you find it in your heart to be lenient and merciful in your final decision.

Sincerely,

Alma L. Arzuaga

# Exhibit NN

March 20, 2012

Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Your Honor,

My name is Edward J. Jarvis from Re/Max Realty. Anthony Scibelli is my neighbor at
Wexford Ct. St. James, NY 11780. I've been in Real Estate for the last 17 years (16 for
Re/Max as a licensed sales agent). I have many clients across Long Island from Montauk
to Manhattan.

I have known Anthony since the late 1980's, when we met at a pizzeria through a mutual
friend. Years later he moved next door to me. I hadn't seen him in years. At first, I did
not recognize him, but after talking with him we discovered we had all the same old
school friends. My family and I have been living next to Anthony for the last four years.
It was great to reconnect with an old friend once again after so many years.

Anthony and I began sharing everyday experiences. Anthony has taken my kids to Knick
and Yankee games numerous times. He has also welcomed me and my family to many of
his kid's birthday parties and family functions. He also has taken my kids off the school
bus when I was tied up at work. Anthony is a very devoted father and husband, and
would do anything for his friends and neighbors.

When Anthony first moved into his new home next door, he loved my Koi pond. He said
it made him feel relaxed, and his kids loved the fish like pets. I told him I would help him
find fish for his pond after they built it, and when completed, it was beautiful. Anthony
had purchased some Koi, but there were many problems shortly after. It was a new pond,
for some reason the fish got sick. He was incredibly distraught and tried to help save
every fish. Anthony tried medication, water changes, and literally anything else he
thought might work. He spent days trying to save the fish because he did not want to
disappoint his kids. It was difficult to console him, but I told him sometimes things
happen and that I would help him find new healthy Koi for his pond. I even gave him
some Koi from my pond to help. He is the kind of guy that makes you want to help him
out because he is always willing to help you.

Anthony works hard. He goes back and forth on the train into the city everyday. He
works hard to make a living so that he can give his family a better life. Anthony lives a
very private personal life. He spends lots of times with his family and close friends.
Anthony and I have had many conversations about his poor judgments and bad decisions
from his past. He feels he has let everyone down from his family and friends, and to his
colleagues. He also understands that what he did was wrong. In the past four years since

his previous conviction, Anthony has made many changes in his life for the better. He has separated himself from all negative situations, and or persons.

I hope the court will be lenient when considering Anthony's sentencing so he can get back to the most important thing in his life, and that is his family, and being a productive community citizen. I know that without him, his wife and three children will be devastated, and I am asking the court to also consider them when sentencing. Your Honor, please give Anthony a chance to redeem himself. His poor decisions are something that haunts him daily and he has made a point to make the necessary changes and be productive.

Thank you for the opportunity to speak on behalf of my friend, as well as my neighbor.

Sincerely,

Edward J. Jarvis

# Exhibit OO

TM:WK
F.#2009R00195

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

ANTHONY SCIBELLI,

          Defendant.

- - - - - - - - - - - - - - -X

<u>PLEA AGREEMENT</u>

11 CR 3 (DLI)

       Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States Attorney's Office for the Eastern District of New York (the "Office") and ANTHONY SCIBELLI (the "defendant") agree to the following:

       1.   The defendant will plead guilty to Count One of the above-captioned indictment, charging a violation of 18 U.S.C. § 1962(d) (including Racketeering Acts 5B and 6B).  The count carries the following statutory penalties:

              a.   Maximum term of imprisonment: 20 years (18 U.S.C. § 1963(a)).

              b.   Minimum term of imprisonment: 0 years (18 U.S.C. § 1963(a)).

              c.   Maximum supervised release term: 3 years, to follow any term of imprisonment; if a condition of release is violated, the defendant may be sentenced to up to 2 years imprisonment without credit for pre-release

2

imprisonment or time previously served on
post-release supervision.
(18 U.S.C. § 3583(b) & (e)).

d.   Maximum fine: the greater of $250,000 or
     twice the gross profits or other proceeds of
     the enterprise
     (18 U.S.C. §§ 3571 & 1963(a)).

e.   Restitution: $55,000
     (18 U.S.C. § 3663 & 3663A).

f.   $100 special assessment
     (18 U.S.C. § 3013).

g.   Other penalties: criminal forfeiture in the
     amount of $30,000
     (18 U.S.C. § 1963).

2.   The defendant understands that although imposition
of a sentence in accordance with the United States Sentencing
Guidelines (the "Guidelines" and "U.S.S.G.") is not mandatory,
the Guidelines are advisory and the Court is required to consider
any applicable Guidelines provisions as well as other factors
enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate
sentence in this case.  The Office will advise the Court and the
Probation Department of information relevant to sentencing,
including criminal activity engaged in by the defendant, and such
information may be used by the Court in determining the
defendant's sentence.  The Office estimates the likely adjusted
offense level under the Guidelines to be level 21, which is
predicated on the following Guidelines calculation:

3

Racketeering Act 5B (Extortion - Sitt Asset Management)

    Base Offense Level (§ 2B3.2(a))                  18

    Plus: Greater than $50,000 Demanded
        (§§ 2B3.2(b)(2), 2B3.1(b)(7)(C))          +2

    Total:                                 20

Racketeering Act 6B (Extortion - John Doe #3 and John Doe #4)

    Base Offense Level (§ 2B3.2(a))                  18

    Plus: Express or Implied Threat of Bodily Injury
        (§ 2B3.2(b)(1))                    +2

    Plus: Greater than $10,000 Demanded
        (§§ 2B3.2(b)(2), 2B3.1(b)(7)(B))          +1

    Total:                                 21

Multiple Racketeering Act Analysis (§ 3D1.4)

    Highest Adjusted Offense Level               21

| | Units |
|---|---|
| Racketeering Act 5B | +1 |
| Racketeering Act 6B | +1 |
| Total | 2 |

    Increase in Offense Level (§ 3D1.4)          +2

    Less: Minor Role (§ 3B1.2(b))             -2

    Total Adjusted Offense Level              21

If the defendant clearly demonstrates acceptance of responsibility, through allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 19 and a range of imprisonment of 30 to 37 months, assuming that the defendant falls within Criminal

4

History Category I. Furthermore, if the defendant has accepted

responsibility as described above, to the satisfaction of the

(wR) Office, and if the defendant pleads guilty on or before Friday,

*March 2* ~~February 1~~7, 2012, an additional one-level reduction will be

warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an

adjusted offense level of 18. This level carries a range of

imprisonment of 27 to 33 months, assuming that the defendant

falls within Criminal History Category I.[1] The defendant

stipulates to the above Guidelines calculation, but reserves the

right, at sentencing, to: (a) advocate that the Court should

(i) deem the conduct for which the defendant was sentenced in

United States v. Agate, 08 CR 76 (JBW), relevant conduct under

U.S.S.G. § 1B1.3, and (ii) sentence the defendant in accordance

with U.S.S.G. § 5G1.3 and § 5K2.23; and (b) contest the two-point

enhancement for express or implied threat of bodily injury,

pursuant to U.S.S.G. § 2B3.2(b)(1).

    3.    The Guidelines estimate set forth in paragraph 2

is not binding on the Office, the Probation Department or the

Court. If the Guidelines offense level advocated by the Office,



(wR)
*March 2*

    [1]    Pursuant to paragraph 14 below, the defendant may be
eligible for an additional one-level reduction for a global
disposition under Section 5K2.0 if all of the "covered
defendants" (as defined in paragraph 14) plead guilty on or
before Friday, ~~February 17~~, 2012. Such a reduction would result
in an adjusted offense level of 17. This level carries a range
of imprisonment of 24 to 30 months, assuming that the defendant
falls within Criminal History Category I.

5

or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

4.   The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 37 months or below. This waiver is binding without regard to the sentencing analysis used by the Court.  The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn.  The defendant waives any right to additional disclosure from the government in connection with the guilty plea.  The defendant agrees that with respect to all charges referred to in paragraphs 1 and 12(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. § 3006A note, and will not file any claim under that law.  The defendant agrees to pay the special assessment by check payable to the Clerk of the Court at or before sentencing.

6

5.    The defendant acknowledges that he received money
that is subject to forfeiture as a result of his violation of 18
U.S.C. § 1962(d), as alleged in the indictment.   Pursuant to 18
U.S.C. § 1963, the defendant consents to the entry of a
forfeiture money judgment in the amount of thirty thousand
dollars and zero cents ($30,000.00) in United States currency
(the "Forfeiture Money Judgment") as (a) an interest acquired or
maintained in violation of 18 U.S.C. § 1962; (b) an interest in,
security of, claim against, or property or contractual right of
any kind affording a source of influence over, any enterprise
which the defendant established, operated, controlled, conducted,
or participated in the conduct of, in any violation of 18 U.S.C.
§ 1962; (c) property constituting, or derived from, any proceeds
obtained, directly or indirectly, from racketeering activity or
unlawful debt collection in violation of 18 U.S.C. § 1962; and/or
(d) substitute assets.

6.    The defendant consents to the entry of an Order of
Forfeiture, pursuant to Rule 32.2 of the Federal Rules of
Criminal Procedure forfeiting the above-referenced sum of money
to the United States, pursuant to 18 U.S.C. § 1963.   The
defendant agrees not to contest the forfeiture or to file or
interpose any claim or to assist others to file or interpose any
claim to any property against which the Office seeks to execute

7

the Forfeiture Money Judgment in any administrative or judicial proceeding.

7. The Forfeiture Money Judgment shall be paid in full on or before the date of sentencing in the above-captioned matter (the "Due Date"). Interest on the Forfeiture Money Judgment shall accrue at the judgment rate of interest from the Due Date. All payments towards the Forfeiture Money Judgment shall be made by certified or bank check(s), payable to the "United States Marshals Service." The defendant shall cause said checks to be hand-delivered to Assistant U.S. Attorney Laura Mantell, United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201, with the criminal docket number noted on the face of the checks. The failure of the defendant to pay the Forfeiture Money Judgment required under this agreement, including the failure of the defendant to execute any document to accomplish same on timely notice to do so, shall constitute a material breach of this plea agreement. Upon such a breach, the defendant will not be entitled to withdraw the plea, but the Office may bring additional criminal charges against the defendant. The defendant agrees that any failure to pay the Forfeiture Money Judgement in accordance with the terms of this agreement will constitute a violation of any supervised release or probationary term that is imposed by the Court. The Office may also execute the Forfeiture

8

Money Judgment upon any other assets of the defendant, up to the outstanding balance, pursuant to 21 U.S.C. § 1963(m), the Federal Debt Collection Procedure Act, or any other applicable law.

8.    The defendant agrees to fully assist the government in effectuating the payment of the Forfeiture Money Judgment by, among other things, executing any documents necessary to effectuate the transfer of title to the United States of any substitute assets.  The defendant agrees not to file or interpose any claim or to assist others to file or interpose any claim to any property against which the Government seeks to execute the Forfeiture Money Judgment in any administrative or judicial proceeding.

9.    The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of the assets and monies forfeited hereunder, including notice set forth in an indictment or information.  In addition, the defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of said assets, and waives all constitutional, legal and equitable defenses to the forfeiture of said assets, including, but not limited to, any defenses based on principles of double jeopardy, the Ex Post Facto Clause of the Constitution, the statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

10. The defendant agrees that the forfeiture of the above sum of money is not to be considered a fine or a payment on any income taxes that may be due.

11. The defendant represents that prior to sentencing, he will disclose all of his assets to the United States on the "United States Department of Justice Financial Statement" (hereinafter, the "Financial Statement"). The defendant agrees that a failure to disclose assets on the Financial Statement constitutes a failure to cooperate with the Office, and constitutes a material breach of this agreement. In addition, the defendant consents to the forfeiture to the United States of all assets in which he has an interest but failed to disclose on the Financial Statement, if any. Should undisclosed assets that the defendant owns or in which the defendant has an interest be discovered, the defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of said assets. The defendant agrees to execute any documents necessary to effectuate the forfeiture of said assets.

12. The Office agrees that:

    a. no further criminal charges will be brought against the defendant for his participation in: (i) the extortion conspiracy and extortion relating to the Liberty View Harbor construction site in or about and between May 2006 and January 2008 (as charged in Racketeering Acts Three and Eight of Count One of the indictment); (ii) the extortion conspiracy and extortion of Sitt Asset Management in or about and between March 2007

and May 2007 (as charged in Racketeering Act
Five of Count One and Counts Three and Four
of the indictment); (iii) the extortion
conspiracy and extortion of John Doe #3 and
John Doe #4 on or about and between March 2,
2007 and June 4, 2007 (as charged in
Racketeering Act Six of Count One and Counts
Six and Seven of the indictment); and (iv)
fraud or extortion related to ACE Material
and Trucking, Ltd., Abstract Equipment, Inc.,
VMS Consulting, Inc., Duramax Construction
Corp., Duramax/Heavy Excavation and
Foundation, Inc., Roman Sand and Stone Co.,
Inc., LVH Mix of NJ, Inc., and Hunter-
Atlantic, Inc., in or about and between
January 1, 2006 and January 12, 2011, it
being understood that this agreement does not
bar the use of such conduct as a predicate
act or as the basis for a sentencing
enhancement in a subsequent prosecution
including, but not limited to, a prosecution
pursuant to 18 U.S.C. §§ 1961 et seq., and at
the time of sentence, it will move to dismiss
the remaining counts of the indictment with
prejudice;

and, based upon information now known to the Office, it will

b.   take no position concerning where within the
Guidelines range determined by the Court the
sentence should fall; and

c.   make no motion for an upward departure under
the Sentencing Guidelines.

If information relevant to sentencing, as determined by the

Office, becomes known to the Office after the date of this

agreement, the Office will not be bound by paragraphs 12(b) and

12(c).  Should it be judged by the Office that the defendant has

violated any provision of this agreement, the defendant will not

be released from his plea of guilty but this Office will be

released from its obligations under this agreement, including but

11

not limited to (a) moving for the additional one-level downward adjustment for timely acceptance of responsibility described in paragraph 2 above, and (b) the provisions of paragraph 12(a)-(c).

13.  This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

14.  This agreement is conditioned upon the following: (a) the defendants listed below (the "covered defendants") entering guilty pleas, pursuant to plea offers, on or before Friday, ~~February 17~~ March 2, 2012; and (b) acceptance of those pleas by a United States District Court Judge before the time of sentencing. The covered defendants are:

    (i)       Vincent Dragonetti;

    (ii)      Thomas Frangiapane;

    (iii)     Emmanuel Garafolo;

    (iv)      Anthony Licata;

    (v)       Joseph Lombardi;

    (vi)      Anthony O'Donnell;

    (vii)     Anthony Scibelli; and

    (viii)    William Scotto.

If fewer than all the covered defendants satisfy conditions 14(a) and 14(b), or if any of the covered defendants subsequently seeks

to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial. The Office may also elect not to recommend a reduction under the Guidelines for a global disposition. No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

15. No promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in

13

writing and signed by all parties.  This agreement supersedes all
prior promises, agreements or conditions between the parties.  To
become effective, this agreement must be signed by all
signatories listed below.

Dated:     Brooklyn, New York
           February 16 , 2012

                                   LORETTA E. LYNCH
                                   United States Attorney
                                   Eastern District of New York

                         By: _____
                                   Whitman G. S. Knapp
                                   Assistant United States Attorney


                         Approved by:

                             _____
                             Supervising Assistant U.S. Attorney


I have read the entire agreement and discussed it with my attorney. I
understand all of its terms and am entering into it knowingly and
voluntarily.

_____
ANTHONY SCIBELLI
Defendant

Approved by:

_____
Gerald L. Shargel, Esq.
Counsel to Defendant

# Exhibit PP

 **Prudential**

**Prudential Douglas Elliman Real Estate**
275-23 Route 25A
Miller Place, NY 11764
Bus 631 474-4242  Fax 631 474-1888
www.prudentialelliman.com

Honorable Dora L Irizarry
United States Distinct Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

3/1/12

Dear Judge Irizarry,

My name is Frank Castelli presently working as manager of Prudential Douglas Elliman. I know Anthony Scibelli to be my best friend, partner and Co- worker for 25 years.

I was introduced to Anthony when he applied for a job at my family's restaurant. We worked side by side together and made a great team together for many years. Anthony was always prompt, loyal and hard working individual. As I started taken a different path in my career and entered the Real estate industry, Anthony and I became close friends. Through the years we played in league sports together like flag football, basketball and softball for years. When I got married I moved to town called Nesconset, I would invite Anthony and a few other close friends and family to my home for drinks and cook up a storm. Anthony and I invested in a home in Sound Beach NY, where we both worked on the home with our family. His dad was a tremendous help and new a lot of people in the construction field. We rented it out at first and then sold it for a small profit. We later invest in a restaurant in lawerence NY for a few years; I would help out for few days a week to relieve him for a day off. We later sold the restaurant.

⌂ An independently owned and operated member of The Prudential Real Estate Affiliates, Inc.



**Prudential**

**Douglas Elliman
Real Estate**

**Prudential Douglas Elliman Real Estate**
275 Route 25A, Ste 23
Miller Place, NY 11764
Office 631 474-4242  Fax 631 474-1888
millerplace.office@prudentialelliman.com
www.prudentialelliman.com

As years progressed Anthony got married to Charise and they had 3 wonderful children Vallentina age7 Anthony JR  age 3 and Emilio 1 years young. I know Anthony as a loving dad a good husband helping out his wife by playing with the kids, changing dirty diapers, feeding the babies bottles and rocking them to sleep. He had more patients than I did with the kids, where most men would shy away from these chores. Anthony at times also cooks and cleans up after himself, he is kind of a clean nut! As my wife would say why can't you be more like Anthony! Anthony pried himself to spend time with his family. Anthony the last few years would have a 4th of July party, where he invited his friends and family. Anthony would stress out a few days before the party as about 90 to hundred guest where due to show up. I will lend a hand to help out with the preparation and the cooking of the food, with the restaurant experience behind us we would cook up a gourmet BBQ party! Anthony would worry about the weather, is there enough food?, what kind of food to serve and wanted to make sure his guest had an enjoyable day. When that day came drew close we went to buy the food and we would prepare the day before. No matter what we did we always made a great team, we cook on the BBQ all day long and the guest  constantly kept on eating , the food was so good they always had room for whatever was cooked. At the end of the day sat back, enjoy some drinks and took  a dip in the pool!

Till this day Anthony and his family  along with my brother and his family my sister and her family my mom and dad would come over on the weekends for dinner cook off and the men would compete on who makes the best dish. It has been a tradition and hobby in the family for years! My Father would say life is too short "you should enjoy life and your family and friends. As the kids grow up so fast and should be there for those special occasions in their lives.

Anthony is a friend and brother like figure , he was always there in the time of need, When I bought my 1st house and helped me move, helped with big projects around the house (building a deck laying sod ect ect.). When my wife and I where unable to pick up kids from school and he was around he would pick up my kids for us. I rainy nasty night I broke down with my car and he came out to help and lent me his car for a few days until my car was repaired. He is truly a great friend to me.

Anthony has expressed remorse for his actions and given the opportunity he will prove to be a model citizen, a plus to our economy (as he runs a successful business), a loving parent, good husband, and a great friend to me.

Frank Castelli

Prudential Douglas Elliman Real estate
Manager, associate broker

⌂ An Independently Owned and Operated Member of Prudential Real Estate Affiliates, Inc.

All information furnished regarding property for sale, rental or financing is from sources deemed reliable. No representation is made as to the accuracy thereof and it is submitted subject to errors, omissions, change of price, rental, commission or other conditions, prior sale, lease or financing or withdrawal without notice.

# Exhibit QQ

Marcos Franco

220 Holland Avenue
Medford, NY 11763

Honorable Dora L. Irizarry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Irizarry

     Good day, Your Honor. My name is Marcos Franco. I have been employed by the Suffolk County Sheriff's Office as a Correction Officer for the past 12 years. If I may, Your Honor, I write this letter to hopefully give you a little insight into Anthony Scibelli, my good friend ever since we became neighbors back in 2006 when I first purchased my house. In the past 6 years, I have come to know what a truly wonderful friend and proud husband and father he is. When we were neighbors and I was a new homeowner, Anthony was the one person I could seek advice from. We quickly became good friends, as did our wives and our daughters, who were around 3 years old at the time and became instant playmates.

     Anthony and his family moved to a new neighborhood about 3 years ago, but our families are still close and we keep in touch on a regular basis just as we did when we were neighbors. We still get together for barbecues, birthday parties, dinners or even just to watch a ball game on t.v., be it at his home or mine.

     In the time that I've known Anthony, he has been and continues to be a great friend and family man. My wife and I have always noticed how much he adores his family and how much they mean to him. We have also seen how much he means to them. Anthony now has 3 children, and the love they have for their daddy cannot fully be explained with mere words.

     Anthony has expressed to me on numerous occassions how remorseful he his for the situation in which he currently finds himself in, and I have no doubt that it is on his mind more than he would ever admit. This letter isn't something I would do for just anyone. But Anthony isn't just anyone. This is my way of thanking him for being a wonderful friend and for making myself and my family feel like we are a part of his. And I know our friendship will continue for a very long time.

     Your Honor, I fully understand and respect that the final decision is entirely up to you. And this letter is not meant to sway your decision for or against Anthony. But i do know that Anthony's children's world will be turned upside down if their daddy were to go on "vacation" for a while. As for the rest of us, we hope and pray that the outcome will be a favorable one for all.

Thank you for your time,

Marcos Franco

# Exhibit RR



**DEPARTMENT OF THE AIR FORCE**
**106TH RESCUE WING**
**F.S. GABRESKI AIRPORT NEW YORK**

March 7, 2012

Lieutenant Colonel Lawrence R. Sullivan
Director of Operations, 101st Rescue Squadron
Francis S. Gabreski Airport
150 Old Riverhead Road
Westhampton Beach, NY 11978


Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Irizarry,

It is with a heavy heart that I am contacting you on behalf of my friend, Anthony Scibelli. I would like to take this opportunity to try to introduce you the Anthony I know and have come to respect. That person is a fiercely loyal friend and generous family man who is deserving of a lenient and merciful sentence.

I first met Anthony about ten years ago at party at a close personal friend's home. During that first chance encounter with Anthony, I was immediately impressed in the way he carried himself. In an attempt to explain, it was obvious Anthony was much more affluent than the majority of people at the party but you would never know it by his demeanor. I found Anthony to be exceptionally friendly and unassuming. At that time, I would have described Anthony as an absolute gentleman.

While I first met Anthony about 10 years ago, it has been over the last few years where we have become close. I usually see Anthony each week on Friday or Saturday night at the same close personal friend's home who initially introduced us. Our families, as well as the host's extended family, typically meet there for dinner followed by a family movie, a friendly card game, a few games of billiards or just plain visiting. Ours is a very close-knit group. During these get-togethers, I have observed Anthony in action as a spouse, friend, and parent. I am struck at how loving a father he is and the genuine interest he takes in the lives of everyone within our circle. Today, I would describe Anthony as a fiercely loyal friend and family man in addition to being a gentleman.

Over the course of the last year or so, I have also had the opportunity to discuss with Anthony the circumstances he currently finds himself in. During these discussions with Anthony, he has confided in me he truly regrets the decisions he has made which have placed his freedom in jeopardy. His single greatest fear is being forced to abandon his children. Due, in part, to those conversations and the countless interactions I have had with Anthony, I am even more impressed with him today. A lesser man would whine or point fingers elsewhere. My friend, Anthony, has accepted full responsibility for his actions.

As a 23+ year member of the United States military who has deployed numerous times in support of the less fortunate, I have a demonstrated commitment to the rule of law and justice. As a deployed military officer, I have had the opportunity to observe the legal systems of various governments and compare them to that of the United States. Outside of the United States, the goal of the majority of the legal systems I have observed is punishment of the offender. In contrast, the goal of the American Legal System is to rehabilitate those who have violated the law. Ours is not supposed to be a punitive system. We have an enlightened system which seeks justice for the victims and offenders alike.

Recognizing it is your solemn responsibility to sentence Anthony, I implore you to administer a lenient and merciful sentence to him because I truly believe him to be deserving and for *that* to be the *just* thing to do. Anthony's history shows he is a long-standing and productive member of the community who has made all his required court appearances. Additionally, he is gainfully self-employed and functions as the sole bread-winner for his family. Anthony is a family man who poses no threat to the community nor is he a flight risk. Finally, sentencing him to prison will serve no rehabilitative purpose.

Before you sentence Anthony, I respectfully request you consider the impact your decision will have on the Scibelli family. His three young children (Valentina - seven years old, Anthony - three years old and Emilio - 1 year old) do not deserve to have their father ripped from their home at such an early stage in their development. Forcing that upon them would be *unjust and unnecessarily punitive*. As someone who has been forced to be separated from his own young children for extended periods of time in defense of those less fortunate, I can say, unequivocally, that burden is too much to force upon a child unnecessarily.

If, in the course of your deliberations, you determine Anthony must be sentenced to a period of confinement, I respectfully request Anthony be considered for Location Monitoring in lieu of detention. This option will allow Anthony the ability to remain an active and engaged parent with the additional benefit of being little to no cost to the tax payer.

Thank you for allowing me this opportunity to contact you on Anthony's behalf. If you have any questions or require further information, you may reach me at the above address, via my email address (Lawrence.Sullivan@ang.af.mil), or telephonically at (631)723-7404.

Sincerely,

Lawrence R. Sullivan
Lieutenant Colonel
United States Air Force

# Exhibit SS
# REDACTED

**Exhibit TT**
**REDACTED**

**Exhibit UU**
**REDACTED**

# Exhibit VV

Salvatore Castelli
550 Smithtown Bypass
Smithtown NY 11787

2/15/2012

Honorable Dora L.Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn NY, 11201

Dear Judge Irizarry;

I am writing to you about Anthony Scibelli. I have known Anthony Scibelli for 27 years. I met him while working together in a restaurant at the time. Anthony was always a wonderful person that helped me with rides to work when I needed them, covering my shift when asked to as well as a great listening ear when I needed him to be.

We remained longtime friends due to the bonds we created back then. Whenever I was having a difficulty in my life, Anthony was always there to help in any capacity he had available to him, Whether it be his car, his house, his friendship, whatever I needed I knew I could rely on him.

More recently, Anthony and I started raising our own families, we became even closer. I see what a great job he does in raising his two sons Emilio and Anthony Jr. as well as the support he gives his daughter Valentina and his wife, Charisse. Anthony is as always calm and caring with his family even while he struggles with caring for his older father in a nursing home. And yet whenever I need him to watch my children when I am in need, he graciously responds "Sure, no problem".

In short Anthony has always been a wonderful person to be around and learn what "giving to others" really means. Please consider this letter when you sentence him, Anthony is capable of learning from his missteps and will be an even greater person after this. I believe his life lessons and values will be better put to good use, as he has in the past, serving his wife, children, family and his close circle of friends.

Sincerely
Sal Castelli